## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

|  |  |
|---|---|
| **GOODLUCK INDIA LIMITED,** | ) |
| Plaintiff, | ) |
| v. | ) |
| **UNITED STATES,** | ) |
| Defendant, | ) **Court No. 22-00024** |
| and | ) |
| **ARCELORMITTAL TUBULAR PRODUCTS, *et al.*,** | ) |
| Defendant-Intervenors. | ) |

### DEFENDANT-INTERVENORS' RESPONSE BRIEF

R. ALAN LUBERDA
DAVID C. SMITH
JULIA A. KUELZOW
aluberda@kelleydrye.com
davidsmith@kelleydrye.com
jkuelzow@kelleydrye.com
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Defendant-Intervenors

Dated:  April 3, 2023

## Table of Contents

**Page**

TABLE OF AUTHORITIES ....................................................................................ii-vi

STATEMENT PURSUANT TO USCIT RULE 56.1 ...................................................1

ISSUES PRESENTED AND SUMMARY OF ARGUMENT ......................................2

STATEMENT OF FACTS .........................................................................................4

      A.    Appeal of the Department's Final Determination to the Court of
International Trade and Subsequent Judicial Proceedings......................5

      B.    Initiation of Administrative Reviews, Subsequent Administrative
Determinations, and Effect of the Dec. 29 FRN ....................................8

ARGUMENT ...........................................................................................................11

I.       STANDARD OF REVIEW ...........................................................................11

II.      BECAUSE NO PARTY REQUESTED A REVIEW OF GOODLUCK'S
ENTRIES MADE DURING POR3, THE DEPARTMENT CORRECTLY
INSTRUCTED CBP TO LIQUIDATE THOSE ENTRIES IN
ACCORDANCE WITH THE COURT'S FINAL JUDGMENT .....................13

      A.    Goodluck's Claim that the Department Should Liquidate Entries at
an As-Entered Rate Is Unsupported By Law ..........................................13

      B.    The Statute, the Department's Regulations and Agency Practice
Do Not Compel the Department to Permit Administrative Review
Requests After the Period to Make Such Requests Has Elapsed ...........17

      C.    The Department Afforded Goodluck Notice and Sufficient Process
Regarding the Reinstatement of the *Order* ..........................................25

III.    THE SEPTEMBER 10, 2021 EFFECTIVE DATE OF GOODLUCK'S
CASH DEPOSIT RATE IS IN ACCORDANCE WITH LAW .......................29

CONCLUSION........................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ambassador Div. of Florsheim Shoe v. United States,
    748 F.2d 1560 (Fed. Cir. 1984)................................................................14

American Permac, Inc. v. United States,
    642 F. Supp. 1187 (Ct. Int'l Trade 1986) ................................................14

Andaman Seafood Co. v. United States,
    675 F.Supp.2d 1363 (Ct. Int'l Trade 2010) .............................................15

Baltimore Gas & Electric v. N.R.D.C.,
    462 U.S. 87 (1983)....................................................................................12

BMW of N. Am. LLC v. United States,
    926 F.3d 1291 (Fed. Cir. 2019).................................................................23

Cevallos v. City of Los Angeles,
    914 F. Supp. 379 (C.D. Cal. 1996) ...........................................................27

Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984)..................................................................................13

Decca Hosp. Furnishings, LLC v. United States,
    427 F. Supp. 2d 1249 (Ct. Int'l Trade 2006) ...............................29, 30, 31

Defs. of Wildlife v. Hogarth,
    177 F. Supp. 2d 1336 (Ct. Int'l Trade 2001), aff'd sub nom. Defs. of Wildlife,
    Earth Island Inst. v. Hogarth, 330 F.3d 1358 (Fed. Cir. 2003) ................12

Diamond Sawblades Mfrs. Coalition v. United States,
    626 F.3d 1374 (Fed. Cir. 2010)...................................................................6

Diamond Sawblades Mfrs. Coalition v. United States,
    650 F. Supp. 2d 1331 (Ct. Int'l Trade 2009),
    aff'd 626 F.3d 1374 (Fed. Cir. 2010).........................................................29

Fujitsu Gen. Am., Inc. v. United States,
    283 F.3d 1364 (Fed. Cir. 2002).................................................................14

In re Gartside,
    203 F.3d 1305 (Fed. Cir. 2000).................................................................12

Gilda Indus., Inc. v. United States,
    446 F.3d 1271 (Fed. Cir. 2006).................................................................27

Goodluck India Ltd. v. United States,
   393 F. Supp. 3d 1352 (Ct. Int'l Trade 2019) ("Goodluck I")..................................5, 7

Goodluck India Ltd. v. United States,
   439 F. Supp. 3d 1366 (Ct. Int'l Trade 2020) ("Goodluck II") .....................................5, 6, 7, 15

Goodluck India Ltd. v. United States,
   11 F.4th 1335 (Fed. Cir. 2021) ("Goodluck III") ....................................7, 28, 30, 31

Goodluck India Ltd. v. United States,
   Ct. No. 18-00162, Judgment (Ct. Int'l Trade Nov. 9, 2021)
   ("Goodluck IV") .......................................................................................7, 26, 29, 31

Huvis Corp. v. United States,
   525 F.Supp. 2d 1370 (Ct. Int'l Trade 2007) ...........................................................24

Koyo Corp. v. United States,
   497 F.3d 1231 (Fed. Cir. 2007)...............................................................................14

Mittal Canada, Inc. v. United States,
   414 F. Supp. 2d 1347 (Ct. Int'l Trade 2006) ....................................................16, 17

Motor Vehicle Mfr. Ass'n v. State Farm Mutual Auto. Ins.,
   463 U.S. 29 (1983)...................................................................................................12

NAR, S.p.A. v. United States,
   707 F. Supp. 553 (Ct. Int'l Trade 1989) .................................................................27

Nereida Trading Co. v. United States,
   683 F. Supp. 2d 1348 (Ct. Int'l Trade 2010) ..........................................................27

Norwegian Nitrogen Prods. Co. v. United States,
   288 U.S. 294 (1933)..................................................................................................27

NSK Corporation v. United States,
   774 F. Supp. 2d 1296 (Ct. Int'l Trade 2011) ..........................................................19

Parkdale Int'l v. United States,
   475 F.3d 1375 (Fed. Cir. 2007)................................................................................14

Ranchers–Cattlemen Action Legal Foundation v. United States,
   74 F. Supp. 2d 1353 (Ct. Int'l Trade 1999) ............................................................24

Salman Ranch Ltd. v. United States,
   573 F.3d 1362 (Fed. Cir. 2009)................................................................................12

Shandong Huarong Mach. Co. v. United States,
   435 F. Supp. 2d 1261 (Ct. Int'l Trade 2006) ..........................................................24

Shelter Forest Int'l Acquisition, Inc. v. United States,
    497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ........................................31

Snap-on, Inc. v. United States,
    949 F. Supp. 1346 (Ct. Int'l Trade 2013) ..........................................21

Snap-on, Inc. v. United States,
    949 F. Supp. 2d 1346 (Ct. Int'l Trade 2013) ...............................16, 26

Sumecht NA, Inc. v. United States,
    399 F. Supp. 3d 1370 (Ct. Int'l Trade 2019) ....................................31

Techsnabexport, Ltd. v. United States,
    795 F. Supp. 428 (Ct. Int'l Trade 1992) ...........................................27

Timken Co. v. United States,
    893 F.2d 337 (Fed. Cir. 1990)..............................................*passim*

Town of Castle Rock v. Gonzales,
    545 U.S. 748 (2005)...................................................................26, 31

Transcom, Inc. v. United States,
    123 F. Supp. 2d 1372 (Ct. Int'l Trade 2000) ....................................18

United States Steel Corp. v. United States,
    348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018) ....................................24

**Statutes and Regulations**

5 U.S.C. § 706(A) ...........................................................................12

19 U.S.C. §§ 1500, 1504, 1505, 1514, 1516a and 1520 ..................29

19 U.S.C. § 1504(d) ..................................................................14, 16

19 U.S.C. § 1516a(c).......................................................................14

19 U.S.C. § 1516a(c)(1)...................................................................14

19 U.S.C. §§ 1673b(d), 1673d(c)(1)(B)(ii), 1673e(a), 1673e(c)(3), 1675,
    1673f(b)(2) and 1677g ................................................................29

19 U.S.C. § 1675(a)(1)...............................................................14, 18

19 U.S.C. § 1675(a)(2)....................................................................14

19 U.S.C. §§ 1675(a)(2), (a)(3)(B) ..................................................14

19 U.S.C. § 1675(a)(2)(B)(iii) .........................................................18

28 U.S.C. § 1581(i) .................................................................................................11

28 U.S.C. § 2640(e) ................................................................................................12

19 C.F.R. § 351.212 ................................................................................................14

19 C.F.R. § 351.212(c)(1) .......................................................................................14

19 C.F.R. § 351.213(b) ............................................................................................18

19 C.F.R. § 351.213(e)(1) ..................................................................................18, 23

19 C.F.R. § 351.221 ................................................................................................18

19 C.F.R. § 351.224 ................................................................................................28

**Administrative Decisions**

Ball Bearings and Parts Thereof From Japan and the United Kingdom: Notice of
     Court Decision Not in Harmony With Continuation of Antidumping Duty
     Orders, 76 Fed. Reg. 35,401 (Dep't of Commerce June 17, 2011) ................... 19-20

Ball Bearings and Parts Thereof From Japan and the United Kingdom:
     Revocation of Antidumping Duty Orders, 76 Fed. Reg. 41,761
     (Dep't of Commerce July 15, 2011) ........................................................................20

Ball Bearings and Parts Thereof From Japan and the United Kingdom: Notice of
     Reinstatement of Antidumping Duty Orders, Resumption of Administrative
     Reviews, and Advance Notification of Sunset Reviews, 78 Fed. Reg. 76,104
     (Dep't of Commerce Dec. 16, 2013) ("Ball Bearings Reinstatement Notice").......19, 20

Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India:
     Final Affirmative Determination of Sales at Less than Fair Value,
     83 Fed. Reg. 16,296 (Dep't of Commerce Apr. 16, 2018) ("Final
     Determination") and accompanying Issues and Decision Memorandum (Apr.
     9, 2018) ............................................................................................................ passim

Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India:
     Final Results of Antidumping Duty Administrative Review and Final
     Determination of No Shipments; 2019-2020, 86 Fed. Reg. 59,982 (Dep't of
     Commerce Oct. 29, 2021).........................................................................................10

Certain Cold Drawn Mechanical Tubing of Carbon and Alloy Steel From India:
     Notice of Court Decision Not in Harmony With Final Determination of Sales
     at Less Than Fair Value; Notice of Amended Final Determination Pursuant to
     Court Decision; and Notice of Revocation of Antidumping Duty Order, in
     Part, 85 Fed. Reg. 31,742 (Dep't of Commerce May 27, 2020) ("Timken
     Notice")............................................................................................................ passim

Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India:
Notice of Second Amended Final Determination; Notice of Amended Order;
Notice of Resumption of First and Reinitiation of Second Antidumping Duty
Administrative Reviews; Notice of Opportunity for Withdrawal; and Notice of
Assessment in Third Antidumping Duty Administrative Review, 86 Fed. Reg.
74,069 (Dep't of Commerce Dec. 29, 2021) ("Dec. 29 FRN") ...................................... *passim*

Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India:
Preliminary Results of Antidumping Duty Administrative Review, Partial
Rescission of Review, and Partial Discontinuation of Review; 2017–2019,
85 Fed. Reg. 66,930 (Dep't of Commerce Oct. 21, 2020) .................................................... 8-9

Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India:
Preliminary Results of Antidumping Duty Administrative Review; 2019-2020,
86 Fed. Reg. 33,980 (Dep't of Commerce June 28, 2021) ...................................................... 9

Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from the
People's Republic of China, the Federal Republic of Germany, India, Italy,
the Republic of Korea, and Switzerland: Antidumping Duty Orders; and
Amended Final Determinations of Sales at Less Than Fair Value for the
People's Republic of China and Switzerland, 83 Fed. Reg. 26,962 (Dep't of
Commerce June 11, 2018) ("Order") ............................................................................. *passim*

Xanthan Gum From the People's Republic of China: Notice of Court Decision
Not in Harmony With Amended Final Determination in Less Than Fair Value
Investigation; Notice of Amended Final Determination Pursuant to Court
Decision; Notice of Revocation of Antidumping Duty Order in Part; and
Discontinuation of Fourth and Fifth Antidumping Duty Administrative
Reviews in Part, 83 Fed. Reg. 52,205 (Dep't of Commerce Oct. 16, 2018)
("Xanthan Gum Timken Notice") ...................................................................................19, 22

Xanthan Gum From the People's Republic of China: Notice of Third Amended
Final Determination Pursuant to Court Decision, 85 Fed. Reg. 40,967
(Dep't of Commerce July 8, 2020) ..........................................................................................22

**STATEMENT PURSUANT TO USCIT RULE 56.1**

Defendant-Intervenors ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, PTC Alliance Corp., Webco Industries, Inc., Zekelman Industries, Inc., and Plymouth Tube Co., USA, domestic producers of cold-drawn mechanical tubing (collectively, "Defendant-Intervenors") respond to the motion for judgment on the agency record filed by Goodluck India Limited ("Plaintiff").   See Plaintiff's Motion for Judgment on the Agency Record (Jan. 3, 2023) (ECF No. 43); Memorandum of Law in Support of Plaintiff's Rule 56.1 Motion for Judgment on the Agency Record (Jan. 3, 2023) (ECF No. 43) ("Pl.'s Br.").

Plaintiff challenges certain determinations by the U.S. Department of Commerce (the "Department") regarding the liquidation and cash deposit rate of Goodluck's entries of cold-drawn mechanical tubing ("CDMT"), following the Department's re-imposition of an antidumping duty order on CDMT from India.   See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India: Notice of Second Amended Final Determination; Notice of Amended Order; Notice of Resumption of First and Reinitiation of Second Antidumping Duty Administrative Reviews; Notice of Opportunity for Withdrawal; and Notice of Assessment in Third Antidumping Duty Administrative Review, 86 Fed. Reg. 74,069 (Dep't of Commerce Dec. 29, 2021) ("Dec. 29 FRN") (R. 12).   Goodluck specifically contests the Department's instruction to Customs and Border Protection ("CBP") in the Dec. 29 FRN ordering liquidation of Goodluck's entries of CDMT made during the third administrative review ("AR3"), encompassing June 1, 2020 through May 31, 2021, at the rate of 33.70 percent.   Goodluck also challenges the September 10, 2021, effective date of Goodluck's cash deposit rate of 33.70 percent in the Dec. 29 FRN.

## ISSUES PRESENTED AND SUMMARY OF ARGUMENT

**1. Following reinstatement of the antidumping order on certain cold-drawn mechanical tubing of carbon and alloy steel from India, did the Department act in accordance with law and agency practice when it did not provide Goodluck a renewed opportunity to request administrative review with respect to Goodluck's POR3 entries and, further, instructed Customs to order liquidation of Goodluck's POR3 entries at the reinstated 33.70 rate?**

Yes.  Goodluck seeks, through this appeal, a second bite at the apple to challenge the applicable antidumping duty rate to its POR3 entries.  It is not entitled under law or agency practice to that second chance.  Although Goodluck had an opportunity to request administrative review with respect to its entries made during POR3 – the appropriate  mechanism to challenge an antidumping duty rate – Goodluck failed to timely request such a review.  No other interested party sought review with respect to Goodluck's POR3 entries.  The Timken Notice had suspended liquidation on all of Goodluck entries entered on or after May 10, 2020 – including entries covered by POR3 – until a conclusive court decision.  Following that court decision, Goodluck's POR3 entries became susceptible to liquidation at the reinstated 33.70 percent rate.

Goodluck claims that the Department nonetheless should have permitted Goodluck to request review of entries made during POR3 after the Order was reinstated in the Dec. 29 FRN.  Neither the statute nor the Department's regulations, however, contemplate an interested party requesting review for the first time *after* the anniversary month of the publication of an antidumping duty order.  Further, once a review is initiated, the subsequent investigatory steps taken by the Department to conduct a review, which are each subject to strict statutory deadlines, do not require the Department to exercise any "discretion" to entertain a second opportunity for administrative review.  Goodluck's claim that the Department has a practice of permitting interested parties to request administrative review after the anniversary month of the publication

of an antidumping duty order stems from a misreading of the Department's prior decisions. None of the decisions cited by Goodluck support that claim, and, taken together, they do not amount to agency "practice."

Moreover, the Department acted in accordance with law when it reinstated the Order following final court judgment and instructed CBP in the Dec. 29 FRN to liquidate Goodluck's entries made during the POR3 period at the 33.70 rate, or "the cash deposit rate that would have prevailed in the absence of the now-vacated CIT decision."  The Timken Notice had preserved the *status quo ante* by suspending liquidation of Goodluck's entries, including entries made during POR3, pending a conclusive court decision.  Goodluck's assertion that its POR3 entries should have liquidated at the "as entered" 0.00 cash deposit rate, a rate the Court of Appeals for the Federal Circuit rejected, would have the undesirable "yo-yo" effect on liquidations that could occur if liquidation were not otherwise suspended that the Federal Circuit in Timken specifically sought to prevent.

The Department's actions in ordering liquidation consistent with the Federal Circuit's decision did not deprive Goodluck of procedural due process.  Goodluck does not support its claim that it has property interest in the antidumping duty rate applicable to its POR3 with a rule, regulation, or law that gives rise to a constitutionally protected property interest.  Nor could it, because as the Federal Circuit has recognized, an importer does not have a legal right to the maintenance of a particular duty.  The Department acted in accordance with statute and its regulations when it issued the Dec. 29 FRN, and, because the Dec. 29 FRN was an amended final determination, *not* a Timken notice, the Department, in accordance with its regulations, properly treated Goodluck's revision request as a ministerial error allegation.

**2. Was the Department's reinstatement of the cash deposit rate applicable to Goodluck as of September 10, 2021 in accordance with law?**

Yes. Goodluck's challenge to the September 10, 2021 effective date of its cash deposit rate proceeds from the legally incorrect premise that an instruction to collect cash deposits, like liquidation, must occur within ten days from the issuance of a final court decision. Liquidation and the collection of cash deposits, however, are distinct concepts, as reflected in the statute and as consistently held by this court. Although the statute compels liquidation of entries in accordance with a final and conclusive decision, that fact has no bearing on Commerce's duty to instruct the collection of cash deposits. Goodluck conflates the timing for the Department to issue liquidation instructions with that to collect cash deposits. The Department properly required the collection of cash deposits after the Federal Circuit issued its decision vacating the CIT's decision, before the appeals period had lapsed.

## STATEMENT OF FACTS

On April 16, 2018, the Department made an affirmative determination of sales at less-than-fair value in the antidumping duty ("AD") investigation of CDMT from India. See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India: Final Affirmative Determination of Sales at Less than Fair Value, 83 Fed. Reg. 16,296 (Dep't of Commerce Apr. 16, 2018) ("Final Determination") (R. 2), and accompanying Issues and Decision Memorandum (Apr. 9, 2018) (R. 1).[1] On June 11, 2018, following an affirmative injury determination by the International Trade Commission, the Department issued an AD order on CDMT from India and assigned a dumping margin of 33.80 percent to Goodluck, based on

---

[1] Documents in the administrative record are cited by their record number (i.e., "(R. __)" provided in the Index to the Administrative Record filed with the Court on April 1, 2022 (ECF No. 22).

facts available with an adverse inference ("AFA").  See <u>Certain Cold-Drawn Mechanical Tubing</u> <u>of Carbon and Alloy Steel from the People's Republic of China, the Federal Republic of</u> <u>Germany, India, Italy, the Republic of Korea, and Switzerland: Antidumping Duty Orders; and</u> <u>Amended Final Determinations of Sales at Less Than Fair Value for the People's Republic of</u> <u>China and Switzerland</u>, 83 Fed. Reg. 26,962 (Dep't of Commerce June 11, 2018) (R. 3) ("<u>Order</u>").  The Department instructed CBP to require cash deposit rates of Goodluck's entries of CDMT at a rate of 33.70 percent.  <u>Id.</u> at 26,964.

## A.   <u>Appeal of the Department's Final Determination to the Court of International Trade and Subsequent Judicial Proceedings</u>

On July 10 2018, Goodluck filed a complaint appealing the Department's <u>Final</u> <u>Determination</u> and challenging the Department's rejection of Goodluck's record data correction submission at verification, its resulting determination to apply AFA to Goodluck, and its calculation of Goodluck's export subsidy cash deposit.  See <u>Goodluck India Ltd. v. United</u> <u>States</u>, Case No. 18-00162, Complaint (July 10, 2018) (ECF No. 4).  The Court issued its opinion on August 13, 2021, remanding the Department's decision to reject Goodluck's correction submission and calculation of the export subsidy cash deposit rate.  <u>Goodluck India Ltd. v.</u> <u>United States</u>, 393 F. Supp. 3d 1352, 1363-70 (Ct. Int'l Trade 2019) ("<u>Goodluck I</u>").  The Court, however, declined to reach Goodluck's remaining challenge on the Department's application of AFA, pending the Department's remand results.  <u>Id.</u>

The Department issued its remand redetermination on December 23, 2019, where it accepted Goodluck's correction submission based on the Court's instructions and recalculated Goodluck's margin as zero percent.  See <u>Goodluck India Ltd. v. United States</u>, 439 F. Supp. 3d

1366, 1369 (Ct. Int'l Trade 2020) ("Goodluck II").   On April 30, 2020, the Court issued an opinion upholding the Department's remand redetermination.  Id.

In light of the Court's decision, the Department published a Timken notice on May 27, 2020, that the Court's decision was not "in harmony" with the Department's Final Determination.[2]  The Department amended the final determination and antidumping order with respect to Goodluck, setting Goodluck's margin as 0.00 percent.  See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India: Notice of Court Decision Not in Harmony With Final Determination of Sales at Less Than Fair Value; Notice of Amended Final Determination Pursuant to Court Decision; and Notice of Revocation of Antidumping Duty Order, in Part, 85 Fed. Reg. 31,742 (Dep't of Commerce May 27, 2020) ("Timken Notice") (R. 5).   The Department also partially revoked the AD order with respect to Goodluck and indicated that the Department

> will direct U.S. Customs and Border Protection (CBP) to release any bonds or other security and refund cash deposits pertaining to any suspended entries from Goodluck. Pursuant to *Timken*, the suspension of liquidation must continue during the pendency of the appeals process. Additionally, we will instruct CBP to suspend liquidation of all unliquidated entries from Goodluck at a cash deposit rate of 0.00 percent which are entered, or withdrawn from warehouse, for consumption on or after May 10, 2020, which is ten days after the CIT's final decision, in accordance with section 516A of the Act.  In the event the CIT's ruling is not appealed, or if appealed and upheld by the CAFC, Commerce will instruct CBP to terminate the suspension of liquidation and to liquidate entries produced and exported by Goodluck without regard to antidumping duties.

---

[2]    A Timken notice refers to the Department's requirement to notify the public when a court's final judgment is "not in harmony" with an agency determination.  See Timken Co. v. United States, 893 F.2d 337 (Fed. Cir. 1990); Diamond Sawblades Mfrs. Coalition v. United States, 626 F.3d 1374 (Fed. Cir. 2010).  Commerce will also suspend liquidation so that the post-notice entries are liquidated in accordance with a final court decision.  Timken Co., 893 F.2d at 341.

Id. at 31,743.  Consequently, for any suspended entries, CBP would refund cash deposits to Goodluck; and, for entries made on or after May 10, 2020, CBP would begin suspending liquidation and collect cash deposits at a 0.00 percent rate.  Id,

The defendant-intervenors to Goodluck I and Goodluck II, timely appealed the Court's decision to the Court of Appeals for the Federal Circuit ("CAFC").  See Goodluck India Ltd. v. United States, 11 F.4th 1335, 1337 (Fed. Cir. 2021) ("Goodluck III").  On August 31, 2021, the CAFC issued its opinion, reversing the Court.  Id.  The CAFC held that the Department's original rejection of Goodluck's correction submission was supported by substantial evidence and in accordance with law.  Id. at 1342-44.  Thus, the CAFC opinion and the original Final Determination were in harmony with one another.  On August 31, 2021 , the CAFC remanded the action, id. at 1344, and issued its mandate on October 22, 2021.  See CAFC Mandate in Appeal No. 20-2017 (Oct. 22, 2021) (ECF No. 63).  Goodluck raised no issues in response to this Court's request to raise any "outstanding issues which must be addressed prior to judgment." See Goodluck India Ltd. v. United States, Ct. No. 18-00162, Order (Ct. Int'l Trade Nov. 9, 2021) (ECF 70).  On November 18, 2021, the Court vacated its August 13, 2021, opinion and entered final judgment, sustaining the Department's original Final Determination.  See Goodluck India Ltd. v. United States, Ct. No. 18-00162, Judgment (Ct. Int'l Trade Nov. 18, 2021) (ECF No. 74) ("Goodluck IV").  The most recent determination of the CIT was therefore "in harmony" with the decision of the agency at that point.

The Department published a Federal Register Notice on December 29, 2021, implementing the Court's judgment.  See generally Dec. 29 FRN (R. 12).  The Department reinstated the Order with respect to Goodluck based on the original Final Determination and re-assigned a dumping margin of 33.80 percent.  Id. at 74,070.  The Department also specified

that "{e}ffective September 10, 2021, Goodluck's cash deposit rate will be 33.70 percent." Id. Finally, the Department issued specific instructions regarding administrative reviews conducted concurrently with the appeals process, as recounted further below.  In re-implementing the Final Determination, which was now "in harmony" with the judicial proceedings, the Department did not term the Dec. 29 FRN a Timken notice. See generally Dec. 29 FRN (R. 12).

**B.   Initiation of Administrative Reviews, Subsequent Administrative Determinations, and Effect of the Dec. 29 FRN**

Pending the appeal of the Final Determination, the Department initiated several administrative reviews of the Order.  Specifically, on July 29, 2019, initiated the first administrative review ("AR1"), covering the period of review of November 22, 2017 through May 31, 2019 ("POR1"), i.e., a period preceding the Timken Notice.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 84 Fed. Reg. 36,572, 36,573-74 (July 29, 2019).

Thereafter, on July 30, 2020, Goodluck requested a second administrative review ("AR2") of entries covering the period of review of June 1, 2019 through May 9, 2020 ("POR2"), and the Department initiated AR2 on August 6, 2020.  See Letter from GDLSK LLP to U.S. Department of Commerce (June 30, 2020) (R. 8); Initiation of Antidumping and Countervailing Duty Administrative Reviews, 85 Fed. Reg. 47,731, 47,734 (Dep't of Commerce Aug. 6, 2020) ("AR2 Initiation") (R. 9).  POR2 included entries made after the publication of the Timken Notice.  AR2 Initiation at 47,734.

On October 21, 2020, the Department issued its Preliminary Determination for AR1.  See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Review, and Partial

-8-

Discontinuation of Review; 2017–2019, 85 Fed. Reg. 66,930 (Dep't of Commerce Oct. 21, 2020) (R. 7).  In it, the Department announced that it was discontinuing the review with respect to Goodluck, in light of the Timken Notice.  Id. at 66,931 ("{I}n the *Timken Notice*, Commerce stated that it was implementing a partial exclusion from the Order for merchandise produced and exported by Goodluck.  As a result, we are hereby discontinuing this review with respect to Goodluck . . .").  The Department also emphasized that suspension of liquidation of Goodluck's entries would continue during the pendency of the appeals process.  Id. at 66,931-32.

On June 28, 2021, the Department issued its Preliminary Determination for AR2. See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India: Preliminary Results of Antidumping Duty Administrative Review; 2019-2020, 86 Fed. Reg. 33,980 (Dep't of Commerce June 28, 2021).  The Department preliminarily determined that Goodluck had no shipments of CDMT during POR2 but declined to rescind the review at that time.  Id. at 33,981. As in its AR1 Preliminary Determination, the Department noted that suspension of liquidation of Goodluck's entries would continue during the pendency of the appeals process.  Id.

On June 1, 2021, Commerce published a Notice of Opportunity to Request Review of CDMT entries from India for the third administrative review ("AR3") period, June 1, 2020 through May 31, 2021.  Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review, 86 Fed. Reg. 29,240 (Dep't of Commerce June 1, 2021) ("June 2021 Notice of Opportunity to Request Review").  Although Goodluck had an opportunity to request a third administrative review with respect to its entries Goodluck did not do so.  No party requested a review of Goodluck for AR3.  Dec. 29 FRN, 86 Fed. Reg. at 74,070 (R. 12).  On August 3, 2021, the Department initiated AR3 at the request of Petitioners and focused on the merchandise of another company subject to the Order.  See

Initiation of Antidumping and Countervailing Duty Administrative Reviews, 86 Fed. Reg. 41,821, 41,823 (Dep't of Commerce Aug. 3, 2021) ("Initiation of AD & CVD ARs") (R. 11).

On October 29, 2021, following the issuance of the CAFC's decision, the Department issued its Final Determination for AR2.  See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020, 86 Fed. Reg. 59,982 (Dep't of Commerce Oct. 29, 2021).  The Department continued to find that Goodluck made no shipments of subject merchandise to the United States during POR2 and indicated it would issue instructions in accordance with that finding. Id.

As previously recounted, on December 29, 2021, the Department published the Dec. 29 FRN, reinstating the Order as to unliquidated entries with respect to Goodluck based on the original Final Determination.  Dec. 29 FRN, 86 Fed. Reg. at 74,069 (R. 12).  The Dec. 29 FRN, further, resumed AR1 and reinitiated AR2 with respect to Goodluck.  Id. at 74,070 (R. 12).  The Department, however, gave an opportunity for parties to withdraw their requests for administrative review for both AR1 and AR2, given "the unique circumstances at issue," including the appeals process, the Timken Notice, and the reinstatement of the Order. Id. (R. 12).  Regarding AR3, the Department indicated it would instruct CBP to liquidate all entries for Goodluck made during POR3 at the 33.70 rate, the "rate that would have prevailed in the absence of the now-vacated CIT decision," because no party had requested administrative review with respect to Goodluck's entries made during that period.  Id. (R. 12).

On January 3, 2022, Goodluck filed comments requesting that the Department revise the Dec. 29 FRN.  See Letter from GDLSK to U.S. Department of Commerce, Pertaining to Goodluck Requesting Corrections of Reinstatement Notice (Jan. 3, 2022) (R. 13).  Goodluck

specifically asked the Department to "correct two errors" in the <u>Dec. 29 FRN</u>, namely the ordered liquidation of Goodluck's POR3 entries at the 33.70 percent rate and the collection of cash deposits of Goodluck's entries as of September 10, 2021.  <u>See id.</u>  On January 5, 2022, Petitioners filed comments in response to Goodluck's request, explaining that the Department did not err in requiring liquidation of Goodluck's POR3 entries and in reinstating cash deposits on September 10, 2021.  <u>See</u> Letter from Kelley Drye & Warren LLP to U.S. Department of Commerce, Pertaining to Petitioners' Comments on Correction of Reinstatement Notice (Jan 5, 2022) (R. 14).  Goodluck filed rebuttal comments on January 7, 2022.  <u>See</u> Letter from GDLSK to U.S. Department of Commerce, Pertaining to Goodluck Rebuttal to Petitioners' Correction Comments (Jan. 7, 2022) (R. 15).  On January 19, 2022, the Department denied Goodluck's requested revisions, because they were deemed to be requests for substantive revisions to a final determination and not ministerial error allegations.  <u>See</u> Memo from USDOC to File Pertaining to Interested parties Ministerial Error Memorandum (Jan. 19, 2022) (R. 16).

On January 27, 2022, Goodluck initiated this action.  <u>See</u> Summons, Jan. 27, 2022 (ECF No. 1); Complaint, Jan. 27, 2022 (ECF No. 2).  The Court entered an injunction, per Goodluck's request, on February 3, 2022 to enjoin liquidation of all entries of subject merchandise that were produced and exported by Goodluck and "were entered, or withdrawn from warehouse, for consumption, during the period June 1, 2020, through May 31, 2021" (<u>i.e.</u>, covering POR3), pending "a final court decision in this litigation."  Order, Feb. 3, 2022 (ECF No. 11).

## ARGUMENT

## I.   STANDARD OF REVIEW

In a residual jurisdiction action brought pursuant to 28 U.S.C. § 1581(i), the Court reviews the matter as provided in the Administrative Procedure Act ("APA"), under which the

Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."
5 U.S.C. § 706(A); 28 U.S.C. § 2640(e).

Under the APA, the "arbitrary and capricious" standard is deferential to the agency,
where the reviewing court "analyzes only whether a rational connection exists between the
agency's fact findings and its ultimate action." In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir.
2000).  An agency action will be found to be arbitrary and capricious if an agency, inter alia,
"entirely failed to consider an important aspect of the problem{ or} offered an explanation for its
decision that runs counter to the evidence before the agency." Motor Vehicle Mfr. Ass'n v. State
Farm Mutual Auto. Ins., 463 U.S. 29, 43 (1983) (citations omitted).  The court will uphold an
administrative action if the agency has "considered the relevant factors and articulated a rational
connection between the facts found and the choice made." Baltimore Gas & Electric v.
N.R.D.C., 462 U.S. 87, 105 (1983).

To determine if an agency has acted "in accordance with law," the court reviews
regulations adopted by an agency within its legislative delegation and mandate.  Defs. of
Wildlife v. Hogarth, 177 F. Supp. 2d 1336, 1343 (Ct. Int'l Trade 2001), aff'd sub nom. Defs. of
Wildlife, Earth Island Inst. v. Hogarth, 330 F.3d 1358 (Fed. Cir. 2003).  Statutory interpretation
is an issue of law, which the Court generally reviews de novo and without deference to an
administrative agency's interpretation.  Salman Ranch Ltd. v. United States, 573 F.3d 1362,
1370 (Fed. Cir. 2009) (citing AD Global Fund, LLC v. United States, 481 F.3d 1351, 1352-53
(Fed. Cir. 2007)).  Where Congress either leaves a gap in the construction of the statute that the
administrative agency is explicitly authorized to fill, or implicitly delegates legislative authority
to the agency, as evidenced by "the agency's generally conferred authority and other statutory

circumstances," the Court reviews the matter pursuant to the two-step inquiry set forth in

Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44 (1984).

II.     **BECAUSE NO PARTY REQUESTED A REVIEW OF GOODLUCK'S ENTRIES MADE DURING POR3, THE DEPARTMENT CORRECTLY INSTRUCTED CBP TO LIQUIDATE THOSE ENTRIES IN ACCORDANCE WITH THE COURT'S FINAL JUDGMENT**

Goodluck challenges the Department's instructions to CBP, in the Dec. 29 FRN, to

liquidate Goodluck's POR3 entries at the 33.70 rate of the original determination that was

ultimately upheld by the Federal Circuit.  According to Goodluck, its POR3 entries should have

liquidated at the "as-entered" rate of 0.00 percent.  See Pl.'s Br. at 25-30.  In the alternative,

Goodluck asserts that the Department was required by law and agency practice to have given

Goodluck a renewed opportunity to request an administrative review with respect to entries made

during POR3 after reinstatement of the Order.  See id. at 14-25.  Goodluck misapprehends the

applicable law governing liquidation and misconstrues the Department's practice regarding

administrative reviews.   Moreover, Goodluck's argument that the Department deprived

Goodluck of due process rights in treating its revision requests to the Dec. 29 FRN as ministerial

error allegations is misplaced.  Id. at 30-34.

A.     **Goodluck's Claim that the Department Should Liquidate Entries at an As-Entered Rate Is Unsupported By Law**

Goodluck incorrectly asserts that the Department was "required by law" in the Dec. 29

FRN to instruct CBP to liquidate Goodluck's entries made during POR3 at the as-entered rate of

0.00 percent.  See Pl.'s Br. at 25-30.  Goodluck's argument relies on a selective presentation of

the Department's regulations and ignores the suspension on liquidation applicable to Goodluck's

entries through the Timken Notice.

Importers entering merchandise in the United States are required to make cash deposits at rates established in a final determination of an antidumping investigation.  19 C.F.R. § 351.212.  Because the United States uses a "retrospective" assessment system, where final liability for antidumping duties is determined after importation, the actual duty assessment is not determined until after the entries are liquidated by CBP.  Id. at § 141.1(a); 19 U.S.C. § 1675(a)(2); Parkdale Int'l v. United States, 475 F.3d 1375, 1376-77 (Fed. Cir. 2007).  As a general rule, entries are deemed liquidated within one year of entry.  19 U.S.C. § 1516a(c)(1); see also Fujitsu Gen. Am., Inc. v. United States, 283 F.3d 1364, 1376 (Fed. Cir. 2002).  Liquidation, however, may be suspended by statute to complete, for example, an administrative review or by court order challenging the Department's final determination.  19 U.S.C. § 1675(a)(1); accord Koyo Corp. v. United States, 497 F.3d 1231, 1241-42 (Fed. Cir. 2007); American Permac, Inc. v. United States, 642 F. Supp. 1187, 1191 (Ct. Int'l Trade 1986); Ambassador Div. of Florsheim Shoe v. United States, 748 F.2d 1560 (Fed. Cir. 1984).

During administrative review, the Department determines the correct assessment rate of the subject entries and will then direct Customs to apply that rate after publication of the final results.  19 U.S.C. §§ 1675(a)(2), (a)(3)(B).  If no administrative review is requested, the Department will instruct CBP to assess antidumping duties equal to the cash deposit rate "required on that merchandise at the time of entry" and to continue to collect cash deposit rates.  19 C.F.R. § 351.212(c)(1).  When suspension is lifted on entries previously suspended by statute or court order, CBP must liquidate those entries within six months of receiving notice of the removal of suspension of liquidation by the Department and in accordance with that final determination.  19 U.S.C. §§ 1504(d), 1516a(c).

Goodluck ignores the interplay between suspension of liquidation and the final assessment of AD duties.  Instead, it focuses only on the Department's automatic assessment of antidumping duties if no administrative review is requested.  Pl.'s Br. at 25-26.  Although Goodluck paid a 0.00 cash deposit rate for its entries made during POR3, consistent with the Department's automatic assessment regulation, those entries were suspended pending the appeals process.  As the Department explained in the Timken Notice,

> {T}he suspension of liquidation must continue during the pendency of the appeals process. *Additionally, we will instruct CBP to suspend liquidation of all unliquidated entries from Goodluck at a cash deposit rate of 0.00 percent which are entered, or withdrawn from warehouse, for consumption on or after May 10, 2020.*

See Timken Notice, 85 Fed. Reg. at  31,743 (emphasis added).

Importantly, that Timken Notice preserved the *status quo ante*.  In issuing the Timken Notice, the Department suspended liquidation on all of Goodluck entries entered on or after May 10, 2020 – thereby including entries covered by POR3 – until there was a conclusive court decision concerning the correct rate to apply to the relevant entries.  The Timken Notice functioned to prevent a "yo-yo" effect on liquidations that could occur if liquidation were not otherwise suspended.  Timken Co. v. United States, 893 F.2d 337, 342 (Fed. Cir. 1990).  Instead, suspension of liquidation on Goodluck's entries meant that those entries would  only "be liquidated in accordance with that conclusive {court} decision," and not based on any interim (and ultimately incorrect) decision, like Goodluck II which resulted in a 0.00 cash deposit rate for Goodluck.  Id.  Ordering automatic assessment of Goodluck's entries at that 0.00 percent cash deposit rate, as Goodluck argues, would have the undesirable "yo-yo" effect, contrary to the Court of Appeals' decision in Timken, and implement a rate that was ultimately determined to be

incorrect.  Cf. Andaman Seafood Co. v. United States, 675 F.Supp.2d 1363, 1369 (Ct. Int'l Trade 2010) ("{A}n invalid antidumping determination cannot serve as a legal basis for the imposition of antidumping duties."); see also Snap-on, Inc. v. United States, 949 F. Supp. 2d 1346, 1353-54 (Ct. Int'l Trade 2013).

Importantly, Goodluck was put on notice that the 0.00 percent cash deposits paid would not necessarily be its final duty liability, as the Department had suspended liquidation on Goodluck's entries made on or after May 10, 2020, i.e., entries made during POR3.  See generally Timken Notice.  It also knew that its original deposit rate was 33.70 percent and therefore should have been aware of the risk that it could be assessed this higher rate of duty due to the appeal.  Yet it elected to ignore the June 2021 Notice of Opportunity to Request Review for these entries at a time when the appeal was pending before the CAFC.  The Department made no statement as to the *assessment* of duties on suspended entries for POR3.  The Department, therefore, acted in accordance with law when it reinstated the Order following final court judgment and instructed CBP in the Dec. 29 FRN to liquidate Goodluck's entries made during the POR3 period at "the cash deposit rate that would have prevailed in the absence of the now-vacated CIT decision." Dec. 29 FRN, 86 Fed. Reg. at 74,070 (R. 12); see also 19 U.S.C. § 1504(d).

In this regard, Goodluck's reliance on the CIT's decision in Mittal Canada, Inc. v. United States, 414 F. Supp. 2d 1347 (Ct. Int'l Trade 2006) is misplaced.  In that case, the Department issued an antidumping order assigning a dumping margin of 8.11 percent to all manufacturers/exporters that were not otherwise assigned a lower rate.  Id. at 1349. Manufacturer/exporter Ispat Sibdec Inc. ("Ipsat") was subject to a lower 3.86 percent rate.  Id. Subsequently, because Ipsat changed its name to Mittal Canada Inc. ("Mittal"), Ipsat initiated a

changed circumstance review for the Department to account for its name change with respect to the cash deposit rate.  Id. at 1349, 1356.  Importantly, as the court noted, the changed circumstance review did not halt liquidation of Ispat's entries.  Id. at 1355-56.  In its final determination of the changed circumstance review, the Department found Mittal to be Ispat's successor-in-interest for cash deposit purposes and assigned Mittal the same cash deposit rate as Ipsat for entries following publication of the final determination.  Id. at 1350.  Because CBP issued instructions to liquidate entries already entered before the final results of the changed circumstances review at the rate in effect at the time of entry (i.e., the higher 8.11 percent rate), Mittal petitioned the CIT for a temporary restraining order ("TRO") and preliminary injunction to stop liquidation.  Id.  Although the court entered a TRO as a precaution, it ultimately denied the preliminary injunction because Mittal was unable to demonstrate that the final changed circumstances determination encompassed a commitment by the Department to treat Mittal as a successor-in-interest for duty assessment purposes.  Id. at 1350, 1355.  Because Mittal's entries were not suspended – unlike Goodluck's here – the court concluded that the liquidation instructions were in harmony with the law governing assessment of antidumping duties.  Mittal Canada, therefore, is factually distinct and does not support Goodluck's claim that the Department erred in instructing CBP to liquidate Goodluck's AR3 entries at the 33.70 percent rate – a rate that is in harmony with the Department's original final determination and with the ultimate Court decision as implemented by the Dec. 29 FRN..

### B.   The Statute, the Department's Regulations and Agency Practice Do Not Compel the Department to Permit Administrative Review Requests After the Period to Make Such Requests Has Elapsed

Goodluck claims that the Department should have permitted Goodluck to request review of entries made during POR3 after the Order was reinstated in the Dec. 29 FRN, because, in the

absence of clear statutory direction or on-point regulations, the Department has allegedly developed a practice of permitting such renewed requests.  Id. at 15-16.  Goodluck is wrong.

Each year, during the anniversary month of the publication of an antidumping duty order, an interested party "may request in writing" that the Department conduct an administrative review "of specified individual exporters or producers covered by an order."   19 C.F.R. § 351.213(b); see also 19 U.S.C. § 1675(a)(1).   The review period covers entries of subject merchandise during the 12 months immediately preceding the most recent anniversary month.   19 C.F.R. § 351.213(e)(1).   After receiving a request for review, the Department will publish a notice of initiation of the review and conduct the review in accordance with its regulations by, for example, issuing questionnaires, conducting a verification, and issuing preliminary and final results.   See 19 C.F.R. § 351.221; see also Transcom, Inc. v. United States, 123 F. Supp. 2d 1372, 1374 (Ct. Int'l Trade 2000) (discussing the Department's steps to conduct an administrative review).

As relevant to Goodluck's claims, neither the statute nor the Department's regulations contemplate allowing an interested party to request a review *after* the anniversary month of the publication of an antidumping duty order.  The Department's regulations state that an interested party "may request in writing" an administrative review "{e}ach year during the anniversary month of the publication of an antidumping . . . duty order."   Id. at § 351.213(b)(1).  Further, the subsequent investigatory steps taken by the Department to conduct a review, which are each subject to strict statutory deadlines, 19 U.S.C. § 1675(a)(2)(B)(iii), do not require the Department to exercise any "discretion" to entertain a second opportunity for administrative review request following the anniversary month of the publication of an antidumping duty order.   Cf. Pl.'s Br. at 15.  Goodluck misconstrues the statute and the Department's regulations.

Goodluck's characterization of the Department's alleged practice to permit interested parties to request administrative review after the anniversary month of the publication of an antidumping duty order stems from a misreading of the Department's prior decisions. See id. at 15-25. Goodluck specifically refers to the Department's notices issued in its sunset review of an antidumping duty order on Ball Bearings from Japan and the United Kingdom ("Ball Bearings"), as well as an administrative review of an antidumping duty order on Xanthan Gum from China ("Xanthan Gum"). Id. (citing Ball Bearings and Parts Thereof From Japan and the United Kingdom: Notice of Reinstatement of Antidumping Duty Orders, Resumption of Administrative Reviews, and Advance Notification of Sunset Reviews, 78 Fed. Reg. 76,104 (Dep't of Commerce Dec. 16, 2013) ("Ball Bearings Reinstatement Notice"); Xanthan Gum From the People's Republic of China: Notice of Court Decision Not in Harmony With Amended Final Determination in Less Than Fair Value Investigation; Notice of Amended Final Determination Pursuant to Court Decision; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of Fourth and Fifth Antidumping Duty Administrative Reviews in Part, 83 Fed. Reg. 52,205 (Dep't of Commerce Oct. 16, 2018) ("Xanthan Gum Timken Notice"). Each, however, is factually distinct, and, together, they do not establish any agency "practice" requiring the Department to provide Goodluck a second bite at the apple.

Ball Bearings concerned the Department's second *sunset* review of antidumping duty orders, where, following a challenge to the CIT, the International Trade Commission ("ITC") found, on remand, that revocation of the orders would not be likely to result in material injury to the domestic industry. Ball Bearings Reinstatement Notice, 78 Fed. Reg. at 76,104. The CIT affirmed the ITC's remand redetermination, prompting the Department to issue a Timken notice. Id.; see also NSK Corporation v. United States, 774 F. Supp. 2d 1296 (Ct. Int'l Trade 2011); Ball

Bearings and Parts Thereof From Japan and the United Kingdom: Notice of Court Decision Not in Harmony With Continuation of Antidumping Duty Orders, 76 Fed. Reg. 35,401 (Dep't of Commerce June 17, 2011).  Thereafter, on July 15, 2011, the Department provisionally revoked the antidumping duty orders in their entirety. Ball Bearings Reinstatement Notice, 78 Fed. Reg. at 76,104.  The Department, in its revocation notice, discontinued all unfinished administrative reviews and announced it would not initiate any new administrative reviews of the orders.  Thus, no opportunity to request a review would be provided to any party – a key difference from the Department's Timken Notice in this case, which only provisionally revoked the Order with respect to Goodluck but did not prevent any interested party, including Goodluck, from requesting an administrative review.  Id.; see also Ball Bearings and Parts Thereof From Japan and the United Kingdom: Revocation of Antidumping Duty Orders, 76 Fed. Reg. 41,761, 41,763 (Dep't of Commerce July 15, 2011).  On appeal, the CAFC reversed and vacated the CIT's decision, ordering reinstatement of the ITC's affirmative injury determination.  Ball Bearings Reinstatement Notice, 78 Fed. Reg. at 76,104.  As a result, on December 16, 2013, the Department reinstated the orders, as well as *resumed* the discontinued administrative reviews. Id. at 76,105.  Having previously not provided any party with an opportunity to request a review due to the provisional revocation of the entire order, the Department also permitted all interested parties to request administrative reviews for the orders for the periods preceding the anniversary months during which the Department had announced it would not initiate any new administrative reviews. Id. at 76,106.  Because the litigation concerned the Department's second sunset review, a final court judgment affirming the ITC's finding of no injury would have revoked the orders in their entirety, mooting any administrative reviews – another factual distinction from the challenged proceeding at issue here.  In Ball Bearings, as a result, the Department never

published any notice of opportunity to request administrative review.  At most, therefore, <u>Ball Bearings</u> stands for the Department giving interested parties the opportunity to request administrative reviews when the Department had itself foreclosed all such possibility in a sunset review.

Goodluck, by contrast, had the opportunity to request an administrative review of entries made during POR3 in the anniversary month.  The Department published a Federal Register notice inviting all interested parties to request an administrative review of POR3 entries, and that notice did not in any way limit the rights of interested parties – including Goodluck – to request a review.  <u>See</u> June 2021 Notice of Opportunity to Request Review.[3]  Contradicting Goodluck's claim to this Court, Goodluck itself requested an administrative review with respect to its POR2 entries after the publication of the <u>Timken Notice</u>, on May 27, 2020, an action it now claims it was prevented from taking for its POR3 entries.  Goodluck tellingly observed in its POR2 review request that "{a}lthough the notice effectively revoked the *Order* with respect to Goodluck, it also continues to suspend entries from Goodluck pending any appeals" and, "{a}s such{,} we are requesting this review in order to preserve the review of Goodluck's entries."  <u>See</u> Letter from GDLSK to Sec of Commerce Pertaining to Goodluck Req. for Admin Review (June 30, 2020) (R. 8).  Thus, Goodluck was well aware of its ability and obligation to file a protective review request to preserve its rights.  <u>Cf.</u> <u>Snap-on, Inc. v. United States</u>, 949 F. Supp. 1346, 1354 (Ct. Int'l Trade 2013) (observing that the statute "provides two pathways" to challenge an order "in a way that insures retrospective application of a correct rate—a challenge to the investigation and a

---

[3]    Petitioners, in fact, requested administrative review with respect to the entries of another Indian respondent, which the Department subsequently initiated.  <u>See</u> <u>Initiation of AD & CVD ARs</u> at 41, 823 (Dep't of Commerce Aug. 3, 2021).

challenge to the administrative review," and holding that plaintiff's failure to "properly use these mechanisms . . . undermines both the legal and equitable arguments" plaintiff offered in favor of its requested rate). Goodluck's POR3 entries were likewise suspended pending any appeals, even though the Order was provisionally revoked with respect to Goodluck. Goodluck failed to request review to "preserve" review of its POR3 entries, and it has not distinguished its lack of action in POR3 from its conclusion in POR2 that it needed to request a review during the pendency of the litigation to "preserve the review" of its entries. Not only is Ball Bearings factually distinct from this case, Goodluck's actions in POR2 contradict its claim that the Department improperly denied Goodluck the opportunity to request administrative review.

Xanthan Gum is likewise inapposite. In Xanthan Gum, the Department issued a Timken notice following the CIT's affirmation of the Department's remand redetermination. Xanthan Gum Timken Notice, 83 Fed. Reg. 52,205 (Dep't of Commerce Oct. 16, 2018). Because the Department recalculated a de minimis margin for respondent Fufeng, the Department indicated in the Timken notice that it was provisionally excluding Fufeng from the antidumping order and that it was discontinuing the ongoing administrative reviews, in part, with respect to Fufeng. Id. at 52,206. The Department also announced that it would not initiate any new administrative reviews regarding Fufeng. Id. On appeal, the CAFC reversed the CIT's conclusion that resulted in the calculation of a de minimis margin for Fufeng and upheld the Department's determination. See Xanthan Gum From the People's Republic of China: Notice of Third Amended Final Determination Pursuant to Court Decision, 85 Fed. Reg. 40,967, 40,968 (Dep't of Commerce July 8, 2020). The Department thereafter reinstated the order and resumed the previously requested administrative reviews with respect to Fufeng; it did not provide any party with the opportunity to request a review outside of the anniversary month of the order for that period. Id.

at 40,698-99.  Xanthan Gum, therefore, does not stand for the proposition that the Department will provide a renewed opportunity for any interested party to seek an administrative review outside of the original opportunity to request a review during the anniversary month.

Goodluck argues that Xanthan Gum, like Ball Bearings, indicates that the Department does not review entries made under provisionally revoked orders, thus absolving Goodluck's failure to request administrative review of entries made during POR3.  Pl.'s Br. at 19-21.  That argument ignores that the Department, here in fact, *resumed* previously discontinued administrative reviews that covered entries, like it did in both Ball Bearings and Xanthan Gum. Cf. BMW of N. Am. LLC v. United States, 926 F.3d 1291, 1299 (Fed. Cir. 2019) (Because an "antidumping order survives revocation and subsequent reinstatement{, it} is reasonable, therefore, to interpret the related administrative review thereof as similarly surviving revocation.").  Commerce thus acted consistently with its precedents in Xanthan Gum and Ball Bearings by resuming the initiated reviews of Goodluck for POR1 and POR2, but, for Goodluck's POR3 entries, there was no initiated review to resume.

Further, the Department's pause on administrative reviews of Goodluck pending appeal does not mean that the subject entries during that review were no longer "reviewable" (i.e., no longer subject to the order and a review request requirement). That is a characterization by Goodluck, not a legal concept based in the statute or regulations.  As a factual matter, Goodluck admits that there were in-scope POR3 entries for which liquidation remained "suspended" and thus subject to the order if the order were ultimately upheld.  See, e.g., Pl.'s Br. at 12.  Nowhere does Goodluck explain why a suspended entry would not remain subject to the order.  Indeed, suspended entries (i.e., those have that have not been liquidated) are required to hold any review. 19 C.F.R. § 351.213(e)(1).  If Goodluck's entries would not have been "reviewable" in any

event, there would have been no reason to continue suspension of liquidation. Having entries subject to an antidumping order, Goodluck's entries were also subject to the requirement that a valid review request was necessary to challenge the applicable duty rate on suspended entries. In contending that it had no "reviewable" POR3 entries on which to base a review request, Goodluck creates a fictional barrier to administrative review. Unsurprisingly, Xanthan Gum does not substantiate Goodluck's view that an interested party cannot request administrative review for suspended entries.

Assuming for argument's sake that Ball Bearings and Xanthan Gum support Goodluck's argument that the Department could have offered a renewed opportunity to Goodluck to request administrative review for its AR3 entries, those two cases do not amount to agency "practice" requiring such an opportunity as Goodluck suggests. See Pl.'s Br. at 19-24. Agency action becomes practice "when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to" the agency's past action. United States Steel Corp. v. United States, 348 F. Supp. 3d 1248, 1254 (Ct. Int'l Trade 2018) (internal citations omitted). The CIT has held that "two prior determinations are not enough to constitute an agency practice," Shandong Huarong Mach. Co. v. United States, 435 F. Supp. 2d 1261, 1282 n.23 (Ct. Int'l Trade 2006), whereas a methodology used "repeated and regularly" constituted agency practice. Huvis Corp. v. United States, 525 F.Supp. 2d 1370, 1379 (Ct. Int'l Trade 2007). Goodluck has not cited sufficient agency actions to support a "practice" Particularly here where the circumstances are factually distinct. Even if the Department in Xanthan Gum had given interested parties an opportunity to request administrative review after the CAFC reversal of the CIT decision revoking the order – which the Department did not do – that action, together with Ball Bearings, would not establish a "uniform and established

-24-

procedure . . . that would lead a party, in the absence of notification of change, reasonably to expect adherence to the established practice or procedure." Ranchers–Cattlemen Action Legal Foundation v. United States, 74 F. Supp. 2d 1353, 1374 (Ct. Int'l Trade 1999).

Having appropriately requested a POR2 administrative review under similar factual circumstances, Goodluck cannot now argue that it could reasonably have expected Commerce not to require the same of it in POR3. Indeed, while Goodluck also points to the Department's AR2 initiation notice as a third instance evidencing the Department's practice (Pl.'s Br. at 18-19), Goodluck admits that the Department did not rescind AR2 with respect to Goodluck – it suspended the review. See id. at 8 (citing AR2 Initiation, 85 Fed. Reg. 47,733 n.5 (R. 9)). It is unclear how the AR2 initiation notice could support a practice of the Department permitting administrative review requests after a CAFC reversal of a CIT decision revoking an order. In sum, all three agency actions cited by Goodluck did not follow the claimed practice and, even if they did, three discrete instances would not clear the bar to establish an agency "practice" compelling the Department to grant Goodluck's request.

## C.   The Department Afforded Goodluck Notice and Sufficient Process Regarding the Reinstatement of the *Order*

Goodluck claims that the Department deprived it of its due process rights when the Department reinstated the Order in the Dec. 29 FRN and instructed CBP to liquidate Goodluck's AR3 entries at the 33.70 percent rate. Pl.'s Br. at 30-34. According to Goodluck, the Department improperly treated its revision requests to the Dec. 29 FRN as ministerial error allegations, when the Department was required to address Goodluck's substantive claims. Goodluck is mistaken; the Department provided the requisite notice and all the process that was due it under law.

As an initial matter, the Department's <u>Dec. 29 FRN</u>, as Goodluck recognizes, was an amended final determination, which functionally reinstated the <u>Order</u> with respect to Goodluck in accordance with the Court's final judgment.  <u>See</u> <u>generally</u> <u>Dec. 29 FRN</u> (R. 12); <u>see</u> <u>also</u> Pl.'s Br. at 32.   Goodluck's claim that it was "never afforded an opportunity to submit factual information or briefing" regarding the Department's amended final determination and that it "was deprived of 'a meaningful opportunity to participate in the administrative proceeding,'" makes little sense.  Goodluck had two opportunities to challenge the 33.70 percent rate but it only took advantage of one.  Pl.'s Br. at 32.  Goodluck, first, had the opportunity throughout the administrative proceeding and the resulting appeal to challenge the Department's original <u>Final Determination</u> and the 33.70 percent rate, but it was ultimately unsuccessful.  <u>Cf.</u> <u>Goodluck IV</u>. Goodluck, second, could have requested administrative review of its POR3 entries – just as it did for POR2 – to seek a different antidumping duty rate.  <u>Cf.</u> <u>Snap-on, Inc.</u>, 949 F. Supp. 2d at 1355 ("The benefit from lower {AD} rates calculated in an administrative review or subsequent judicial review must be obtained by participating in the review processes, which is intended as the proper forum for challenging erroneous rate determination.").  Goodluck, however, failed to do so.

 Goodluck seeks to bypass its failure to request administrative review in arguing that the Department should have afforded Goodluck an opportunity to "submit case briefs" on the applicable duty rate to liquidate Goodluck's entries made during POR3.  Doing so, however, would improperly re-open an issue, resolved through final court judgment, before the agency. Pl.'s Br. at 32.  The court ultimately upheld the 33.70 percent rate, which the Department implemented with respect to Goodluck's unliquidated entries in the <u>Dec. 29 FRN</u>.

Goodluck's claim that it has a "property interest in the ADD rate" for its entries made during POR3 is incorrect.  For Goodluck to succeed on its procedural due process claim, a protected property interest must exist.  See Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  Evidence of that protected property interest lies in "existing rules or understandings that stem from an independent source such as state law."  Id. (citing Paul v. Davis, 424 U.S. 693, 709) (1976)).  "{A} unilateral expectation of receiving an economic benefit fails to constitute a protected property interest." Cevallos v. City of Los Angeles, 914 F. Supp. 379, 383 (C.D. Cal. 1996).  Goodluck does not identify a rule, regulation, or law that gives rise to a constitutionally protected property interest in a particular antidumping duty rate.  See Pl.'s Br. at 30-34.  Nor could it.  As the Court of Appeals for the Federal Circuit has recognized, an importer does not necessarily have a legal right to the maintenance of a particular duty.  See Gilda Indus., Inc. v. United States, 446 F.3d 1271, 1284 (Fed. Cir. 2006); see also Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 318 (1933).  The cases cited by Goodluck do not support its claim of deprivation of any protected property right in a particular antidumping duty applied to its entries.  Nereida Trading Co. v. United States, 683 F. Supp. 2d 1348 (Ct. Int'l Trade 2010) (assuming that plaintiff had a protected property interest in reimbursement of antidumping duties but finding that plaintiff was not deprived of procedural due process because the Department put plaintiff on notice of liquidation and plaintiff failed to file a certification of non-reimbursement prior to liquidation); NAR, S.p.A. v. United States, 707 F. Supp. 553, 561 (Ct. Int'l Trade 1989) (finding a due process right in plaintiff's right to obtain information obtained by the Department in preparation of a disclosure conference but concluding the Department did not deprive plaintiff of procedural due process as the Department's information disclosure met the requirements of

law); Techsnabexport, Ltd. v. United States, 795 F. Supp. 428, 436 (Ct. Int'l Trade 1992) (finding no protected interest in possible future lost business opportunities).

Even if Goodluck could establish a constitutionally protected property right to a particular antidumping duty rate, Goodluck has not demonstrated that the Department's actions deprived it of such a right. The Department acted in accordance with statute and its regulations when it issued the Dec. 29 FRN, reinstating the original determination in accordance with the court's final decision. Moreover, because the Dec. 29 FRN was an amended *final* determination, the Department, in accordance with its regulations, properly treated Goodluck's revision request as a ministerial error allegation. Cf. 19 C.F.R. § 351.224. Goodluck's claim that the Department denied it process in reviewing the revisions as ministerial errors is misplaced.

Finally, and fundamental to Goodluck's claim of denial of due process, is its presumption that the Department's Dec. 29 FRN was a Timken notice, to which procedural due process rights attach. Nowhere in the Department's Dec. 29 FRN does the Department refer to Timken. Goodluck rightly observes that the Dec. 29 FRN served "multiple purposes," see Pl.'s Br. at 33, but it did not serve as a notice of any court decision that is "not in harmony with" a final determination. See Timken Co. v. United States, 893 F.2d 337, 342 (Fed. Cir. 1990). The Dec. 29 FRN reinstated the Order because of a court decision that upheld, and was "in harmony," with the Department's original determination. See generally Dec. 29 FRN (R. 12); Goodluck III. Unlike a Timken notice, the effect of which is to "indicate that liquidation should no longer take place in accordance with Commerce's determination," the Dec. 29 FRN indicated that liquidation should take place in accordance with the Department's original Final Determination, as amended. Timken, 893 F.2d at 341. Goodluck incorrectly posits that because the Department issued a "Timken" notice, the Department should have indicated "its position" regarding

Goodluck's POR3 entries and not ordered liquidation.  Pl.'s Br. at 32.  The legal consequences

Goodluck desires from its mischaracterization of the Dec. 29 FRN do not follow, because that

notice was not a Timken notice.

## III.   THE SEPTEMBER 10, 2021 EFFECTIVE DATE OF GOODLUCK'S CASH DEPOSIT RATE IS IN ACCORDANCE WITH LAW

Goodluck challenges the Department's determination to set the cash deposit rate

applicable to Goodluck as of September 10, 2021.  Pl.'s Br. at 34-41. According to Goodluck,

December 29, 2021, was the earliest date on which the Department was authorized to instruct

CBP to begin collecting cash deposits at a 33.70 percent rate, because the effective date of the

reinstatement of the Order did not occur until December 29, 2021, when the Department

published the Dec. 29 FRN.   Id.   In the alternative, Goodluck posits that the earliest the

Department could have instructed the collection of cash deposits was November 28, 2021, ten

days after the issuance of Goodluck IV.  Each of Goodluck's claims are wrong.

Goodluck conflates the timing for the Department to issue liquidation instructions with

that to collect cash deposits.  Goodluck's argument proceeds from the legally incorrect premise

that an instruction to collect cash deposits, like liquidation, must occur within ten days from the

issuance of a final court decision.  Id. at 35 (citing 19 U.S.C. §§ 1516a(c), (e)).  Liquidation and

the collection of cash deposits, however, are distinct concepts, as reflected in the statute.

Compare 19 U.S.C. §§ 1673b(d), 1673d(c)(1)(B)(ii), 1673e(a), 1673e(c)(3), 1675, 1673f(b)(2)

and 1677g (referring to cash deposits) with 19 U.S.C. §§ 1500, 1504, 1505, 1514, 1516a and

1520 (referring to liquidation).  Accordingly, the CIT has held that "the fact that liquidation must

await a final and conclusive court decision has no bearing on Commerce's duty to . . . instruct the

collection of cash deposits."  Diamond Sawblades Mfrs. Coalition v. United States, 650 F. Supp.

2d 1331, 1342 (Ct. Int'l Trade 2009), aff'd 626 F.3d 1374 (Fed. Cir. 2010); see also Decca Hosp. Furnishings, LLC v. United States, 427 F. Supp. 2d 1249, 1262 (Ct. Int'l Trade 2006) ("{T}hat Customs may only liquidate certain entries in accordance with a final and conclusive decision has no bearing on Customs' responsibilities as to the collection of cash deposits").  Except for liquidation, a final determination "becomes legally operative on the date that this Court issues a final decision sustaining it."  Diamond Sawblades Mfrs. Coalition v. United States, 650 F. Supp. 2d 1331, 1352 (Ct. Int'l Trade 2009), aff'd 626 F.3d 1374 (Fed. Cir. 2010).

For example, in Decca Hosp. Furnishings, LLC v. United States, plaintiff challenged the Department's application of a "PRC-wide" 198 percent cash deposit rate to plaintiff's entries, after the Department's determined, on remand, that plaintiff was entitled to the separate 6.65 percent rate.  427 F. Supp. 2d 1249, 1253-54 (Ct. Int'l Trade 2006).  Despite this determination on remand and the court's affirmation of the Department's remand determination, the Department declined to issue amended cash deposit instructions until "'after it has published an amended final determination,'" which would follow a "final and conclusive" court decision, i.e., one for which all appeals have lapsed.  Id. at 1254 (quoting the Department's remand redetermination). On appeal, the court held that the Department unlawfully failed to implement the cash deposit rate.  Specifically, the court disagreed with the Department that the collection of cash deposits at the lower rate had to await the end of the appeals period. Id. at 1262-63.  Unlike the collection of cash deposits, the court noted that liquidation occurs in accordance with a final court decision, and that the statute differentiates between liquidation and the collection of cash deposits.  Id.  Because the Department had a "clear duty" to implement the cash deposit rate required by the court's affirmation of the remand determination (and the remaining requirements for mandamus were met), the court granted plaintiff's writ of mandamus, compelling the

Department to apply the lower cash deposit rate.  Id. at 1263-64.  The court's decision in Decca demonstrates that Goodluck's claims regarding the "finality" of Goodluck III are irrelevant to the Department's duty to issue cash deposit instructions, following a court's affirmation of a determination.  Pl.'s Br. at 36-38.

Moreover, here, the Department properly required the collection of cash deposits after the court issued its decision in Goodluck III, before the appeals period had lapsed.  Goodluck, however, mistakenly claims that "the effective date" of a determination must be the same as its publication date in the Federal Register.  Pl.'s Br. at 37-38.  Goodluck relies on Sumecht NA, Inc. v. United States and Shelter Forest Int'l Acquisition, Inc. v. United States, but those cases do not concern the Department's issuance of cash deposit instructions.  Sumecht NA, Inc. v. United States, 399 F. Supp. 3d 1370 (Ct. Int'l Trade 2019) (concerning the Department's late issuance of a Timken notice); Shelter Forest Int'l Acquisition, Inc. v. United States, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) (concerning the Department's publication of an administrative review initiation notice).

Not only is Goodluck wrong to allege that the Dec. 29 FRN publication date must also be the "effective date" for the collection of cash deposits, it incorrectly claims, in the alternative, that cash deposit collection could not commence before November 28, 2021, ten days after the court issued Goodluck IV.  Pl.'s Br. at 39-41.  Again, as Decca holds, the duty to collect cash deposits does not depend on a "final court judgment."  Cf. 427 F. Supp. 2d 1249, 1262-64.[4]

---

[4]    The earliest, correct effective date for the collection of cash deposits at the 33.70 rate was August 31, 2021, the date of the CAFC's issuance of Goodluck III.  Specifically, the CAFC's decision reversing the CIT and upholding Goodluck's antidumping duty rate became effective as of the date of that decision.  Cf. Decca, 427 F. Supp. 2d at 1262-64.  The net result is that Goodluck benefited from the 0.00 rate cash deposit rate by ten days.  Neither the Government

(cont'd on next page)

Finally, Goodluck is incorrect to assert that it has a "protected property interest" in the effective date of the cash deposit rate and that the Department denied Goodluck procedural due process in treating Goodluck's Dec. 29 FRN revision request as a ministerial error allegation. Pl.'s Br. at 41.  Goodluck does not refer to a rule, regulation, or law that gives rise to a constitutionally protected property interest in the cash deposit effective date, nor does Goodluck refer to any case that found a property interest in a cash deposit effective date.  Cf. Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  Moreover, Goodluck's contention that it has a property interest in the effective date of cash deposit collection rate amounts to a claim that it has a property interest in a particular antidumping duty rate.  For the reasons explained, infra at Section II.C., Goodluck's contention it was deprived of due process is meritless.

## CONCLUSION

For the reasons provided in this response brief, Defendant-Intervenors respectfully request that this Court reject the claims of Plaintiffs and sustain the Department's liquidation and cash deposit instructions in the Dec. 29 FRN.

Respectfully submitted,

/s/ R. Alan Luberda
R. ALAN LUBERDA
DAVID C. SMITH
JULIA KUELZOW

Counsel to Defendant-Intervenors

---

nor Defendant-Intervenors appealed this issue, but the use of the September 10, 2021 date does not prejudice Goodluck.

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, setting the word limitation to the Response Brief of Defendant-Intervenors ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, PTC Alliance Corp., Webco Industries, Inc., Zekelman Industries, Inc., and Plymouth Tube Co., USA (collectively, "Defendant-Intervenors") to 14,000 words, counsel for Defendant-Intervenors certifies that the attached Response Brief contains **9,646 words**, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

Respectfully submitted,

/s/ R. Alan Luberda
R. ALAN LUBERDA
DAVID C. SMITH
JULIA KUELZOW
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, PTC Alliance Corp., Webco Industries, Inc., Zekelman Industries, Inc., and Plymouth Tube Co., USA

Dated:  April 3, 2023