**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

_____

| | |
|---|---|
| GOODLUCK INDIA LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Court No. 22-00024 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ARCELORMITTAL TUBULAR ) | |
| PRODUCTS, *et al.*, ) | |
| ) | |
| Defendant-Intervenors. ) | |

_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRYAN BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Assistant Director

s/ Ioana Cristei Meyer
IOANA CRISTEI MEYER
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-0001

OF COUNSEL:

AYAT MUJAIS
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
United States Department of Commerce

April 3, 2023

Attorneys for Defendant

# TABLE OF CONTENTS

STATEMENT PURSUANT TO USCIT RULE 56.1(c)(1) ........................................................ 2

    I.    Administrative Determination Under Review ...................................................... 2

    II.    Statement Of The Issues Presented For Review ................................................... 2

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ....................................................................................................................... 5

    I.    Standard Of Review .......................................................................................... 5

    II.    Goodluck Has Not Demonstrated That Commerce's Decision To Liquidate Goodluck's AR3 Entries At The Investigation Rate Was Arbitrary, Capricious, Or Contrary To Law .................................................................................................. 6

        A.    Goodluck Did Not Request Review Of Its Third Administrative Review Entries ......................................................................................................... 7

        B.    The Investigation Rate Of 33.70 Percent Is The Appropriate Liquidation Rate .............................................................................................................. 12

    III.    Commerce's Determination That Goodluck's Cash Deposit Rate Became Effective On September 10, 2021, Was Not Arbitrary, Capricious, Or Contrary To Law, Nor Did This Determination Fail To Afford Goodluck Due Process .......... 14

CONCLUSION ..................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*BMW of N. Am. LLC v. United States*,
   208 F. Supp. 3d 1338 (Ct. Int'l Trade 2017) ........................................................ 8

*BMW of N. Am. LLC. v. United States*,
   926 F.3d 1291 (Fed. Cir. 2019) ........................................................................ 7

*Bowman Transp. Inc. v. Arkansas-Best Freight System*,
   419 U.S. 285 (1974) .......................................................................................... 6

*Consolidated Bearings Co. v. United States*,
   348 F.3d 997 (Fed. Cir. 2003) .......................................................................... 5

*Diamond Sawblades Mfr's Coalition v. United States*,
   626 F.3d 1374 (Fed. Cir. 2010) ...................................................................... 13

*F.C.C. v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) .......................................................................................... 6

*Floral Trade Council v. United States*,
   888 F.2d 1366 (Fed. Cir. 1989) ........................................................................ 7

*Goodluck India Limited v. United States*,
   11 F.4th 1335 (Fed. Cir. 2021) ........................................................................ 4

*Goodluck India Limited v. United States*,
   393 F. Supp. 3d 1352 (Ct. Int'l Trade 2019) ...................................................... 3

*Goodluck India Limited v. United States*,
   439 F. Supp. 3d 1366 (Ct. Int'l Trade 2020) ...................................................... 3

*Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins.*,
   463 U.S. 29 (1983) ....................................................................................... 5, 6

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947) .......................................................................................... 6

*SKF USA, Inc. v. United States*,
   630 F.3d 1365 (Fed. Cir. 2011) ...................................................................... 10

*Sumecht NA, Inc. v United States*,
   399 F. Supp. 3d 1370 (Ct. Int'l Trade 2019) .................................................... 16

*Sumecht NA, Inc. v. United States*,
   331 F. Supp. 3d 1408 (Ct. Int'l Trade 2018) .................................................... 14

*Sumecht NA, Inc. v. United States*,
    923 F.3d 1340 (Fed. Cir. 2019) ............................................... 4

*Timken Co. v. United States*,
    893 F.2d 337 (Fed. Cir. 1990) ...................................... 14, 15

*United States Steel Corp. v. United States*,
    348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018) ........................ 10

**Statutes**

5 U.S.C. § 706 ........................................................................ 5

19 U.S.C. § 1516a ..................................................... 13, 14, 15

19 U.S.C. § 1675 .................................................................... 7

28 U.S.C. § 1581 .................................................................... 5

28 U.S.C. § 2640 .................................................................... 5

**Regulations**

19 C.F.R. § 351.212 ........................................................ 7, 12

19 C.F.R. § 351.213 ............................................................... 7

**Administrative Determinations**

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India: Final Affirmative Determination of Sales at Less than Fair Value*,
    83 Fed. Reg. 16,296 (Dep't of Commerce April 16, 2018) ................................ 2, 3

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India: Notice of Court Decision Not in Harmony With Final Determination of Sales at Less Than Fair Value; Notice of Amended Final Determination Pursuant to Court Decision; and Notice of Revocation of Antidumping Duty Order, in Part*,
    85 Fed. Reg. 31,742 (Dep't of Commerce May 27, 2020) ............................................ 3-4, 13

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India: Notice of Second Amended Final Determination; Notice of Amended Order; Notice of Resumption of First and Reinitiation of Second Antidumping Duty Administrative Reviews; Notice of Opportunity for Withdrawal; and Notice of Assessment in Third Antidumping Duty Administrative Review*,
    86 Fed. Reg. 74,069 (Dep't of Commerce Dec. 29, 2021) ...................................... 2

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Review, and Partial Discontinuation of Review; 2017-2019*,
    85 Fed. Reg. 66,930 (Dep't of Commerce Oct. 21, 2020) ...................................... 11

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from the People's Republic of China, the Federal Republic of Germany, India, Italy, the Republic of Korea, and Switzerland: Antidumping Duty Orders; and Amended Final Determinations of Sales at Less Than Fair Value for the People's Republic of China and Switzerland,*
83 Fed. Reg. 26,962 (Dep't of Commerce June 11, 2018) ...................................................... 3

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
85 Fed. Reg. 47,731 (Dep't of Commerce Aug. 6, 2020).................................................... 4, 8

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
86 Fed. Reg. 41,821 (Dep't of Commerce Aug. 3, 2021)........................................... 7, 8, 9, 10

*Notice of Reinstatement of Antidumping Duty Orders, Resumption of Administrative Reviews, and Advance Notification of Sunset Reviews,*
78 Fed. Reg. 76,104 (Dep't of Commerce Dec. 16, 2013) ...................................................... 9

*Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Discontinuation of Antidumping Duty Administrative Review; 2016-2017,*
83 Fed. Reg. 65,143 (Dep't of Commerce Dec. 19, 2018) ................................................. 9, 10

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE
_____

|  |  |  |
|---|---|---|
| GOODLUCK INDIA LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 22-00024 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ARCELORMITTAL TUBULAR | ) | |
| PRODUCTS, *et al.*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
_____)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.1 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment on the administrative record filed by plaintiff, Goodluck India Limited (Goodluck). Goodluck challenges the Department of Commerce's (Commerce) determination with respect to Goodluck entries covered by the third administrative review, which was reinstated after this Court's judgment regarding Commerce's final determination resulting from its investigation was reversed on appeal. Specifically, Goodluck challenges Commerce's decision that Goodluck's entries of subject merchandise during the third administrative review were automatically liquidated at the re-instated, correct investigation rate of 33.70 percent, and that Goodluck's cash deposit rate of 33.70 percent became effective on September 10, 2021. The Court should deny Goodluck's motion because Commerce's determination was not arbitrary, capricious, or contrary to law.

<u>**STATEMENT PURSUANT TO USCIT RULE 56.1(c)(1)**</u>

**I.**     <u>**Administrative Determination Under Review**</u>

The administrative determination under review is Commerce's combined Federal Register Notice.  *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India: Notice of Second Amended Final Determination; Notice of Amended Order; Notice of Resumption of First and Reinitiation of Second Antidumping Duty Administrative Reviews; Notice of Opportunity for Withdrawal; and Notice of Assessment in Third Antidumping Duty Administrative Review*, 86 Fed. Reg. 74,069 (Dep't of Commerce Dec. 29, 2021) (*December 2021 Notice*).

**II.**     <u>**Statement Of The Issues Presented For Review**</u>

1.     Whether Commerce lawfully set the automatic liquidation rate for Goodluck's entries from the third administrative review at the re-instated entered rate of 33.70 from the initial investigation.

2.     Whether Commerce lawfully determined that Goodluck's cash deposit rate became effective on September 10, 2021.

<u>**STATEMENT OF FACTS**</u>

On April 16, 2018, Commerce published its *Final Determination* in the less than fair value investigation of cold-drawn mechanical tubing from India.  *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India: Final Affirmative Determination of Sales at Less than Fair Value*, 83 Fed. Reg. 16,296 (Dep't of Commerce April 16, 2018) (*Final Determination*) and accompanying Issues and Decision Memorandum (IDM).  In the *Final Determination*, Commerce applied a rate based on facts available with an adverse inference to Goodluck after finding that Goodluck failed to accurately report product "control numbers" in its home market sales and cost of production databases.  *See* IDM at Comments 1 and 2.  Although

Goodluck attempted to submit new databases at the start of verification, Commerce declined to accept the revised databases. *Id.* Consequently, Commerce applied a 33.70 percent antidumping duty (ADD) cash deposit rate, effective as of April 16, 2018. *Final Determination.* On June 11, 2018, Commerce published its antidumping order on cold-drawn mechanical tubing from India. *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from the People's Republic of China, the Federal Republic of Germany, India, Italy, the Republic of Korea, and Switzerland: Antidumping Duty Orders; and Amended Final Determinations of Sales at Less Than Fair Value for the People's Republic of China and Switzerland*, 83 Fed. Reg. 26,962 (Dep't of Commerce June 11, 2018) (*Order*).

Goodluck challenged Commerce's final determination in this Court, and on August 13, 2019, the Court remanded the *Final Determination* to Commerce with instructions to reconsider the revised databases provided by Goodluck. *See Goodluck India Limited v. United States*, 393 F. Supp. 3d 1352 (Ct. Int'l Trade 2019) (*Remand Order*). Consistent with the *Remand Order*, Commerce accepted the revised databases provided by Goodluck and used them to calculate a new rate. *See* Final Results of Redetermination Pursuant to Court Remand (Dec. 23, 2019) (Final Remand Redetermination). This calculation resulted in a zero rate for Goodluck. *Id.* On April 30, 2020, this Court sustained Commerce's Final Remand Redetermination. *See Goodluck India Limited v. United States*, 439 F. Supp. 3d 1366 (Ct. Int'l Trade 2020). On May 27, 2020, Commerce published the *Amended Final/Timken Notice*, which partially revoked the *Order* with respect to Goodluck. *See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India: Notice of Court Decision Not in Harmony With Final Determination of Sales at Less Than Fair Value; Notice of Amended Final Determination Pursuant to Court Decision; and Notice of Revocation of Antidumping Duty Order, in Part*, 85 Fed. Reg. 31,742 (Dep't of

Commerce May 27, 2020) (*Amended Final/Timken Notice*).  The *Amended Final/Timken Notice* had an effective date of May 10, 2020, ten days after this Court's decision sustaining the remand redetermination.[1]  Commerce suspended any of Goodluck's entries not yet suspended and continued the suspension at a zero rate.  *Id.*

Subsequently, the petitioners appealed the Court's April 30, 2020 decision and the Federal Circuit reversed and remanded.  *See Goodluck India Limited v. United States*, 11 F.4th 1335 (Fed. Cir. 2021) (*Goodluck Federal Circuit*).  Following *Goodluck Federal Circuit*, on November 17, 2021, this Court vacated its *Remand Order* and sustained Commerce's original *Final Determination*.  *See Goodluck India Limited v. United States*, Court. No. 18-000162, ECF No. 74 (Ct. Int'l Trade 2021).

During the pendency of the litigation, because the *Order* still covered other companies, Commerce conducted the first and second administrative reviews and had begun the third administrative review, but not with respect to Goodluck.  As a result of *Goodluck Federal Circuit*, Commerce discontinued the first administrative review with respect to Goodluck prior to the issuance of the preliminary results.  At the beginning of the second administrative review, Goodluck requested review of its entries, stating that it was "requesting this review in order to preserve the review of Goodluck's entries" during the pendency of any appeals.  Commerce, however, declined to initiate due to Goodluck's exclusion from the *Order*.  *See* Goodluck's Request for Administrative Review, dated June 30, 2020; *Initiation of Antidumping and Countervailing Duty Reviews*, 85 Fed. Reg. 47,731 (Dep't of Commerce Aug. 6, 2020).  Despite requesting review of its entries to preserve them for the second administrative review, Goodluck

---

[1]  Use of a Timken notice's effective date rather than the date of publication, *i.e.*, May 27, 2020, has since been invalidated.  *See Sumecht NA, Inc. v. United States*, 923 F.3d 1340 (Fed. Cir. 2019) (*Sumecht Federal Circuit*).

did not request review of entries subject to the third administrative review. Following *Goodluck Federal Circuit* reinstating Goodluck into the *Order*, on December 29, 2021, Commerce published a Federal Register notice serving multiple purposes:

> Commerce is hereby reinstating the final determination from the LTFV investigation and antidumping duty order with respect to the dumping margin assigned to [Goodluck]. As a result, we are: (1) Revising the prior revocation of the order with respect to Goodluck; (2) resuming the discontinued first administrative review with respect to Goodluck; (3) reinitiating the second administrative review with respect to all entries produced and exported by Goodluck during the period of review (POR); and (4) directing U.S. Customs and Border Protection (CBP) to assess final antidumping duties on all entries produced and exported by Goodluck during the third administrative review POR.

*See December 2021 Notice*. Goodluck subsequently initiated this appeal in January 2022, challenging Commerce's *December 2021 Notice*. Following briefing on defendant's partial motion to dismiss Goodluck's claims pursuant to 28 U.S.C. § 1581(c) jurisdiction, this Court determined that jurisdiction is proper only pursuant to 28 U.S.C. § 1581(i).

## ARGUMENT

### I.   Standard Of Review

In a civil action brought under 28 U.S.C. § 1581(i), "the Court of International Trade shall review the matter as provided in section 706 of title 5." 28 U.S.C. § 2640(e). Under this standard, the Court reviews whether Commerce's actions are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Consolidated Bearings Co. v. United States*, 348 F.3d 997, 1004 (Fed. Cir. 2003).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983). Commerce "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the

facts found and the choice made.'" *Id.* (citations omitted). "The arbitrary and capricious standard of review is {also} narrower than the substantial evidence standard, and the court will therefore remand {Commerce's} … determination only if it finds that 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Former Emps. of Alcatel Telecommunications Cable v. Herman*, 24 CIT 655, 658-59 (2000) (quoting *Motor Vehicle Mfr.'s Ass'n*, 463 U.S. at 43).

While the Court "'{m}ay not supply a reasoned basis for the agency's action that the agency itself has not given,' {it} will, however, 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S. 285, 286 (1974)); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (describing the arbitrary and capricious standard of review as "narrow").

## II. Goodluck Has Not Demonstrated That Commerce's Decision To Liquidate Goodluck's AR3 Entries At The Investigation Rate Was Arbitrary, Capricious, Or Contrary To Law

The case examples Goodluck offers to argue that Commerce should have included it in the third administrative review do not apply here, and the fact remains that Goodluck simply did not submit a request for review of its entries. Accordingly, Commerce's determination to issue instructions to liquidate Goodluck's entries of subject merchandise entered during the third administrative review was not contrary to law. The appropriate liquidation rate is thus the investigation rate of 33.70 percent—as reinstated by the Federal Circuit.

A.    Goodluck Did Not Request Review Of Its Third Administrative Review Entries

The statute requires that Commerce conduct an annual administrative review of an antidumping duty order "at least once during each 12-month period…*if a request for such a review has been received*." *See* 19 U.S.C. § 1675(a)(1) (emphasis added). Therefore, so long as a request is timely filed, Commerce will conduct a review of the exporters or producers requesting such review. 19 C.F.R. § 351.213; *BMW of N. Am. LLC. v. United States*, 926 F.3d 1291 (Fed. Cir. 2019) (*BMW Federal Circuit*) (stating that if a party requests an administrative review, Commerce's statutory obligation to conduct a yearly review is triggered). Commerce is not, however, required to review exporters or producers for which a review has *not* been requested. *See* 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.212(b); 19 C.F.R. § 351.213(d)(1); *Floral Trade Council v. United States*, 888 F.2d 1366, 1369 (Fed. Cir. 1989) (explaining that Congress amended the statute to require review only when Commerce has received a request or upon Commerce's initiative). Thus, Commerce has no duty to conduct a review, unless a review is explicitly requested.

During the third administrative review, petitioners requested review of Tube Products of India, Ltd., but *not* of Goodluck. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 41,821 (Dep't of Commerce Aug. 3, 2021). Nor did Goodluck request a review of itself. *Id.* In contrast, during the second administrative review, also occurring while the *Order* was revoked with respect to Goodluck during appeal, Goodluck *did* request review of itself. In that request, Goodluck stated that "although the {Timken} notice effectively revoked the *Order* with respect to Goodluck, it also continues to suspend entries from Goodluck pending any appeals. As such, we are requesting this review *in order to preserve the review of Goodluck's entries*." *See* Goodluck's Request for Administrative Review, dated June 30, 2020 (emphasis added). Despite Goodluck's request, because it was removed from the

*Order* at the time of the second administrative review, Commerce did not initiate a review on

Goodluck. *See Initiation of Antidumping and Countervailing Administrative Reviews*, 85 Fed.

Reg. 47,731 (Dep't of Commerce Aug. 6, 2020). Goodluck acknowledges that it was aware at

the time it requested the second review that its entries were suspended and that, due to the

pending appeal, it could be placed into the *Order*. Approximately twelve months later, the

appeal was still pending and no facts had changed, and Goodluck was presumably still aware of

the suspension of its entries and that it could be placed into the *Order* at the time requests for the

third review were due. Yet Goodluck failed to request a third review "to preserve the review" of

its entries.

After *Goodluck Federal Circuit* reinstated Goodluck in the *Order*, Commerce resumed

the first administrative review and reinitiated the second administrative review with respect to

Goodluck. *See December 2021 Notice*. Commerce included Goodluck in the second

administrative review specifically because Goodluck requested review of its entries, thus

triggering Commerce's statutory obligation to review Goodluck. *BMW of N. Am. LLC v. United

States*, 208 F. Supp. 3d 1338 (Ct. Int'l Trade 2017), *affirmed in BMW Federal Circuit.* But

Goodluck failed to request any review in the third administrative review, and absent that request,

Commerce's statutory obligation to review Goodluck's entries was not triggered. *See Initiation

of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 41,821 (Dep't of

Commerce Aug. 3, 2021). Accordingly, there was no simply requirement that Commerce review

Goodluck's third administrative review entries after *Goodluck Federal Circuit* reversed this

Court. *See generally BMW Federal Circuit.* Therefore, consistent with the statute, Commerce

properly issued instructions to CBP ordering the liquidation of Goodluck's third administrative

review entries.

Goodluck argues that the statute does not address the unique set of circumstances in this case, and that Commerce has a practice of allowing interested parties to submit review requests for merchandise excluded from an antidumping duty order, but subsequently made subject to the order post-litigation. Pl. Br. at 15-16. Thus, Goodluck argues, Commerce should have allowed Goodluck to request a review of its third administrative review entries after Goodluck was placed back into the *Order* as a result of litigation. *Id.*

Goodluck points to several cases to demonstrate this alleged practice. Pl. Br. at 16-17. Specifically, Goodluck points to *Ball Bearings* and *Xanthan Gum*. *Id.* (citing *Notice of Reinstatement of Antidumping Duty Orders, Resumption of Administrative Reviews, and Advance Notification of Sunset Reviews*, 78 Fed. Reg. 76,104 (Dep't of Commerce Dec. 16, 2013) (*Ball Bearings 2013 Timken*) and *Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Discontinuation of Antidumping Duty Administrative Review; 2016-2017*, 83 Fed. Reg. 65,143 (Dep't of Commerce Dec. 19, 2018) (*Xanthan Gum*)). But the facts of *Ball Bearings* and *Xanthan Gum* are not analogous to the facts here and thus do not create any sort of Commerce practice, as Goodluck alleges.

In *Ball Bearings*, prior to the Federal Circuit's ruling, Commerce had *discontinued* all unfinished administrative reviews of the orders (*i.e.*, the 2009-2010 review and the 2010-2011 review). *See Ball Bearings 2013 Timken*. After Commerce reinstated the *Orders* pursuant to the Federal Circuit's ruling, Commerce *resumed* the administrative reviews that had been discontinued during the pendency of the litigation. *Id.* At the time of revocation of the *Orders*, Commerce had issued the preliminary results of the 2009-2010 administrative review and had initiated the 2010-2011 review. *Id.* In other words, in *Ball Bearings*, for both resumed reviews,

respondents had requested review of their entries and Commerce had initiated a review covering the respondent's entries. Similarly, in *Xanthan Gum*, when the *Order* was revoked, the three ongoing reviews (2014-2015, 2015-2016, and 2016-2017) were *discontinued*; indeed, a rate for the respondent had already been preliminarily calculated. *See Xanthan Gum*. When the *Order* was reinstated, Commerce *resumed* the three administrative reviews. *Id.* Thus, identical to *Ball Bearings*, in *Xanthan Gum*, for all three reviews, respondents had requested review of their entries and Commerce had initiated a review covering the respondents' entries.

Here, on the other hand, Commerce had not begun review of Goodluck during the third administrative review—as it had done in *Ball Bearings* and *Xanthan Gum*. Because the circumstances surrounding the review here are so different from what Goodluck points to, there can be no finding that Commerce departed from its practice such that it needed to explain its reasoning to afford Goodluck due process. *See United States Steel Corp. v. United States*, 348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018); *SKF USA, Inc. v. United States*, 630 F.3d 1365 (Fed. Cir. 2011). There simply is no question here that neither Goodluck nor any other interested party requested review of Goodluck's entries for the third administrative review, nor had Commerce initiated a review of those entries. Accordingly, Goodluck's arguments cannot stand. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 41,821 (Dep't of Commerce Aug. 3, 2021). Notably, the fact that Goodluck requested a review during the second administrative review—specifically for the purpose of preserving its rights—shows that Goodluck was aware of the need to make a request. Yet it knowingly failed to do so during the third administrative review.

In fact, Commerce's practice here was consistent with *Ball Bearings* and *Xanthan Gum* with respect to the first administrative review. In that review, Goodluck requested, and

Commerce initiated review. However, following the results of litigation, Commerce *discontinued* that review with respect to Goodluck, and thereafter *resumed* the review upon Goodluck's reinstatement into the *Order. See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From India: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Review, and Partial Discontinuation of Review; 2017-2019*, 85 Fed. Reg. 66,930 (Dep't of Commerce Oct. 21, 2020); *December 2021 Notice.* With respect to the second administrative review, Commerce never initiated on Goodluck's entries due to the timing of litigation, but Goodluck had still *requested* review. Due to that request, Commerce was able to reinitiate the second administrative review with respect to Goodluck upon its reinstatement in the *Order. See December 2021 Notice.* To the extent Commerce has an alleged practice of allowing companies to request a review after being reinstated into an order post-litigation, Commerce acted consistently with such alleged practice, *i.e.*, Commerce allowed Goodluck to request the *resumption* of a *discontinued* or *initiated* review, where a review had been requested, after being reinstated into the *Order* post-litigation.

Goodluck further argues that it "could not possibly have been aware" that Commerce would not allow Goodluck to seek review of its third administrative review entries, and thus Goodluck was not provided with adequate notice. Pl. Br. at 21-22. Goodluck also states that Commerce acted unlawfully by not explaining its departure from its practice and thereby not affording Goodluck due process. Pl. Br. at 22-23, 30-31. But the claim that Goodluck "could not possibly have been aware" that Commerce would not allow Goodluck to seek review is belied by Goodluck's actions and statements. Goodluck concedes that it "requested a review out of an abundance of caution" to preserve its right for the second administrative review. Pl. Br. at 24. Thus, Goodluck was aware that the ongoing appeal may reverse the situation, and thus it

would need to have preserved its rights should it be reinstated into the Order.  Nor did the facts change between the second and third administrative reviews—the appeal was still pending at the Federal Circuit—such that Goodluck could not have known that it should similarly preserve its right to review.  The record thus demonstrates that Commerce followed its statutory requirements when it did not initiate review of Goodluck's entries during the third administrative review.

B.     The Investigation Rate Of 33.70 Percent Is The Appropriate Liquidation Rate

Goodluck claims that because Commerce did not receive a request for an administrative review for Goodluck's third administrative review entries, Commerce should have used the rate at the time the merchandise was entered, which was 0.00 percent.  Pl. Br. at 26.  While Goodluck is correct as to the regulatory requirement, the rate at the time of entry was 33.70 percent, which is the appropriate liquidation rate to apply.

Goodluck correctly cites to 19 C.F.R. § 351.212, which provides that "if a review is not requested, duties are assessed at the rate established in the completed review covering the most recent prior period or, if no review has been completed, the cash deposit rate applicable at the time the merchandise was entered."  Here, Commerce did not complete a review with respect to Goodluck.  Commerce discontinued the first administrative review and did not initiate the second administrative review, so the only rate Commerce assigned to Goodluck was the investigation rate.  *See December 2021 Notice.*  At the conclusion of the litigation, Goodluck's investigation rate was 33.70 percent, which is thus the appropriate liquidation rate to apply to Goodluck's third review entries for which it did not request review.  Effectively, had this Court's decision not been vacated, the cash deposit rate set in the investigation would have prevailed, therefore making it the correct rate to apply here.  *See December 2021 Notice*.

Goodluck argues that the rate "at the time of entry" for its third administrative review entries was 0.00 percent, and that there is no basis in the statute for Commerce to use the 33.70 percent rate that would have been used but for the vacated decision. Pl. Br. at 26. But the Federal Circuit determined that the 0.00 rate was not correct, so applying that rate now to Goodluck would entail disregarding the Federal Circuit's decision. Indeed, the effect of a *Timken* notice of a court decision not in harmony "is to suspend liquidation of the subject entries until there is a final and conclusive court decision in the action, *i.e.*, until judicial review proceedings of the antidumping duty order have been completed." *Diamond Sawblades Mfr's Coalition v. United States*, 626 F.3d 1374, 1381 (Fed. Cir. 2010); *see also* 19 U.S.C. § 1516a(c)(1). Commerce here followed that requirement and issued a *Timken* notice following this Court's initial determination that Commerce's final determination was not supported:

> Pursuant to *Timken*, the suspension of liquidation must continue during the pendency of the appeals process. Additionally, we will instruct CBP to suspend liquidation of all unliquidated entries from Goodluck at a cash deposit rate of 0.00 percent, which are entered, or withdrawn from warehouse, for consumption on or after May 10, 2020, which is ten days after the [Court's] final decision, in accordance with section 516A of the Act.

85 Fed. Reg. 31,742.

Accordingly, the *Timken* notice suspended—as of May 27, 2020, the date of publication—Goodluck's third period of review entries during the pendency of the appeal. The review of entries continued in that suspended status until after this Court issued its final judgment on remand reinstating Commerce's final determination.[2] In light of that suspension, as

---

[2]  Subject merchandise entered between November 22, 2017, to May 31, 2019, will be liquidated at the calculated rate of the resumed first administrative review. Subject merchandise entered between June 1, 2019, and May 31, 2020, will be liquidated at the calculated rate of the second administrative review.

a matter of law, Commerce had available to it all entries entered or withdrawn from warehouse on or after May 27, 2020.  Commerce thus could have used May 27, 2020 as the effective date for imposing Goodluck's cash deposit rate.  Many of those entries, however, are covered by the resumed first review and re-initiated second review of Goodluck and will receive assessment rates at the conclusion of those reviews.  Absent a proper request for a third review, however, Commerce correctly issued to CBP automatic liquidation instructions assessing Goodluck's third review entries.

### III. Commerce's Determination That Goodluck's Cash Deposit Rate Became Effective On September 10, 2021, Was Not Arbitrary, Capricious, Or Contrary To Law, Nor Did This Determination Fail To Afford Goodluck Due Process

Contrary to Goodluck's arguments, Commerce's determination to set the effective date for Goodluck's 33.70 cash deposit rate as September 10, 2021, was not contrary to law, nor did it fail to afford Goodluck due process.  Pl. Br. at 30.  Indeed, as explained above, Commerce could have chosen to set the effective date as of the date of publication of the *Timken* notice on May 27, 2020.  Because of the unique nature of the facts before it however, Commerce set the effective date as ten days following the Federal Circuit's decision reinstating Goodluck into the *Order*, which was September 10, 2021—well after May 27, 2020.  This determination is in accordance with the statute.  Namely, 19 U.S.C. § 1516a governs Commerce's liquidation of entries following litigation:

> (e) LIQUIDATION IN ACCORDANCE WITH FINAL DECISION
> If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the {CAFC}
> ….
>
> (2) entries, the liquidation of which was enjoined under subsection (c)(2), shall be liquidated in accordance with the final court decision in the action.  *Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision*.

19 U.S.C. § 1516a(e)(2) (emphasis added); *see also Sumecht NA, Inc. v. United States*, 331 F. Supp. 3d 1408, 1410 (Ct. Int'l Trade 2018) (*Sumecht*) ("Following the issuance of a contrary court decision, 'Commerce must publish notice of the decision within ten days of issuance (*i.e.*, entry of judgment), regardless of the time for appeal or of whether an appeal is taken.'" (quoting *Timken Co. v. United States*, 893 F.2d 337, 341 (Fed. Cir. 1990)) (emphasis omitted)). Consistent with 19 U.S.C. § 1516a(c)(1) and *Timken*, Commerce's "publication in the Federal Register puts the public on notice of a contrary court decision and that liquidation should no longer take place in accordance with Commerce's prior determination." *Id*.; *See Timken*, 893 F.2d at 342.

Goodluck, however, argues that the Federal Circuit decision, issued on August 31, 2021, did not constitute a final decision requiring Commerce to reinstate Goodluck as subject to the *Order*. Pl. Br. at 36-37. According to Goodluck, because the decision was not final, it did not provide parties with notice of findings contrary to Commerce's prior determination. *Id.* But Goodluck is incorrect—no additional notice was required. Commerce issued notice by publishing the *Timken* notice in May 2020. There is no requirement that Commerce notify parties of court decisions supporting the Government's final determination, and the Federal Circuit's decision was consistent with Commerce's final determination. In fact, issuing two such notices would confuse the suspension issue because the entries were properly suspended (or continued to be suspended) as of May 27, 2020. There was simply no need, nor is there ever a need, for Commerce to issue two *Timken* notices with respect to a case.

Goodluck argues, however, that the effective date for cash deposits should not have begun before December 29, 2021, when Commerce published its *December 2021 Notice*, or at minimum November 28, 2021, ten days after this Court's judgment reinstating Commerce's

original final determination. *Id.* at 37-39. But Goodluck ignores the fact that Commerce's September 10, 2021, cash deposit effective rate is more favorable to Goodluck than required. As explained above, the May 27, 2020, publication date of the *Timken* notice established the suspension date for the affected entries, so Commerce could have used that date instead. The Federal Circuit's ruling reinstating Goodluck into the *Order* was issued on August 31, 2021. *See Goodluck Federal Circuit*. Parties were thus on notice on August 31, 2021, that Goodluck would be reinstated into the *Order*. Reinstatement would thus necessitate the liquidation of Goodluck's suspended entries for which review had not been requested, and the collection of cash deposits, *i.e.*, the third review entries. *See Sumecht NA, Inc. v United States*, 399 F. Supp. 3d 1370, 1376-79 (Ct. Int'l Trade 2019) (effective date of a late Timken notice is date of publication, not ten days following a Court decision if the Federal register notice is not yet published), *aff'd*, *Sumecht Federal Circuit.*

Goodluck was on notice that its entries could be subject to an appeal as of the date of this Court's slip opinion, and no later than May 27, 2020, the publication date of the *Timken* notice. As evidenced by Goodluck's request for a second review of its entries, it was aware of the appeal and that requesting such review provided a different status to such entries. Nevertheless, Goodluck failed to request similar treatment for its third review entries resulting in Commerce properly issuing liquidation instructions to CBP and re-instating a cash deposit requirement within ten days after parties were placed on notice of *Goodluck Federal Circuit*. Commerce's determination is thus well-reasoned and supported by law.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's determination.

Respectfully submitted,

BRYAN BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

s/L. Misha Preheim for Claudia Burke
CLAUDIA BURKE
Assistant Director

s/ Ioana Cristei Meyer
IOANA CRISTEI MEYER
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-0001

Attorneys for Defendant

OF COUNSEL:

AYAT MUJAIS
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
United States Department of Commerce

April 3, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 5,698 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Ioana Cristei

April 3, 2023