## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE GARY S. KATZMANN

———————————————————————x
                                :

GOODLUCK INDIA LIMITED,          :

                               :

       Plaintiff,            :

                               :    Court No. 22-00024

       v.                :

                               :    **PUBLIC VERSION**

UNITED STATES,               :

                               :

       Defendant,        :

                               :

       and                  :

                               :

ARCELORMITTAL TUBULAR PRODUCTS, :
MICHIGAN SEAMLESS TUBE, LLC, PTC   :
ALLIANCE CORP., WEBCO INDUSTRIES, :
INC., ZEKELMAN INDUSTRIES, INC., and :
PLYMOUTH TUBE CO. USA,      :

                               :

       Defendant-Intervenors.   :
———————————————————————x

### PLAINTIFF'S REPLY TO DEFENDANT AND DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Ned H. Marshak*
Jordan C. Kahn
Michael S. Holton

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*599 Lexington Ave FL 36,
New York, NY 10022
 (212) 557-4000

1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6871

Dated: May 15, 2023        *Counsel for Plaintiff Goodluck India Limited*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

I.   COMMERCE UNLAWFULLY INSTRUCTED CBP TO LIQUIDATE GOODLUCK'S
     AR3 ENTRIES AT THE 33.70% AFA ADD RATE ....................................................... 2

     A.   GOODLUCK'S AR3 ENTRIES SHOULD HAVE LIQUIDATED AT THE 0% ADD
          RATE "AT THE TIME OF ENTRY" ................................................................... 2

     B.   GOODLUCK WAS NOT REQUIRED TO HAVE REQUESTED A REVIEW OF ITS
          AR3 SALES .................................................................................................... 7

     C.   COMMERCE WAS REQUIRED TO PROVIDE GOODLUCK AN OPPORTUNITY TO
          REQUEST A REVIEW OF ITS AR3 ENTRIES AFTER GOODLUCK AGAIN
          BECAME SUBJECT ........................................................................................ 12

     D.   COMMERCE FAILED TO AFFORD GOODLUCK SUFFICIENT PROCESS ............ 16

II.  COMMERCE UNLAWFULLY REQUIRED ADD CASH DEPOSITS EFFECTIVE
     SEPTEMBER 10, 2020 ............................................................................................. 20

CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

Cases

*Andaman Seafood Co. v. United States*, 675 F. Supp. 2d 1363 (CIT 2010) ................................... 4

*Bowman Transp., Inc. v. Ark.-Best Freight System, Inc.*, 419 U.S. 281 (1974) .......................... 18

*Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312 (CIT 2016) ................................ 10

*CITIC Trading Co. v. United States*, 27 CIT 356 (2003) ............................................ 7, 11, 16, 21

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) ........................................ 4

*Friedler v. General Servs. Admin.*, 271 F. Supp. 3d 40 (D.D.C. 2017) ........................................ 4

*Goodluck India Ltd. v. United States*, 11 F.4th 1335 (Fed. Cir. 2021) .............................. 3, 12, 20

*Gulf States Tube Div. of Quanex Corp. v. United States*, 981 F. Supp. 630 (CIT 1997) .............. 18

*Hyundai Elec. Indus. Co. v. United States*, 899 F.2d 1204 (Fed.Cir.1990) ................................ 20

*Kemira Fibres Oy v. United States*, 858 F. Supp. 229 (CIT 1994) .............................................. 17

*Lois Jeans & Jackets, U.S.A., Inc. v. United States*, 5 CIT 238 (1983) ....................................... 18

*Mittal Canada Inc. v. United States*, 30 CIT 1565 (CIT 2006) ............................................... 5, 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co. v. United States*,
   463 U.S. 29 (1983) .......................................................................................................... 21

*Nereida Trading Co. v. United States*, 34 CIT 241 (2010) ......................................................... 18

*NSK Corp. v. ITC*, 37 CIT 1644 (Fed. Cir. 2013) ....................................................................... 21

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012) ............................ 17

*Royal Brush Mfg., Inc. v. United States*, 483 F. Supp. 3d 1294 (CIT 2020) .............................. 18

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) ............................. 12, 15, 16, 21

*Snap-on, Inc. v. United States*, 949 F. Supp. 2d 1346 (CIT 2013) ............................................. 11

*SSAB N. Am. Div. v. United States*, 32 CIT 795  (CIT 2008) ...................................................... 6

*Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487 (Fed. Cir. 2020) ..................... 19

*Timken v. United States*, 893 F.2d 337 (Fed. Cir. 1990) ...................................................... 17, 21

*Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289 (CIT 2021) .............................. 19

**Statutes**

19 U.S.C. § 1516a .......................................................................................................... 21

19 U.S.C. 1675 ................................................................................................................... 6

**Regulations**

19 C.F.R. § 351.212 ................................................................................................. 3, 4, 6, 16

19 C.F.R. § 351.213 ................................................................................................. 10, 12, 15

19 C.F.R. § 351.224 .......................................................................................................... 18

**Federal Register Notices & Publications**

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity
   To Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 33,706
   (June 3, 2022) .............................................................................................................. 13

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity
   To Request Administrative Review*, 86 Fed. Reg. 29,240 (June 1, 2021) ................................ 10

*Ball Bearings and Parts Thereof from Japan and the United Kingdom: Notice of Court Decision
   Not in Harmony with Continuation of Antidumping Duty Orders,* 76 Fed. Reg. 35,401
   (June 17, 2011) ............................................................................................................ 14

*Ball Bearings and Parts Thereof From Japan and the United Kingdom: Notice of Reinstatement
   of Antidumping Duty Orders, Resumption of Administrative Reviews, and Advance*

*Notification of Sunset Reviews*, 78 Fed. Reg. 76,104 (Dec. 16, 2013) ........................ 13, 14, 21

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel  from India: Notice of Second Amended Final Determination; Notice of Amended Order; Notice of Resumption of First and Reinitiation of Second ADD Administrative Reviews; Notice of Opportunity for Withdrawal; and Notice of Assessment in Third ADD Administrative Review*, 86 Fed. Reg. 74,069 (Dec. 29, 2021) ................................................................................ passim

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel  from India: Preliminary Results of ADD Administrative Reviews of Goodluck; 2017-2019 and 2019-2020*, 87 Fed. Reg. 77,793 (Dec. 20, 2022) ...................................................................................................... 9

*Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel from India: Notice of Court Decision Not in Harmony With Final Determination of Sales at LTFV; Notice of Amended Final Determination Pursuant to Court Decision; and Notice of Revocation of ADD Order, in Part*, 85 Fed. Reg. 31,742 (May 27, 2020) ...................................................... passim

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 47,731 (Aug. 6, 2020) .................................................................................................................. 8

*Xanthan Gum from China: Final Results of ADD Administrative Review, Final Determination of No Shipments, and Partial Discontinuation of ADD Administrative Review; 2016-2017*, 83 Fed. Reg. 65,143 (Dec. 19, 2018) ...................................................................... 15

*Xanthan Gum from China: Notice of Court Decision Not in Harmony With Amended Final Determination in LTFV Investigation; Notice of Amended Final Determination Pursuant to Court Decision; Notice of Revocation of ADD Order in Part; and Discontinuation of Fourth and Fifth ADD Administrative Reviews in Part*, 83 Fed. Reg. 52,205 (Oct. 16, 2018)............ 15

*Xanthan Gum from China: Notice of Third Amended Final Determination Pursuant to Court Decision*, 85 Fed. Reg. 40,967 (July 8, 2020)........................................................................ 15

**Other Authorities**

VOCABULARY.COM.................................................................................................................... 10

# __INTRODUCTION__

Plaintiff Goodluck India Limited ("Goodluck") established that the U.S. Department of Commerce ("Commerce" or "Department") unlawfully instructed U.S. Customs and Border Protection ("CBP" or "Customs") to liquidate Goodluck's entries of certain cold-drawn mechanical tubing of carbon and alloy steel ("CDMT")[1] from India entered during the third administrative review ("AR3") period of review ("POR") of the Antidumping Duty ("ADD") Order on CDMT from India at the 33.70% adverse facts available ("AFA") ADD rate. Memorandum of Law in Support of Plaintiff's Rule 56.1 Motion for Judgment on the Agency Record (Jan. 3, 2023) ("Pl. Br."), at 14-34; *CDMT from India: Notice of Second Amended Final Determination; Notice of Amended Order; Notice of Resumption of First and Reinitiation of Second ADD Administrative Reviews; Notice of Opportunity for Withdrawal; and Notice of Assessment in Third ADD Administrative Review*, 86 Fed. Reg. 74,069, 74,070 (Dec. 29, 2021), A.R. 12 ("*December 2021 Notice*"). Goodluck further established that Commerce unlawfully set that AFA ADD rate as the cash deposit rate effective September 10, 2021. Pl. Br. at 34-41; *December 2021 Notice*, 86 Fed. Reg. at 74,069.

Commerce's demonstrated legal errors are not rehabilitated  by the responses filed by Defendant United States ("Defendant") and Defendant-Intervenors ArcelorMittal Tubular Products *et. al.* ("Petitioners") (collectively, "Defendants"). Defendant's Response to Plaintiff's Motion for Judgment on the Agency Record (Apr. 3, 2023) ("Def. Br."); Defendant-Intervenors' Response Brief (Apr. 3, 2023) ("Pet. Br."). As detailed in turn below:

1A. Without a review requested of Goodluck's AR3 entries, they should have liquidated at the 0% ADD rate "at the time of entry" based on clear regulatory language and applicable precedent, contrary to Defendants' temporal gymnastics;

---

[1]     All references to Goodluck entries are CDMT both produced and exported by Goodluck.

1B.   Goodluck was not obligated to have requested a review of its AR3 entries to avoid liquidation at the AFA ADD rate. Goodluck had filed a review request in the preceding, second administrative review ("AR2") because its CDMT entries in AR2 had been accompanied by ADD cash deposits – in stark contrast to the AR3 entries, which were entered without any cash deposits and which Commerce acknowledged were excluded from the ADD order when entered;

1C.   At an absolute minimum, Commerce should have given all parties an opportunity to request AR3 reviews anew in accord with Commerce practice, contrary to Defendants' efforts to minimize controlling precedent;

1D.   Goodluck was denied procedural due process by being assigned substantial ADD liability without any opportunity to comment, an argument to which Defendant did not even respond; and

2.   The unlawful cash deposit effective date is not salvaged by Defendants' argument that other dates could have been chosen, which underscores the arbitrariness of Commerce's action.

## I.   COMMERCE UNLAWFULLY INSTRUCTED CBP TO LIQUIDATE GOODLUCK'S AR3 ENTRIES AT THE 33.70% AFA ADD RATE

### A.   GOODLUCK'S AR3 ENTRIES SHOULD HAVE LIQUIDATED AT THE 0% ADD RATE "AT THE TIME OF ENTRY"

It is undisputed that when Goodluck's exports of CDMT entered during the AR3 POR spanning June 1, 2020, through May 31, 2021, the applicable cash deposit rate was zero. *CDMT from India: Notice of Court Decision Not in Harmony With Final Determination of Sales at LTFV; Notice of Amended Final Determination Pursuant to Court Decision; and Notice of Revocation of ADD Order, in Part*, 85 Fed. Reg. 31,742, 31,743 (May 27, 2020), A.R. 5 ("*May 2020 Notice*"). It is further undisputed that "Commerce did not receive a request for an administrative review . . . with respect to Goodluck for the" AR3 POR. *December 2021 Notice*, 86 Fed. Reg. at 74,070. Finally, it is undisputed that Commerce's regulations provide that:

If a review is not requested, duties are assessed at . . . **the cash deposit rate applicable at the time the merchandise was entered**. . . .

If the Secretary does not receive a timely request for an administrative review . . . , **the Secretary**, without additional notice, **will instruct {CBP} to**: (i) **Assess**

> **{ADD}** . . . on the subject merchandise . . . **at rates equal to the cash deposit of** . . . estimated **{ADD}** . . . **required** on that merchandise **at the time of entry** . . . .

19 C.F.R. § 351.212(a), (c) (emphases added).

Defendants fail to provide any plausible basis, let alone precedent, that permits construction of the regulatory term **"**at the time of entry" as anything other than exactly what it connotes – *i.e.*, zero for Goodluck's AR3 entries. *Id*. Commerce committed legal error by construing this term as "the cash deposit rate that would have prevailed in the absence of the now-vacated CIT decision." *December 2021 Notice*, 86 Fed. Reg. at 74,070. Defendant unpersuasively attempts to justify such contortion of the regulatory language in claiming that "the Federal Circuit determined that the 0.00 rate was not correct, so **applying that rate now to Goodluck would entail disregarding the Federal Circuit's decision**." Def. Br. at 13 (emphasis added). This is an erroneous statement; the Federal Circuit ruling involved only the underlying less than fair value ("LTFV") investigation adjudicating whether Goodluck would be subject to the ADD order on CDMT from India in the first instance. *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1337-1341 (Fed. Cir. 2021) ("*Goodluck Federal Circuit*").

The Federal Circuit litigation had no bearing on the liquidation rate for Goodluck's CDMT entering years after the investigation for which no review was requested. Petitioners go further than Defendant, claiming that liquidation at zero ADD pursuant to the regulatory language would "implement a rate that was ultimately determined to be incorrect." Pet. Br. at 15-16. Again, that *Goodluck Federal Circuit* resulted in Goodluck being once again subject to the ADD order does not change the fact that its AR3 entries entered at zero ADD. Petitioners' cited authority stands only for the uncontroversial point that, if "the agency determination has been made contrary to the U.S. antidumping statute, that determination was never validly made, and therefore no outstanding entries may be liquidated on the basis of such agency action." *Andaman*

*Seafood Co. v. United States*, 675 F. Supp. 2d 1363, 1369 (CIT 2010). Yet here Commerce did not conduct AR3 as to Goodluck, so those entries must liquidate as entered; this is not a situation where Commerce calculated an ADD rate for Goodluck in AR3 that was changed on appeal. The instant appeal is the one challenging AR3, with which Commerce's liquidation of Goodluck's AR3 entries must conform – not prior litigation challenging the underlying investigation.

Commerce's regulation plainly governs the appropriate ADD rate in such circumstances as the cash deposit rate in effect "**at the time of entry**." 19 C.F.R. § 351.212 (emphases added). The instruction for CBP to liquidate such entries at 33.70% therefore "should be set aside as arbitrary and capricious" because "the agency fail{ed} to comply with its own regulations." *Friedler v. General Servs. Admin.*, 271 F. Supp. 3d 40, 61 (D.D.C. 2017). The instruction further contradicted longstanding Federal Circuit recognition that, {w}ithout a request for administrative review, Commerce liquidates the merchandise at the cash deposit rates (i.e., the deposit rates at the time of entry.)" *Consol. Bearings Co. v. United States,* 348 F.3d 997, 1000 (Fed. Cir. 2003) .

Goodluck emphasized precedent from this Court confirming that the regulatory language means exactly what it says, expressly rejecting the very argument advanced by Commerce and Defendants that the regulation should be interpreted as what the ADD rate should have been based on subsequent facts that became known after entry. Pl. Br. at 28-30. Mittal Canada Inc. ("Mittal") was unable to benefit from the 3.86% ADD rate assigned to its predecessor entity after entry because of the temporal limitation written into the regulation:

> {T}he rate "applicable at the time merchandise was entered" was, in this case, the rate that was actually "applied." The additional language "at the time merchandise was entered" introduces a backward-looking temporality . . . . that informs any reasonable interpretation of the term . . . .
>
> The regulation does not refer simply to the "applicable" rate, but to the rate "applicable at the time merchandise was entered." . . . . **Had Commerce intended to provide for automatic liquidation to take into account new information**

**communicated to Commerce post-entry, its regulation would have ordered its personnel to instruct Customs to liquidate at the rate "applicable at the time of liquidation" or something to that effect.** . . . Instead, **the rate applicable at the time of entry is the rate that a correct application of the U.S. antidumping laws and regulations would yield,** *at that moment.*

**Mittal's interpretation of "applicable at the time merchandise was entered" would gloss over the regulation's obvious temporality.** . . . **By introducing the backward-looking language, the regulation links the assessment rate to Commerce's "state of mind," or the allocation of information, at the moment of entry**. Mittal's interpretation . . . in no way could such a reading be countenanced as required by the statute. Instead, **the rate "applicable at the time merchandise was entered" is the rate that a correct application of the U.S. antidumping laws and regulations would yield at the moment of entry.** It would be absurd to hold Commerce to a standard of omniscience such that the rate "applicable at the time merchandise was entered" refers to the correct rate in light of information that was not in Commerce's possession.

*Mittal Canada Inc. v. United States*, 30 CIT 1565, 1575-76 (CIT 2006) (emphases modified).

Defendant ignores this compelling precedent that is fatal to its position. Def. Br. at i. Defendants' "argument . . . fails because "the rate 'applicable at the time merchandise was entered' was, in this case," zero and their **"interpretation of 'applicable at the time merchandise was entered' would gloss over the regulation's obvious temporality**." *Mittal*, 30 CIT at 1575 (emphasis added). Defendants' "interpretation is nearly unintelligible, and in no way could such a reading be countenanced as required by the statute. Instead, **the rate 'applicable at the time merchandise was entered' is the rate that a correct application of the U.S. antidumping laws and regulations would yield <u>at the moment of entry</u>"** – which for Goodluck's AR3 entries was indisputably zero. *Id.* (emphasis added). "It would be absurd to" liquidate Goodluck's AR3 entries at "the correct rate in light of information that was not in Commerce's possession" at the time of entry – *i.e.*, that this Court's ruling would be reversed by the Federal Circuit. *Id.*

Petitioners likewise fail to provide any support for their reading of the regulation, but they do endeavor to distinguish *Mittal*. Pet. Br. at 16-17. According to Petitioners, *Mittal* is inapposite "{b}ecause Mittal's entries were not suspended – unlike Goodluck's here." Pet. Br. at 17. Yet again Petitioner ignores temporality by focusing on events after the "time of entry" that is critical for assessment purposes. 19 C.F.R. § 351.212(c)(1). Mittal's exports entered commencing in October 2004, and its changed circumstances review ("CCR") was not resolved until December 2005. *Mittal*, 30 CIT at 154-57. It does not matter whether the subsequent CCR suspended liquidation; the critical fact is the ADD cash deposit rate at the time of entry – 8.11% for Mittal and 0% for Goodluck. Moreover, Mittal's entries were administratively suspended as potentially subject to an administrative review via "the statutorily implied suspension of liquidation contained in 19 U.S.C. 1675(a)(2) that applies to entries of subject merchandise." *SSAB N. Am. Div. v. United States*, 32 CIT 795, 798 (CIT 2008). There was no functional difference – "**at the moment of entry**" – between Mittal's entries and Goodluck's AR3 entries suspended by operation of the *May 2020 Notice*,  85 Fed. Reg. at 31,743. *Mittal*, 30 CIT at 1576 (emphasis added).

Petitioners complain of a supposed "yo-yo effect on liquidations that would occur" under Goodluck's position. Pet. Br. at 15. Yet Commerce's regulatory system, by requiring liquidation at the cash deposit rate in effect at a specific point in time, to which Goodluck is advocating adherence, is specifically designed to avoid "the undesirable yo-yo effect." *Id*. Goodluck's AR3 entries entered at zero ADD and are required by law to liquidate at that same rate absent a review of those entries – *i.e.*, the antithesis of a yo-yo. 19 C.F.R. § 351.212. It is Defendants who argue for a yo-yo by asking that such entries liquidate at 33.70% ADD despite having entered at zero ADD. Their entry at zero ADD refutes Petitioners' claim that "Goodluck was put on notice that

the 0.00 percent cash deposits paid would not necessarily be its final duty liability" in the absence of a review request, per Commerce regulation. Pet. Br. at 16. Moreover, these arguments are irrelevant as not espoused by Commerce: "this court will not accept Defendant-Intervenors' post hoc rationale as a basis for upholding a final determination." *CITIC Trading Co. v. United States*, 27 CIT 356, 368 (2003).

In short, clear regulatory language compels liquidating Goodluck's AR3 entries at their undisputed zero "**cash deposit rate applicable <u>at the time the merchandise was entered</u>**" – and not some other rate based on subsequent facts. *Mittal*, 30 CIT at 1576 (emphasis added). Defendants do not provide any authority to support Commerce having instead liquidated those entries at 33.70%. Precedent from this Court, ignored by Defendant, confirms that Goodluck's AR3 entries should liquidate at the zero ADD rate in effect "**at the moment of entry**." *Id.* at 1576 (emphasis added). Neither Petitioner's misplaced reliance on a distinction without a difference in this precedent nor its post-hoc yo-yo argument changes the "obvious" outcome that Goodluck's AR3 entries should liquidate without ADD. *Id.*

## B.   GOODLUCK WAS NOT REQUIRED TO HAVE REQUESTED A REVIEW OF ITS AR3 SALES

Defendants' overarching response is that Goodluck was required to have requested a review of its AR3 entries in June 2021 to avoid the liquidation of those entries at the 33.70% AFA ADD rate. Def. Br. at 6-8 ; Pet. Br. at 16. As support, they herald Goodluck having done so in AR2. Def. Br. at 7-8; Pet. Br. at 21. According to Defendant, "no facts had changed" between AR2 and AR3. Def. Br. at 8. Yet facts did change in critical respects, notably that Goodluck's entries ceased being accompanied by ADD cash deposits, effective May 10, 2020 – *i.e.*, three weeks before the start of the AR3 POR. *May 2020 Notice*, 85 Fed. Reg. at 31,743. Given that Goodluck's entries during most of the AR2 POR entered accompanied by 33.70% ADD cash

deposits, Goodluck out of an abundance of caution requested a review of its AR2 entries that overwhelmingly entered as subject, to prevent their liquidation with ADD in the event no review was requested. Indeed, Goodluck specifically so noted when requesting a review in AR2:

> Although the {*May 2020 Notice*} **effectively revoked the Order with respect to Goodluck**, it also continues to suspend entries from Goodluck pending any appeals. As such, **we are requesting this review in order to preserve the review of Goodluck's entries**.

Letter from GDLSK to Commerce (June 30, 2020), A.R. 8 ("AR2 Review Request"), at 2 n.2 (emphasis added).

Defendants unpersuasively twist this conservative action into demonstrable evidence that Goodluck deliberately forfeited all rights to contest liquidation at the 33.70% AFA ADD rate. *See* Def. Br. at 7-8, 11-12; Pet. Br. at 21. That the AR3 entries were unaccompanied by ADD cash deposits provided a completely different factual predicate than the AR2 entries that required 33.70% ADD cash deposits; by operation of regulation, there should not have been any risk that unreviewed AR3 entries would have liquidated at anything other than zero. Section I.A, *supra*. Moreover, between the time of Goodluck's AR2 Review Request on June 30, 2020, and the June 20, 2021, deadline to request AR3 reviews, Commerce on multiple occasions confirmed Goodluck's understanding that its entries were not subject to ADD:

- Commerce when initiating AR2 in August 2020 stated that "**effective May 10, 2020, Commerce excluded from the {ADD} order {CDMT} that is produced and exported by Goodluck.**" *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 47,731, 47,734 n.5 (Aug. 6, 2020), A.R. 9 ("*AR2 Initiation Notice*") (emphasis added); and

- Commerce when issuing the preliminary results of its first administrative review ("AR1") in October 2020, the Department stated that "**in the {May 2020} Notice, Commerce stated that it was implementing a partial exclusion from the Order for merchandise produced and exported by Goodluck. As a result, we are hereby discontinuing this review with respect to Goodluck.**" *CDMT from India: Preliminary Results of ADD Administrative Review, Partial Rescission of Review, and Partial Discontinuation of Review; 2017–2019*, 85 Fed. Reg. 66,930,

66,931 (Oct. 21, 2020), A.R. 7 ("*AR1 Preliminary Results*") (emphasis added),
Decision Memorandum (Oct. 14, 2020), A.R. 5, at 3-4.

Following Goodluck's reinstatement under the ADD order, Commerce in December 2020

resumed its respondent-specific conduct of AR1 and AR2 – in late 2022 preliminarily calculating

ADD rates of 1.59% and 1.39%, respectively. *CDMT from India: Preliminary Results of ADD*

*Administrative Reviews of Goodluck; 2017-2019 and 2019-2020*, 87 Fed. Reg. 77,793, 77,793

(Dec. 20, 2022). These low rates underscore the impropriety of Commerce instructing CBP to

liquidate Goodluck's AR3 entries at 33.70%. As to why Goodluck filed a review request for

AR2 in June 2019 but not for AR3 in June 2020, these intervening Commerce pronouncements

for AR1 and AR2 were critical. Such Commerce confirmations that Goodluck was not subject to

ADD, coupled with cash deposits not being required, establish that "the facts change{d} between

the second and third administrative reviews" and "distinguish" Goodluck's different approaches

between those reviews – despite Defendants' insistence otherwise. Def. Br. at 12; Pet. Br. at 22.

Defendants belabor Commerce's continued suspension of Goodluck entries as providing

notice that AR3 review requests were necessary to have avoid retroactive liquidation at 33.70%

ADD. Def. Br. at 8; Pet. Br. at 15-16. Yet Commerce, following its *May 2020 Notice*, confirmed

that Goodluck entries were not subject to ADD by declining to initiate AR2 as to Goodluck and

by excluding Goodluck from the ongoing AR1. *AR2 Initiation Notice*, 85 Fed. Reg. at 47,734

n.5; *AR1 Preliminary Results*, 85 Fed. Reg. at 66,931. There was no reason – let alone necessity

– for Goodluck to have requested a review its AR3 entries in June 2021, given Commerce's

confirmation that such entries were not at that time subject to ADD and thus not reviewable. *Id.*

When Commerce provided an opportunity to request AR3, its recognized exclusion of Goodluck

informed that solicitation such that parties could not reasonably have been required to file a

review request for an excluded respondent. *ADD/CVD Order, Finding, or Suspended*

*Investigation; Opportunity To Request Administrative Review*, (June 1, 2021), 86 Fed. Reg. 29,240, 29,241 (June 1, 2021). Indeed, the applicable regulation cited in that notice, *id*. at 29,240, allows only for review requests "of specified individual exporters or producers **covered by an order**." 19 C.F.R. § 351.213(b)(2) (emphasis added).

As of June 2021, Goodluck was not "**covered by an order**." *Id*. (emphasis added). The word "covered" is defined as "enclosed within something." VOCABULARY.COM, available at: https://www.vocabulary.com/dictionary/covered. Commerce having declined to initiate AR2 for Goodluck and having ceased its ongoing review of AR1 confirm that, as a result of the *May 2020 Notice*, Goodluck was excluded from the ADD order on CDMT from India – *i.e.*, the antithesis of being "covered by" or "enclosed within" that order. *Id*.; 19 C.F.R. § 351.213(b)(2). Thus, Goodluck was not required to have requested a review to avoid retroactive liquidation of AR3 entries the 33.70% ADD rate. Petitioners argue that "the Department's pause on administrative reviews of Goodluck pending appeal does not mean that the subject entries during that review were no longer 'reviewable.'"[2] Pet. Br. at 23. Yet Commerce's regulation only allowing review requests for those "**covered by an order**," 19 C.F.R. § 351.213(b)(2) (emphasis added), provides that Goodluck's position is "a legal concept based in the statute or regulations." Pet. Br. at 23.

This is not a situation where Goodluck slept on its rights, despite Defendants' insistence. Def. Br. at 6-8, 10-12; Pet. Br. at 20-22. Petitioners repeatedly misplace reliance on precedent where an importer declined to participate in litigation or in administrative reviews, and was

---

[2]     Petitioners tellingly requested a review of Goodluck in AR1, AR2, and the fourth administrative review – only omitting Goodluck from their AR3 request. Letters from Kelley Drye & Warren to Commerce (July 1, 2019 & June 30, 2020-22), ACCESS Barcodes 3856087, 3993510, 4138524, 4257950. This Court takes judicial notice of documents filed on Commerce's ACCESS database, *see, Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312, 1327 (CIT 2016), and doing so here for Petitioners' review requests suggests that they shared Goodluck's understanding – until Commerce's unlawful action.

PUBLIC VERSION

found by this Court ineligible to benefit from a reduced countervailing duty ("CVD") rate achieved by other parties through litigation. Pet. Br. at 16, 21, 26 (citing *Snap-on, Inc. v. United States*, 949 F. Supp. 2d 1346 (CIT 2013)). By contrast, Goodluck here has at all times acted – and continues – to vigorously protect its rights in judicial and administrative fora. Its June 2020 AR2 request out of an express abundance of caution does not support an obligation to have done so in June 2021 for AR3; all such CDMT entered unaccompanied by cash deposits after Commerce's repeated confirmation that Goodluck was excluded from the ADD order. *AR2 Initiation Notice*, 85 Fed. Reg. at 47,734 n.5; *AR1 Preliminary Results*, 85 Fed. Reg. at 66,931.

By declining to initiate AR2 as to Goodluck in August 2020, Commerce specifically confirmed Goodluck's understanding that it lacked "covered" entries as would be necessary for AR3 review requests to have been accepted by Commerce. *AR2 Initiation Notice*, 85 Fed. Reg. at 47,734 n.5; 19 C.F.R. § 351.213(b)(2). That did not change until the *December 2021 Notice* – well after June 2020 when AR3 review requests would have otherwise been due. Therefore, Goodluck could not, and should not, have been required to have filed a review request at that time.

Finally, Petitioners claim that mere suspension provided a basis for Commerce to accept review requests for Goodluck's AR3 entries in June 2021. Pet. Br. at 23. Besides again being impermissibly post hoc, *CITIC*, 27 CIT at 368, this position is refuted by Commerce's own regulatory language and actions in both AR1 and AR2 recognizing that Goodluck had been excluded from ADD. Petitioners continue by claiming that that, "{i}f Goodluck's entries would not have been 'reviewable' in any event, there would have been no reason to continue suspension of liquidation." Pet. Br. at 24. Yet Commerce could, and should have consistent with its precedent, provided an opportunity for parties to request AR3 upon Goodluck becoming again

subject to the ADD order – as detailed below.

In short, Goodluck was not "**covered**" by the ADD order on CDMT from India in June 2021, such that there was no basis – let alone a critical obligation – to have requested a review of its AR3 entries at that time. 19 C.F.R. § 351.213(b)(2).

### C.  COMMERCE WAS REQUIRED TO PROVIDE GOODLUCK AN OPPORTUNITY TO REQUEST A REVIEW OF ITS AR3 ENTRIES AFTER GOODLUCK AGAIN BECAME SUBJECT

Defendant states that "there was simply no requirement that Commerce review Goodluck's {AR} entries after *Goodluck Federal Circuit* reversed this Court." Def. Br. at 8. Goodluck agrees that Commerce was not required to conduct a review of Goodluck entries if it had instructed the liquidation of those entries at the as-entered zero ADD rate. Section I.A, *supra*. Before Commerce took contrary action, however, it was required to provide Goodluck  an opportunity to request a review of its AR3 entries when Goodluck was again covered by the Order, following Commerce precedent under the ADD orders on *Ball Bearings and Parts Thereof from Japan and the United Kingdom* ("*Ball Bearings*") and *Xanthan Gum from China* ("*Xanthan Gum*"). Pl. Br. at 14-25. Petitioner responds that "two prior determinations are to enough to constitute an agency practice." Pet. Br. at 24 (quotation omitted). Yet the relevant legal standard does not require an established practice: "**An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently**." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (emphasis added).

Commerce in AR3 acted contrary to *Ball Bearings*, in which Commerce "**provide{d} interested parties an opportunity to request administrative reviews of these *Orders***" after the Federal Circuit reversed this Court and found that the ADD orders should not be revoked. *Notice of Reinstatement of ADD Orders, Resumption of Administrative Reviews, and Advance Notification of Sunset Reviews*, 78 Fed. Reg. 76,104, 76,104 (Dec. 16, 2013) ("*Ball Bearings*

*December 2013 Notice*") (emphasis added). Defendant mischaracterizes *Ball Bearings* as "so different" from AR3 by focusing on the two earlier affected reviews: "Commerce had discontinued all unfinished administrative reviews of the orders (*i.e.*, the 2009-2010 review and the 2010-2011 review) . . . . {F}or both resumed reviews, respondents had requested review of their entries and Commerce had initiated a review." Def. Br. at 9-10. Yet Defendant ignores the salient aspect of *Ball Bearings* that for the 2011-2012 and 2012-2013 review requests that were due in May 2012 and May 2013, Commerce recognized that no such requests could have been made per the ADD orders' provisional revocation. *Ball Bearings December 2013 Notice*, 78 Fed. Reg. at 76,106. For these latter reviews, Commerce "provide{d} interested parties with this opportunity simultaneously with the next anniversary month for these *Orders* (May 2014)." *Id*.

Here, Commerce should have followed *Ball Bearings*, and should have ""provide{d} interested parties with this opportunity simultaneously with the next anniversary month for these *Orders*" – *i.e.*, June 2022. *Id*.; *Antidumping or CVD Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 87 Fed. Reg. 33,706, 33,707 (June 3, 2022). Yet Commerce took contrary action by ignoring *Ball Bearings* and retroactively determining that parties should have known that they were required to request AR3 reviews in June 2021 when the ADD order had been provisionally revoked as to Goodluck. *December 2021 Notice*, 86 Fed. Reg. at 74,070. Petitioners, while correctly focusing on the latter reviews in *Ball Bearings*, seek to distinguish that case based on Commerce having "provisionally revoked the {ADD} orders in their entirety." Pet. Br. at 20. This distinction contradicts Petitioners' own emphasis on suspension. *Id*. at 23-24. The *Ball Bearings* entries were "suspended during the pendency of the appeals process." *Ball Bearings and Parts Thereof from Japan and the United Kingdom*: *Notice of Court Decision Not in Harmony with Continuation of ADD Orders,* 76 Fed.

Reg. 35,401, 35,402 (June 17, 2011).  This is the identical factual scenario that exists as to

Goodluck's entries.

Petitioners do not explain why individually revoked companies would have to file on the

anniversary month during their provisional revocation, while all revoked companies can file

those review requests in the anniversary month following reinstatement. If the legal predicate for

requiring Goodluck to have requested AR3 during its provisional revocation in June 2021 is the

mere suspension of its entries, Pet. Br. at 23-24, all such entries were suspended in the *Ball*

*Bearings* reviews. There is no rational basis to find that one excluded company had to request a

review while it was excluded from ADD on account of suspension, whereas all excluded

companies – which likewise have suspended entries – may request reviews following their

reinstatement. Under Petitioners' theory, Commerce should have required that *Ball Bearing*

exporters request the 2011-2012 and 2012-2013 reviews during their anniversary month, *i.e.*,

May 2012 and May 2013, respectively. Commerce instead made those requests due the

following anniversary month, on May 2014. *Ball Bearings December 2013 Notice*, 78 Fed. Reg.

at 76,106. Commerce should have adopted the identical methodology here.

*Xanthan Gum* likewise supports Goodluck, albeit it does not feature passage of

anniversary months during provisional revocation. Def. Br. at 10; Pet. Br. at 21-22. It also rebuts

Petitioners' attempt to distinguish *Ball Bearings*, since in *Xanthan Gum* – like in this case – the

ADD order was provisionally revoked for company, rather than the entire industry. In *Xanthan*

*Gum*, Commerce published notice of mandatory respondent Fufeng's reinstatement, per the

Federal Circuit having reversed this Court, earlier in the month when review requests were due:

July 2020. *Xanthan Gum from China: Notice of Third Amended Final Determination Pursuant to*

*Court Decision*, 85 Fed. Reg. 40,967 (July 8, 2020). Yet Commerce earlier stated that it "**will not**

**initiate any new administrative reviews of Fufeng's entries . . . during the pendency of the appeals process, because Fufeng is no longer subject to that order.**" *Xanthan Gum from China: Notice of Court Decision Not in Harmony With Amended Final Determination in LTFV Investigation; Notice of Amended Final Determination Pursuant to Court Decision; Notice of Revocation of ADD Order in Part; and Discontinuation of Fourth and Fifth ADD Administrative Reviews in Part*, 83 Fed. Reg. 52,205, 55,206 (Oct. 16, 2018) (emphasis added); *Xanthan Gum from China: Final Results of ADD Administrative Review, Final Determination of No Shipments, and Partial Discontinuation of ADD Administrative Review; 2016-2017*, 83 Fed. Reg. 65,143, 65,144 (Dec. 19, 2018) (emphasis added).

Since Commerce was not conducting new administrative reviews of Fufeng because it was excluded from the ADD order, its entries could not have been "covered" during provisional revocation – status that is required for review requests to be filed and for reviews to be conducted. 19 C.F.R. § 351.213(b)(2). Therefore, *Xanthan Gum*, like *Ball Bearings*, supports Goodluck's position. Moreover, Defendants tellingly fail to provide any precedent where review requests remained due during the anniversary month for provisionally excluded companies whose exclusion lasted beyond the anniversary month. *See* Def. Br. at 9-10; Pet. Br. at 19-23. Goodluck submits that no such precedent exists, as it would contradict Commerce regulation. Section I.A-B, *supra*.

In short, *Xanthan Gum* and *Ball Bearings* present "similar situations" which Commerce in AR3 "treated differently." *SKF*, 263 at 1382. Yet Commerce unlawfully provided "insufficient reasons" for doing so. *Id*. Indeed, Commerce provided no reasons whatsoever. Goodluck pressed Commerce to explain its deviation from *Ball Bearings*. Letter from GDLSK to Commerce (Jan. 3, 2022), A.R. 13 ("Goodluck Comments"), at 4-5. Letter from GDLSK to Commerce, (Jan. 7,

2022), A.R. 15 ("Goodluck Rebuttal"), at 4. Commerce's response was that because Goodluck did not seek correction of "an error in addition, subtraction, or other arithmetic function, {or} . . . another type of unintentional error," no explanation or action was warranted as the issue did not "constitute a ministerial error as defined by 19 CFR 351.224(f)." Commerce Memorandum (Jan. 19, 2022), A.R. 16 ("Commerce Jan. 19 Memo"), at 5-6.

This inadequate response cannot serve as the explanation required by law for "treating similar situations differently." *SKF*, 263 F.3d at 1382. Moreover, such unwillingness to engage Goodluck's substantive challenges to the *December 2021 Notice* reveals that Commerce failed to afford Goodluck sufficient process – as detailed below.

### D.   COMMERCE FAILED TO AFFORD GOODLUCK SUFFICIENT PROCESS

Goodluck demonstrated that Commerce denied it sufficient process when it summarily decreed – with two sentences in the Federal Register – that Goodluck's AR3 entries must retroactively liquidate at 33.70% ADD, despite their having entered at zero ADD. Pl. Br. at 30-34. Defendant ignores this argument. *See* Def. Br. at 3-14. Petitioners respond by mischaracterizing Goodluck as arguing for a particular ADD rate. Pet. Br. at 26-28. As an initial response, Goodluck again emphasizes that "this court will not accept Defendant-Intervenors' post hoc rationale as a basis for upholding a final determination." *CITIC*, 27 CIT at 368.

Moreover, Goodluck is not challenging the ADD rate assigned in AR3, but rather whether its AR3 entries may be retroactively liquidated at the 33.70% AFA ADD rate despite not being "covered" by the ADD order on CDMT from India as of June 2020, without affording Goodluck an opportunity to request an administrative review. This is not a challenge to the specific rate, but a challenge to Commerce's failure to follow Section 351.212(a), (c) of its regulations, or, alternatively, failure to afford Goodluck its statutory and regulatory right to

request and participate in an administrative review.

Commerce's action would result in no less than [                    ] in ADD liability on account of the liquidation of Goodluck's AR3 entries instructed in the *December 2020 Notice*.[3] It defies credulity to accept that Goodluck lacked a property interest in this substantial amount, which represents the difference between liquidating at the as-entered zero ADD rate in recognition of the entries not being covered by the ADD order during the anniversary month, and the 33.7% AFA ADD rate at which Commerce instructed CBP to retroactively liquidate. *December 2021 Notice*, 86 Fed. Reg. at 74,070. Again, Commerce failed to provide "notice and an opportunity to be heard." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761-62 (Fed. Cir. 2012); Pl. Br. at 31-32. Rather, Commerce mandated this result with two sentences in the Federal Register, *id.*, and then expressly refused to consider Goodluck's substantive comments, finding that such a challenge to Commerce's AR3 decision-making did not constitute a ministerial error allegation. Commerce Jan. 19 Memo at 4-6. "In so doing, Commerce acted in an arbitrary and capricious manner and deprived {Goodluck} of its constitutional due process right." *Kemira Fibres Oy v. United States*, 858 F. Supp. 229, 235-36 (CIT 1994).

Petitioner asserts a post hoc and meritless argument based on the *December 2020 Notice* not being issued pursuant to *Timken v. United States*, 893 F.2d 337 (Fed. Cir. 1990). Pet. Br. at 29. Yet the extent to which process was owed and was not provided does not hinge on the titling of that Notice; that Commerce action instructing retroactive liquidation at 33.7% implicated its undisputed "right to due process in antidumping proceedings." *Gulf States Tube Div. of Quanex*

---

[3]      Goodluck was [

] worth of CDMT from India that entered the United States during the AR3 POR. [

].

*Corp. v. United States*, 981 F. Supp. 630, 652 (CIT 1997). Despite Petitioners' attempt to recast

the relief sought by Goodluck as to a particular ADD rate, Pet. Br. at 27, this Court has long

recognized "a protected interest in the proper assessment of tariffs on goods already imported."

*Nereida Trading Co. v. United States*, 34 CIT 241, 248 (2010). Petitioners fail to distinguish

applicable precedent, as they acknowledge Commerce in those instances "put plaintiff on notice"

and "met the requirements of law." Pet. Br. at 27-28. By contrast, Goodluck was first provided

with notice of the AR3 liquidation when that action was taken, and was improperly

"foreclose{d} an opportunity to offer contrary presentation." *Royal Brush Mfg., Inc. v. United*

*States*, 483 F. Supp. 3d 1294, 1306 (CIT 2020) (quoting *Bowman Transp., Inc. v. Ark.-Best*

*Freight System, Inc.*, 419 U.S. 281, 289 n.4 (1974)).

Petitioners misplace reliance on Goodluck's acknowledgment that the *December 2020*

*Notice* served "multiple purposes." Pet. Br. at 28. Yet it was Defendant who originally made this

statement in explaining how that notice pertained to the investigation, AR1, AR2, and AR3.

Defendant's Response to the Court's Questions for Oral Argument (Sept. 13, 2022), at 3, 6.

Importantly, the ministerial error regulation cited, Commerce Jan. 19 Memo at 4-6, applies only

where "the Secretary has disclosed calculations." 19 C.F.R. § 351.224(f). With respect to

Goodluck, this would only involve the investigation and not AR3. It is therefore disingenuous for

Commerce to decline to substantively engage with Goodluck with respect to its AR3 entries

based on an inapplicable regulation. Given the inapplicability of Commerce's ministerial error

regulation, "**the procedural irregularities complained** of . . . —viz.**, lack of notice and**

**opportunity to comment—are so fundamentally prejudicial as to constitute a deprivation of**

**due process**." *Lois Jeans & Jackets*, *U.S.A.*, *Inc. v. United States*, 5 CIT 238, 243 (1983)

(emphasis added).

Goodluck further demonstrated that, as to its AR3 entries liquidating at 33.70%, Commerce failed to provide "**provide adequate notice**" of ADD applicability required by this Court. *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289, 1304 (CIT 2021) (emphasis added); Pl. Br. at 21. Defendants emphasize the *May 2020 Notice* in which Goodluck was advised that its entries would remain suspended. Def. Br. at 7; Pet. Br. at 23. However, for its CDMT subsequently entered in AR3 without ADD, Goodluck was at most on notice that such entries could liquidate with ADD after a review was requested during the anniversary month following its reinstatement. In light of *Ball Bearings* and *Xanthan Gum,* the statutory and regulatory requirement that interested parties have the absolute right to request that Commerce conduct an administrative review of ADD orders, and Commerce's rejection of Goodluck's AR2 review request because its AR2 entries were provisionally excluded from ADD at that time, Goodluck could not possibly have believed that its AR3 entries could retroactively liquidate at 33.70% because Goodluck had failed to file an AR3 review request when it was not covered by the ADD order. Section I.A-C, *infra*.

By decreeing retroactive AR3 liability at 33.70%, Commerce ran afoul of "the broader **due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct {the order or regulation} prohibits or requires**.'" *Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 495 (Fed. Cir. 2020) (emphasis added). Here, Commerce did not provide Goodluck with any warning. To the contrary, the statute, applicable regulations, Department precedent, and Commerce's dismissal of Goodluck's AR2 review request all compelled Commerce to either liquidate Goodluck entries at the zero cash deposit rate or afford Goodluck the opportunity to participate in an administrative review when Goodluck again

became covered by the ADD Order.

## II.   COMMERCE UNLAWFULLY REQUIRED ADD CASH DEPOSITS EFFECTIVE SEPTEMBER 10, 2020

Goodluck demonstrated that the *December 2020 Notice* unlawfully required that Goodluck's entries of CDMT from India  be accompanied by ADD cash deposits effective September 10, 2020. Pl. Br. at 34-41. That date, ten days from *Goodluck Federal Circuit*, could not have served as the trigger because it was merely an intermediary decision remanding back to this Court to potentially consider other issues.[4] *Id*. at 36-37. Cash deposit collection should not have been required before notice was provided by the *December 2020 Notice*, *id*. at 37-39. At an absolute minimum, the ten-day period proscribed by statute should have started from this Court's entry of judgment, *i.e.*, November 28, 2021. *Id*. at 39-41. Defendants defend Commerce's September 10, 2020, effective date by arguing that Commerce could have selected an earlier date, despite proffering different alternate effective dates:

- According to Defendant, "Commerce . . . could have used **May 27, 2020**, as the effective date for imposing Goodluck's cash deposit rate." Def. Br. at 14 (emphasis added); and

- According to Petitioners, "{t}he earliest correct effective date for the collection of cash deposits at the 33.70% rate was **August 31, 2021**." Pet. Br. at 31 n.4 (emphasis added).

These arguments are not valid defenses. "{T}he 'touchstone' of the 'arbitrary, capricious' standard is rationality." *Hyundai Elec. Indus. Co. v. United States,* 899 F.2d 1204, 1209 (Fed.Cir.1990). Neither Commerce nor Defendants provide a rational basis for September 10, 2020; assuming that Commerce could have used other effective dates does not constitute the requisite "satisfactory explanation for its action including a rational connection between the facts

---

[4]     While Petitioners emphasize that "Goodluck raised no issues," Pet. Br. at 7, it is critical and undisputed that Goodluck could have done so. Pl. Br. at 36-37.

found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co. v. United States*, 463 U.S. 29, 43 (1983). Moreover, the ten-day period proscribed by statute is triggered by a "FINAL DECISION," which the Federal Circuit properly interprets as "**when judgment is entered**." 19 U.S.C. § 1516a(e); *Timken*, 893 F.2d at 340-41 (emphasis added).

Petitioners claim that the ten-day statute is irrelevant for setting cash deposits. Pet. Br. at 29-32. Besides again being impermissibly post hoc, *CITIC*, 27 CIT at 368, Petitioners fail to explain why Commerce set the effective date ten days from *Goodluck Federal Circuit*; if 19 U.S.C. § 1516a were inapplicable, Commerce would not have incorporated the ten-day requirement at all. Commerce appears to understand that the relevant statute speaks to "notice of a court decision" affected by litigation ("sustained in whole or in part by a decision of th{is} . . . Court or . . . the Federal Circuit"). 19 U.S.C. § 1516a(e). While Petitioners emphasize the *December 2021 Notice* reinstating the original determination, Pet. Br. at 28, the statute was nonetheless implicated because in so doing Commerce reversed its *May 2020 Notice*, 85 Fed. Reg. 31,742. The purpose behind this period is to provide sufficient notice of changed circumstances, which underscores the impropriety of Commerce making the new cash deposit rate effective before the *December 2021 Notice*. Pl. Br. at 37-39.

Defendants also fail to address the directly relevant *Ball Bearings* precedent where the effective date was set ten days after this Court entered final judgment reinstating the original Commerce determination – not the intermediary Federal Circuit ruling leading to that outcome. *Ball Bearings December 2013 Notice*, 78 Fed. Reg. at 76,104; *NSK Corp. v. ITC*, 37 CIT 1644 (Fed. Cir. 2013); Pl. Br. at 39-40. While *Ball Bearings* precludes Commerce from setting the effective date before November 28, 2021, at minimum remand is necessary because Commerce failed to provide "reasons for treating similar situations differently." *SKF*, 263 F.3d at 1382.

Whether on substantive or procedural grounds,[5] Commerce unlawfully set the 33.70% cash

deposit rate for Goodluck effective September 10, 2021.

## **CONCLUSION**

For the foregoing reasons, Goodluck respectfully requests that this Court invalidate

Commerce's *December 2020 Notice* as arbitrary, capricious, and otherwise contrary to law.

Respectfully submitted,

/s/ Ned H. Marshak
Ned H. Marshak
Jordan C. Kahn
Michael S. Holton

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

599 Lexington Avenue FL 36
New York, NY 10022
-and-
1201 New York Ave., NW, Suite 650
Washington, DC 20005

*Counsel for Plaintiff*
*Goodluck India Limited*

Dated: May 15, 2023

---

[5]      Goodluck demonstrated that Commerce denied due process with the cash deposit
effective date, Pl. Br. at 41, and need not rebut Petitioners because such claim is derivative of
that challenging liquidation. Section I.D, *supra*.

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiff's Reply contains 6,978 words including footnotes, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's Microsoft Word processing system, and is less than the 7,000 word limit.

<u>/s/ *Jordan C. Kahn*</u>
Jordan C. Kahn
*Counsel for Goodluck India Limited*

Dated: May 15, 2023

12195551_1