Slip Op. 23-164

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **GOODLUCK INDIA LIMITED,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant,** | **Before: Gary S. Katzmann, Judge** |
| **and** | **Court No. 22-00024** |
| **ARCELORMITTAL TUBULAR PRODUCTS, MICHIGAN SEAMLESS TUBE, LLC, PTC ALLIANCE CORP., WEBCO INDUSTRIES, INC., ZEKELMAN INDUSTRIES, INC., AND PLYMOUTH TUBE CO., USA,** | |
| **Defendant-Intervenors.** | |

## <u>OPINION</u>

[ Judgment on the agency record is entered for Commerce. ]

Dated: <u>November 21, 2023</u>

<u>Jordan C. Kahn</u>, Grunfeld Desiderio Lebowitz Silverman & Klestdt, LLP, of New York, N.Y. and Washington, D.C., argued for Plaintiff Goodluck India Limited. With him on the briefs were <u>Ned H. Marshak</u> and <u>Michael S. Holton</u>.

<u>Ioana C. Meyer</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States.  With her on the briefs were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Claudia Burke</u>, Assistant Director.  Of Counsel <u>Ayat Mujais</u>, Senior Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance.

<u>R. Alan Luberda</u>, Kelley Drye & Warren, LLP, of Washington, D.C., argued for Defendant-Intervenors ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, PTC Alliance Corp.,

Webco Industries, Inc., Zekelman Industries, Inc., and Plymouth Tube Co., USA. With him on the briefs were <u>David C. Smith, Jr.</u> and <u>Julia A. Kuelzow</u>.

Katzmann, Judge:  At the heart of this case is a challenging and uncommon question of trade administration and procedure: what obligation does a foreign exporter or producer have in requesting ongoing administrative reviews ("ARs") when, pending a final court decision after a <u>Timken</u> notice, that entity has been provisionally exempted from paying antidumping duties?[1] Plaintiff Goodluck India Limited ("Goodluck") brings this action to challenge administrative action stemming from the assessment of antidumping duties by Commerce on entries of certain cold-drawn mechanical tubing of carbon and alloy steel ("CDMT")[2] from the Republic of India. Defendant the United States ("the Government") opposes, as do Defendant-Intervenors ArcelorMittal Tubular Products, Michigan Seamless Tube, LLC, PTC Alliance Corp., Webco Industries, Inc., Zekelman Industries, Inc., and Plymouth Tube Co., USA (collectively, "Domestics").

---

[1] A <u>Timken</u> notice is a notice published by the U.S. Department of Commerce ("Commerce") of any court decision that is "not in harmony" with a final antidumping or countervailing duty determination.  <u>See</u> <u>infra</u> p. 7.  <u>Timken</u> notices may, pending a final court decision, provisionally change the rights and obligations of parties subject to the final duty determination.  <u>See</u> <u>id.</u>

[2] Per the U.S. International Trade Commission ("ITC"):

> CDMT are steel tubular products with a circular cross-section shape that have been cold-drawn or otherwise cold-finished in a manner that changes the product's diameter, wall thickness, or both. . . . The characteristics imparted by cold-drawing or cold-finishing make CDMT suitable for a variety of applications, including mechanical parts in automobiles, trucks, aircraft, construction, agricultural and drilling equipment, and hydraulic cylinders.

Cold-Drawn Mechanical Tubing from China and India at 8, Inv. Nos. 701-TA-576-577 (Final), USITC Pub. 4755 (Jan. 2018) (footnotes omitted).

In April 2018, Commerce assigned Goodluck, a producer and exporter of Indian CDMT, a final antidumping duty rate of 33.7 percent after conducting a less-than-fair-value investigation. In so doing, Commerce rejected Goodluck's submission of supplemental data and relied on adverse facts available ("AFA") under 19 U.S.C. § 1677e(b).  Goodluck promptly filed suit in the U.S. Court of International Trade ("CIT") to challenge Commerce's final determination.  Holding for Goodluck, the CIT concluded that Commerce unlawfully rejected Goodluck's supplemental data.   The CIT remanded to Commerce for reconsideration, and on remand, Commerce recalculated Goodluck's dumping margin as zero percent under respectful protest.  In April 2020, the CIT sustained that remand redetermination and entered judgment for Commerce, after which Commerce issued a <u>Timken</u> notice.  Domestics timely appealed the CIT's judgment to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit").  In August 2021, the Federal Circuit reversed the CIT and concluded that Commerce's initial duty rate of 33.7 percent was indeed lawful.  The CIT entered judgment for the 33.7 rate in November 2021.

What's past is prologue.  The subject of current controversy is a notice that Commerce issued in December 2021 following the Federal Circuit's decision.  <u>See</u> <u>Notice of Second Amended Final Determination; Notice of Amended Order; Notice of Resumption of First and Reinstatement of Second Antidumping Duty Administrative Reviews; Notice of Opportunity for Withdrawal; and Notice of Assessment in Third Antidumping Duty Administrative Review</u>, 86 Fed. Reg. 74069 (Dep't Com. Dec. 29, 2021), P.R. 12 ("<u>December 2021 Notice</u>").  Goodluck contests two particular agency actions in this notice.  First, Commerce instructed U.S. Customs and Border Protection ("Customs") to liquidate certain of Goodluck's entries, entered from June 1, 2020, through May 31, 2021, at the 33.7 percent rate rather than the zero percent rate because Goodluck did not timely

file an AR request during the anniversary month; during the anniversary month, however, the duty on goods produced and exported by Goodluck was provisionally zero percent.  Id. at 74070. Second, Commerce designated September 10, 2021, as the effective date for collecting cash deposits at the 33.7 percent rate.  Id. at 74070–71.  Goodluck attempted to administratively challenge the December 2021 Notice, and Commerce determined that Goodluck was entitled to no relief soon thereafter.  See Mem. from N. James to S. Thompson, re: Notice of Second Amended Final Determination at 4–6 (Dep't Com. Jan. 19, 2022), P.R. 16 ("January 2022 Memorandum"). Goodluck moves for judgment on the agency record to contest the December 2021 Notice and January 2022 Memorandum, arguing that Commerce's actions violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Due Process Clause of the Fifth Amendment of the U.S. Constitution.

The court first sustains Commerce's instruction to Customs to liquidate certain of Goodluck's entries.  Commerce's December 2021 Notice was a reasonable exercise of procedural discretion that did not contravene the Constitution, statute, regulation, or established agency practice.  The court next concludes that any error regarding the cash deposit effective date would be harmless because an AR that encompasses any of the alternative dates is already underway. Judgment on the agency record is accordingly entered for Commerce.

## BACKGROUND

### I.    *Legal Background*

Dumping refers to the practice of selling foreign products for less than fair value in the United States.  See Saha Thai Steel Pipe (Pub.) Co. v. United States, 635 F.3d 1335, 1338 (Fed. Cir. 2011).  Commerce identifies dumping by assessing whether the export price of an investigated product, as measured by U.S. sales price, is lower than the product's normal value, as typically

measured by the price of the product in the home market.  See Maverick Tube Corp. v. Toscelik Profil, 861 F.3d 1269, 1271 (Fed. Cir. 2017); see also 19 U.S.C. § 1677b(a)(1)(B)(i).  Where Commerce identifies dumping, and where the ITC makes the additional requisite finding that the sale of foreign merchandise below fair value is materially injuring, threatening, or impeding the establishment of an industry in the United States, see Diamond Sawblades Mfrs. Coal. v. United States, 866 F.2d 1304, 1306 (Fed. Cir. 2017), the agency imposes antidumping duties on such merchandise proportionate to the amount by which normal value exceeds the export price, see 19 U.S.C. §§ 1673, 1677(35)(A).

Within seven days of notification of the ITC's final affirmative determination, Commerce must publish an antidumping order that instructs Customs to assess an antidumping duty.  See 19 U.S.C. §§ 1673d, 1673e(a); 19 C.F.R. § 351.210(d); Diamond Sawblades Mfrs. Coal. v. United States, 626 F. 3d. 1374, 1376 (Fed. Cir. 2010).  Because the United States uses a retrospective system, final antidumping duties are assessed after merchandise is imported.  19 C.F.R. § 351.212; see also 19 U.S.C. §§ 1673d(c)(1)(B)(ii), 1673e(c)(3).  Specifically, Commerce instructs Customs to require cash deposits for the assessed duties for each entry of the subject merchandise.  See 19 U.S.C. § 1673d(c)(1)(B)(ii); 19 C.F.R. § 351.210(d); Diamond Sawblades, 626 F. 3d. at 1376. "Cash deposits . . . are considered estimates of the duties that the importer will ultimately have to pay as opposed to payments of the actual duties."  Sioux Honey, 672 F.3d at 1047.

Three interrelated administrative procedures following the publication of a final determination are at play in this case.  Each is summarized below.

### A.    Administrative Reviews

As part of the retrospective system, the final computation or ascertainment of duties on entries—called liquidation—occurs later.  See 19 C.F.R. § 159.1.  The duties to be assessed at

liquidation are generally determined through an independent process: the AR of an antidumping

order.  See 19 C.F.R. § 351.212; see also 19 U.S.C. §§ 1673d(c)(1)(B)(ii), 1673e(c)(3).  At least

once every twelve months beginning on the one-year anniversary of the publication of the

antidumping order, Commerce publishes a notice of opportunity to request an AR, which allows

interested parties to file requests for reviewing the duties on merchandise entered during a

particular period of review ("POR").  See 19 U.S.C. § 1675(a)(1); BMW of N. Am. LLC v. United

States, 926 F.3d 1291, 1298 (Fed. Cir. 2019).  During the anniversary month, "an exporter or

producer covered by an order" specifically "may request in writing that the Secretary conduct an

administrative review of only that person."  19 C.F.R. § 351.213(b)(2).[3]

     If Commerce receives a timely request for an AR, it publishes a notice of initiation of AR

in the Federal Register.   See BMW, 926 F.3d at 1298.   Commerce then gathers pertinent

information by "distribut[ing] or mak[ing] available questionnaires to those entities Commerce

designated in the notice of [i]nitiation."  Id. (quoting Transcom, Inc. v. United States, 24 CIT 1333,

1335, 123 F. Supp. 2d 1372, 1374 (2000)).  Finally, Commerce "determines the antidumping duty

rates applicable to each entry or type of entries and publishes these determinations in the Federal

Register."  Id.  This final antidumping "rate obtained through the administrative review is called

the liquidation rate."  Sioux Honey, 672 F.3d at 1047.  Following the final determination of duties

published in the Federal Register, 19 C.F.R. § 351.221(b)(5), Commerce subsequently transmits

liquidation instructions to Customs.  19 C.F.R. § 351.221(b)(6); Sioux Honey, 672 F.3d at 1047.

These instructions direct Customs to liquidate cash deposits for the POR at the liquidation rate and

---

[3] Commerce may also choose to conduct an AR "on the Secretary's own initiative when
appropriate."  19 C.F.R. § 351.221(b).

instruct Customs to collect cash deposits on future entries at the revised duty rate.[4]  19 C.F.R.

§ 351.221(b)(6)–(7).

If Commerce does not receive a timely request for an administrative review, it instructs

Customs, "without additional notice," to (1) assess duties at "rates equal to the cash deposit of . . .

estimated antidumping duties . . . required on that merchandise at the time of entry" and (2)

continue to collect cash deposits at the existing rate.  19 C.F.R. § 351.212(c)(1)(i)–(ii).  If an

administrative review is not conducted, the cash deposit rate from the final determination in the

underlying investigation or the most recently completed administrative review will be the basis for

the final duty assessed.  See id.; Sioux Honey, 672 F.3d at 1047.

### B.        Suspension of Liquidation Pending Judicial Review

Interested parties may appeal a final determination to the CIT.  19 U.S.C. § 1516a(a).

Unless the CIT or the Federal Circuit rules otherwise, Commerce's antidumping determinations

are presumed to be correct.  See Timken Co. v. United States, 893 F.2d 337, 342 (Fed. Cir. 1990).

But "if the CIT or this court renders a decision which is contrary to that determination, the

presumption of correctness disappears" until a conclusive court decision is reached.[5]  Id. at 342.

The Federal Circuit explained:

> Thereafter, Commerce should suspend liquidation until there is a conclusive court
> decision which decides the matter, so that subsequent entries can be liquidated in
> accordance with that conclusive decision.  We also note that this scheme avoids the

---

[4] "If the [cash] deposit rate (i.e., the estimated rate calculated during the antidumping investigation)
is higher than the final liquidation rate, then the importer overpaid and is entitled to a refund.  If
the [cash] deposit rate equals the liquidation rate, then the importer's previous deposit satisfies its
duty obligation."  Sioux Honey, 672 F.3d at 1047; see also 19 U.S.C. § 1673f.

[5] A "conclusive court decision" is reached when all "judicial review proceedings of the
antidumping order have been completed."  Diamond Sawblades, 626 F.3d at 1381; see also 19
U.S.C. § 1516a(e).

"yo-yo" effect . . . .  In particular, because an adverse CIT decision merely suspends liquidation, no "flip-flop" takes place if this court subsequently reverses the CIT.

Id. at 342 (citing Melamine Chems., Inc. v. United States, 732 F.2d 924, 934 (Fed. Cir. 1984)). Commerce must publish a notice of any such court decision that is "not in harmony" with a final antidumping determination—called a "Timken notice"—within ten days of the decision.  Diamond Sawblades, 626 F.3d at 1381 (quoting Timken, 893 F.2d at 341); see also 19 U.S.C. § 1516a(c)(1). If, at the end of the litigation, the cause of action challenging Commerce's determination is sustained in whole or in part by a decision of the CIT or the Federal Circuit, entries "shall be liquidated in accordance with the final court decision in the action."  19 U.S.C. § 1516a(e). Commerce must publish notice of the final court decision within ten days of its issuance.  Id.

### C.      *Correction of Ministerial Errors*

Parties may file comments concerning ministerial errors in Commerce's calculations following Commerce's "disclosure" of the details of its antidumping duty calculations in administrative reviews and final antidumping duty orders.  See 19 C.F.R. § 351.224(a)–(c).  A ministerial error is "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error."  Id. § 351.224(f).  The parties' comments must identify and explain the alleged error, point to applicable evidence in the official record, and suggest an appropriate correction.  Id. § 351.224(d).  After analyzing comments, Commerce will "correct any significant ministerial error by amending the preliminary determination[] or correct any ministerial error by amending the final determination or the final results of review."  19 C.F.R. § 351.224(e).

## II.    *Factual Background*

On April 19, 2017, Domestics filed antidumping petitions with Commerce alleging that CDMT was being imported into the United States from India, among other countries, at less than fair value.  See Certain Cold-Drawn Mechanical Tubing of Carbon and Alloy Steel From the Federal Republic of Germany, India, Italy, the Republic of Korea, the People's Republic of China, and Switzerland: Initiation of Less-Than-Fair-Value-Investigations, 82 Fed. Reg. 22491, 22491 (Dep't Com. May 16, 2017).  Commerce ultimately issued a final affirmative determination of sales at less than fair value and assigned Goodluck a 33.7 percent antidumping duty rate on the basis of total AFA.  See Final Affirmative Determination of Sales at Less Than Fair Value, 83 Fed. Reg. 16296, 16296–97 (Dep't Com. Apr. 16, 2018), P.R. 2 ("Final Determination").[6]

Timely filing suit in the CIT, Goodluck challenged Commerce's application of AFA in the Final Determination.  See Goodluck India Ltd. v. United States ("Goodluck I"), 43 CIT __, __, 393 F. Supp. 3d 1352, 1363–70 (2019).  The court concluded that the calculated duty rate of 33.7 percent was unlawful because Commerce had impermissibly refused to consider certain data revisions submitted by Goodluck and had instead relied on total AFA.  See id.  The Final Determination was accordingly remanded to Commerce for reconsideration.  Id. at 1369–70. Following remand, Commerce recalculated Goodluck's antidumping duty rate as zero percent. See Final Results of Redetermination Pursuant to Court Remand (Dep't Com. Dec. 23. 2019), ECF No. 55 ("Remand Results").  The court issued judgment sustaining the Remand Results on April

---

[6] Commerce determined the estimated weighted-average dumping margin to be 33.8 percent and the effective cash deposit rate, adjusted for offsets, to be 33.7 percent.  See id. at 16297.  The court refers to the effective 33.7 percent cash deposit rate, rather than the estimated 33.8 percent rate, throughout the opinion.

30, 2020, see Goodluck India Ltd. v. United States ("Goodluck II"), 44 CIT __, __, 439 F. Supp.

3d 1366, 1370 (2020), and Domestics appealed to the Federal Circuit.

On May 27, 2020, Commerce published a Timken notice following the final CIT judgment

for Goodluck and revoked its Final Determination, in part, with respect to entries produced and

exported by Goodluck, effective from May 10, 2020.   See Notice of Court Decision Not in

Harmony with Final Determination of Sales at Less Than Fair Value; Notice of Amended Final

Determination Pursuant to Court Decision; and Notice of Revocation of Antidumping Duty Order,

in Part, 85 Fed. Reg. 31742, 31742–43 (Dep't Com. May 27, 2020), P.R. 5 ("May 2020 Timken

Notice").  The May 2020 Timken Notice stated in relevant part:

> Because there is now a final court decision, Commerce is amending its Final
> Determination with respect to Goodluck [to a zero percent rate] . . . .
>
> As a result of this amended final determination, in which Commerce has calculated
> an estimated weighted-average dumping margin of 0.00 percent for Goodluck,
> Commerce is hereby excluding merchandise produced and exported by Goodluck
> from the [Final Determination].  Accordingly, Commerce will direct [Customs] to
> release any bonds or other security and refund cash deposits pertaining to any
> suspended entries from Goodluck.   Pursuant to Timken, the suspension of
> liquidation must continue during the pendency of the appeals process.
> Additionally, we will instruct [Customs] to suspend liquidation of all unliquidated
> entries from Goodluck at a cash deposit rate of 0.00 percent which are entered, or
> withdrawn from warehouse, for consumption on or after May 10, 2020, which is
> ten days after the CIT's final decision, in accordance with section 516A of the Act.
> In the event the CIT's ruling is not appealed, or if appealed and upheld by the
> [Federal Circuit], Commerce will instruct [Customs] to terminate the suspension of
> liquidation and to liquidate entries produced and exported by Goodluck without
> regard to antidumping duties.

Id. at 31743 (footnotes omitted).

Prior to the May 2020 Timken Notice, Commerce had initiated its first administrative

review ("AR1") of the Final Determination, covering the period of November 22, 2017, to May

31, 2019.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 84 Fed.

Reg. 36572 (Dep't Com. July 29, 2019).  In light of the CIT's rulings in Goodluck I and Goodluck

II, Commerce stated the following in its preliminary AR1 results:

> On May 27, 2020, Commerce published a notice of a court decision not in harmony
> with a final determination in the less-than-fair-value (LTFV) investigation of cold-
> drawn mechanical tubing from India.  At that time, Commerce amended its final
> determination in the LTFV investigation and revised the antidumping duty margin
> calculated for Goodluck India Limited (Goodluck).  Additionally, in the Timken
> Notice, Commerce stated that it was implementing a partial exclusion from the
> [Final Determination] for merchandise produced and exported by Goodluck.  As a
> result, we are hereby discontinuing this review with respect to Goodluck because
> Goodluck only made sales to the United States of merchandise that it produced and
> exported.

Preliminary Results of Antidumping Administrative Review, Partial Rescission of Review, and

Partial Discontinuation of Review; 2017–2019, 85 Fed. Reg. 66930, 66931 (Dep't Com. Oct. 21,

2020), P.R. 7 (footnotes omitted).

Moreover, on June 2, 2020, Commerce announced an opportunity to request review of

CDMT sales in the second administrative review ("AR2"), covering the period of June 1, 2019, to

May 31, 2020.  Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation;

Opportunity to Request Administrative Review, 85 Fed. Reg. 33628, 33629 (Dep't Com. June 2,

2020).  Goodluck requested such review of its sales on June 30, 2020.  See Letter from Goodluck

to W. Ross, Sec'y of Com., re: Request for Administrative Review at 2 (June 30, 2020), P.R. 8

("AR2 Request Letter").  In its request, Goodluck stated that "[a]lthough the [May 2020 Timken

Notice] effectively revoked the [Final Determination] with respect to Goodluck, it also continues

to suspend entries from Goodluck pending any appeals.  As such, we are requesting this review in

order to preserve the review of Goodluck's entries."  Id. at 2 n.2.  A few weeks later, Commerce

stated in its AR2 initiation notice:

> Commerce is only reviewing entries that were produced, but not exported, by
> Goodluck India Limited (Goodluck), and/or entries that were exported, but not

produced, by Goodluck.  Pursuant to a Court of International Trade decision, effective May 10, 2020, Commerce excluded from the antidumping duty order certain cold-drawn mechanical tubing of cargon and allowy steel that was produced and exported by Goodluck.

See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 85 Fed. Reg. 47731, 47733 n.5 (Dep't Com. Aug. 6, 2020), P.R. 9.  Later, in its preliminary AR2 results, Commerce further stated:

> The administrative review remains active with respect to the two remaining companies for which a review was initiated, [including] Goodluck India Limited (Goodluck) . . . .
>
> We preliminarily determine that Goodluck had no shipments of the subject merchandise to the United States during the POR.  Consistent with its practice, Commerce finds that it is not appropriate to preliminarily rescind the review with respect to Goodluck, but rather to complete the review and issue appropriate instructions to [Customs] based on the final results of this review.
>
> As noted in the Timken Notice regarding Goodluck, the suspension of liquidation of Goodluck's entries must continue during the pendency of the process of appealing the [CIT]'s ruling.  If the ruling is upheld by the [Federal Circuit], Commerce will instruct [Customs] to terminate the suspension of liquidation and liquidate entries produced and exported by Goodluck without regard to antidumping duties.

Preliminary Results of Antidumping Duty Administrative Review; 2019–2020, 86 Fed. Reg. 33980, 33980–81 (Dep't Com. June 28, 2021) ("AR2 Preliminary Results").

Finally, on June 1, 2021, Commerce announced an opportunity to request review of CDMT sales in the third administrative review ("AR3"), covering the period from June 1, 2020, to May 31, 2021.  Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 86 Fed. Reg. 29240, 29241 (June 1, 2021).  Neither Goodluck nor any other party requested review of Goodluck's CDMT sales in AR3.  On August 3, 2021, Commerce initiated AR3 for another company included in the Final Determination, but not for Goodluck.  Compl. ¶¶ 13–14, Jan. 27, 2022, ECF No. 2.

On August 31, 2021, the Federal Circuit held that Commerce's initial determination to reject Goodluck's revisions to the record was supported by substantial evidence and otherwise not contrary to law.  See Goodluck India Ltd. v. United States, 11 F.4th 1335, 1344 (Fed. Cir. 2021) ("Goodluck III").  The Federal Circuit reversed the CIT's judgment and remanded for further proceedings. Id. On November 18, 2021, the CIT vacated its previous remand order and judgment, entered judgment for the Government, and sustained Commerce's initial Final Determination that assigned Goodluck a 33.7 percent antidumping duty rate.  See Order at 1, Goodluck India Ltd. v. United States, No. 18-162 (CIT Nov. 18, 2021), ECF No. 74.

Accordingly, on December 29, 2021, Commerce published a notice reinstating the Final Determination and AD order with respect to Goodluck.  See December 2021 Notice, 86 Fed. Reg. at 74070.  The December 2021 Notice further announced: (1) the resumption of AR1 with respect to Goodluck; (2) the initiation of AR2 with respect to Goodluck; and (3) a fourteen-day window for parties to withdraw either request for an administrative review.  Id.  In addition, Commerce directed Customs to liquidate Goodluck's AR3 entries because Commerce had not received a request concerning Goodluck for AR3.  Id.  Commerce stated in relevant part:

> As a result of this amended final determination, in which Commerce assigned a dumping margin of 33.80 percent to Goodluck, Commerce is reinstating the [Final Determination] with respect to Goodluck.
>
> Commerce did not receive a request for an administrative review of the antidumping duty order with respect to Goodluck for the period of June 1, 2020, through May 31, 2021, i.e., the third administrative review.  Therefore, in accordance with 19 CFR 351.212(c), we will instruct [Customs] to liquidate all entries for Goodluck and to assess antidumping duties on merchandise entered, or withdrawn from warehouse, for consumption at 33.70 percent, the cash deposit rate that would have prevailed in the absence of the now-vacated CIT decision.

Id. at 74070.  Commerce also stated that it would revise the cash deposit instructions—reflecting a cash deposit rate of 33.7 percent—with an effective date of September 10, 2021.  Id.

On January 3, 2022, Goodluck filed a letter asking Commerce to withdraw its liquidation instructions with respect to AR3 and to modify the effective date for collecting cash deposits at the 33.7 percent rate to December 29, 2021.  See Letter from Goodluck to G. Raimondo, Sec'y of Com., re: Goodluck's Request to Correct Errors in the December 29, 2021 Reinstatement Notice at 6, 9 (Jan. 3, 2022), P.R. 13.  On January 19, 2022, Commerce issued a memorandum that construed Goodluck's letter to be a request for correction of ministerial errors pursuant to 19 CFR § 351.224.  January 2022 Mem. at 3.  In that memorandum, Commerce denied both of Goodluck's proposed changes because they did not constitute "ministerial error as defined by 19 C.F.R. [§] 351.224(f)," meaning "an error in addition, subtraction, or other arithmetic function, [or] another type of unintentional error."  Id. at 4, 6.

### III.    Procedural History

On January 27, 2022, Goodluck timely filed its Complaint before this court to contest Commerce's December 2021 Notice and January 2022 Memorandum.  See Compl.  On April 1, 2022, the Government filed a partial motion to dismiss for lack of subject matter jurisdiction.  See Def's Partial Mot. to Dismiss for Lack of Jurisdiction, Apr. 1, 2022, ECF No. 23.  Determining that subject matter jurisdiction may attach under 19 U.S.C. § 1581(i), the court denied that motion. See Goodluck India Ltd. v. United States ("Goodluck IV"), 47 CIT __, __, 605 F. Supp. 3d 1343, 1348 (2022), ECF No. 37.

On January 3, 2023, Goodluck filed a Rule 56.1 motion for judgment on the agency record, arguing that Commerce's final determination was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence on the record, and otherwise not in accordance with law.  See Pl.'s Mot. for J. on Agency R. at 1, Jan. 3, 2023, ECF No. 43 ("Pl.'s Br.").  The Government and

Domestics filed their respective responses in opposition to Goodluck's motion on April 3, 2023, see Def.'s Resp. to Pl.'s Mot. for J. on Agency R., Apr. 3, 2023, ECF No. 50; Def.-Inters.' Resp. Br., Apr. 3, 2023, ECF No. 49, to which Goodluck replied on May 15, 2023, see Pl.'s Reply, May 15, 2023, ECF No. 54 ("Pl.'s Reply").

The court issued a letter posing questions in advance of oral argument, see Letter re: Qs. for Oral Arg., July 17, 2023, ECF No. 57, to which the parties responded, see Pl.'s Resp. to Oral Arg. Qs., July 28, 2023, ECF No. 59; Def.'s Resp. to Oral Arg. Qs., July 28, 2023, ECF No. 60; Def.-Inters.' Answers to Oral Arg. Qs., July 28, 2023, ECF No. 61.  Oral argument was held on August 1, 2023.  See Oral Arg., Aug. 1, 2023, ECF No. 65.  The court invited parties to file post-argument submissions and issued supplemental questions, see Letter re: Supp. Qs., Aug. 1, 2023, ECF No. 66, and all parties made such submissions, see Pl.'s Post-Hearing Br., Aug. 8, 2023, ECF No. 68; Def.'s Post-Arg. Subm., August 8, 2023, ECF No. 69; Defs.-Inters.' Post Oral Arg. Cmts. & Resp. to Ct's Qs., Aug. 8, 2023, ECF No. 67.

## DISCUSSION

Jurisdiction exists under 28 U.S.C. § 1581(i)(1).  See Goodluck IV, 605 F. Supp. 3d at 1348.  Under that provision, the CIT may hear civil actions arising out of federal laws providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).  In cases arising under § 1581(i), the court applies "the standard of review set forth by the Administrative Procedure Act and will 'hold unlawful and set aside [agency] action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Canadian Lumber Trade All. v. United States, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (quoting 5 U.S.C. § 706(2)).

Agency action is arbitrary and capricious when the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or made a decision "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). An abuse of discretion "occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005). Ultimately, the record supporting an agency's decision must support a "rational connection between the facts found and the choice made." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962).

Goodluck argues that two specific agency actions in the December 2021 Notice are unlawful under the APA and Due Process Clause: (1) Commerce's instruction to liquidate its AR3 entries at 33.7 percent because Goodluck did not submit an AR3 request during the anniversary month was unlawful under the APA and Due Process Clause, and (2) Commerce's designation of September 10, 2021, as the effective date for cash deposits.

The court first holds that Commerce's AR3 instruction was lawful. The court then concludes that Commerce's effective date designation, if erroneous, would be harmless error.

## I.      *Commerce's Instruction to Liquidate Goodluck's AR3 Entries at 33.7 Percent Was Lawful*

In the December 2021 Notice, Commerce concluded:

Commerce did not receive a request for an administrative review of the antidumping duty order with respect to Goodluck for the period of June 1, 2020, through May 31, 2021, i.e., the third administrative review. Therefore, in

> accordance with 19 CFR [§] 351.212(c), we will instruct [Customs] to liquidate all entries for Goodluck and to assess antidumping duties on merchandise entered, or withdrawn from warehouse, for consumption at 33.70 percent, the cash deposit rate that would have prevailed in the absence of the now-vacated CIT decision.

86 Fed. Reg. at 74070.  Goodluck's challenge to this instruction is two-tiered.  First, Goodluck advances three arguments against Commerce's exercise of procedural discretion in ordering the automatic liquidation of the AR3 entries: (1) Commerce's decision deprived Goodluck of its right to have its AR3 entries subject to administrative review; (2) even if Goodluck did not have the right to request AR3 review, Goodluck's AR3 entries should have been liquidated duty free, rather than at a 33.7 percent rate; and (3) Commerce deprived Goodluck of its due process rights to notice and opportunity to be heard.  See Pl.'s Br. at 14–41.  Second, even if it was lawful for Commerce to instruct automatic liquidation of the AR3 entries, Goodluck insists that the entries should have been liquidated at the zero percent rate rather than the 33.7 percent rate.

Considering each argument in turn, the court concludes that Commerce's instruction was lawful under the APA and the U.S. Constitution.

### A.     Commerce's Exercise of Procedural Discretion Was Lawful

In its first tier of argument, Goodluck challenges Commerce's exercise of discretion in ordering the automatic liquidation of the AR3 entries.  As a general matter, "Commerce enjoys 'broad discretion' to promulgate and enforce its procedural rules."  Goodluck III, 11 F.4th at 1344 (quoting Stupp Corp. v. United States, 5 F.4th 1341, 1350–51 (Fed. Cir. 2021)); see also Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 538–39 (1970) ("[An agency] is entitled to a measure of discretion in administering its own procedural rules . . . .").  Indeed, "agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."  Royal Brush Mfg., Inc. v. United States,

75 F.4th 1250, 1261 (Fed. Cir. 2023) (quoting Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 544 (1978)).  But Commerce's discretion is not boundless.  An agency's procedural action may be unlawful if it is contrary to the Constitution, statute, or regulation, see 5 U.S.C. § 706(2); Royal Brush Mfg., 75 F.4th at 1261, or under other "extremely compelling circumstances," Royal Brush Mfg., 75 F.4th at 1261 (quoting Vermont Yankee, 435 U.S. at 543), such as if the procedural action is "egregiously removed from fairness," Doty v. United States, 53 F.3d 1244, 1251 (Fed. Cir. 1995).  But "[s]hort of a showing that Commerce's enforcement of its procedural rules is so haphazard or unreasonable as to be arbitrary or capricious . . . [,] Commerce's failure to apply those rules with Procrustean consistency in every case does not deprive it of the authority to enforce those rules in any case."  Stupp, 5 F.4th at 1350–51.

"There is no . . . statutory" or regulatory "scheme that addresses the effect of an adverse decision on an administrative review."  BMW, 926 F.3d at 1298–99.  That said, there are a few statutory and regulatory guardrails bounding Commerce's actions in this case.  First, "an exporter or producer covered by an order" has the right, "[d]uring the [anniversary] month," to request an AR of "only that person."  19 C.F.R. § 351.213(b)(2); see also 19 U.S.C. § 1675(a)(1) (referencing the existence of "a request").  Second, where no administrative review is conducted, Commerce must instruct Customs, "without additional notice," to assess duties at "rates equal to the cash deposit of . . . estimated antidumping duties . . . required on that merchandise at the time of entry." 19 C.F.R. § 351.212(c)(1)(i)–(ii).  And third, once a Timken notice is issued, only a final and conclusive court decision may permanently modify a Final Determination with regard to the subject matter of the litigation.  See Timken, 893 F.2d at 342 (interpreting 19 U.S.C. § 1516a(c)(1), (e)).  Suspension of liquidation after a Timken notice is crucial so that "subsequent entries"—

referring to entries after the Timken notice, such as entries subject to subsequent ARs—"can be liquidated in accordance with that conclusive decision."  Id. (emphasis added).  That system prevents an undesirable "yo-yo" or "flip-flop" effect, wherein entries are liquidated at duty rates that arbitrarily vary depending on the stage of litigation and the court order in effect at the time. See id.

The parties offer two competing procedures for requesting ARs after a Timken notice, which the court calls the "retroactive" and "contemporaneous" approaches:

1.  **Retroactive Approach.**  This is Goodluck's preferred procedure.  Under this approach, a producer or exporter whose entries are provisionally excluded from the antidumping duty order is not required to request review on the anniversary month.  If the order gets reinstated as to that entity, Commerce will then allow the producer or exporter the opportunity to request review, even if the reinstatement occurs after the anniversary month.

2.  **Contemporaneous Approach.**  This is Commerce's and Domestics' preferred procedure.  Under this approach, a request to review a producer or exporter whose entries are provisionally excluded from the antidumping duty order must be still filed on the anniversary month.  The request may very well be denied due to the provisional revocation, but the review request preserves the right to AR.  If the order gets reinstated as to that entity, Commerce resumes or starts the AR.

Both approaches comply with Timken's basic directives and do not frustrate effective judicial review.  In either scenario, the post-Timken entries would be suspended for the pendency of ongoing litigation, and the undesirable yo-yo effect is avoided.  Moreover, "an invalid antidumping determination [would not] serve as a legal basis for the imposition of antidumping duties." Andaman Seafood Co. v. United States, 34 CIT 129, 134, 675 F. Supp. 2d 1363, 1369 (2010).  The difference between the two approaches is that the contemporaneous approach requires a producer or exporter to preserve the right to an AR by timely filing a request, while the retroactive approach

allows for untimely AR requests.  Commerce chose the former approach; Goodluck insists that it

should have chosen the latter.

Goodluck broadly argues against Commerce's automatic liquidation of its AR3 entries, see

Compl. ¶ 22, but the more precise challenge is to Commerce's determination that no timely AR

request was filed and that no later opportunity to request AR was available.  See December 2021

Notice, 86 Fed. Reg. at 74070.  Automatic liquidation was indeed the result of Commerce's action,

but automatic liquidation depends on whether a timely AR request was filed.  See 19 C.F.R. §

351.212(c) (automatic liquidation occurs "[i]f [Commerce] does not receive a timely request for

an [AR]").  Commerce's decision concerning timeliness, then, is the real crux of the dispute.

Moreover, questions of timeliness generally implicate Commerce's procedural, not policymaking,

discretion.[7]  See, e.g., Stupp Corp., 5 F.4th at 1349–51 (treating Commerce's dismissal of an

untimely factual submission as an exercise of procedural discretion); In re Makari, 708 F.2d 709,

710 (Fed. Cir. 1983) (characterizing the Commissioner of Patents's dismissal of an untimely

petition as procedural).  Commerce's procedural discretion is broad—but not unreviewable or

unbounded.  See Royal Brush Mfg., 75 F.4th at 1261; supra pp. 15–16.

Goodluck marshals three bases for its position that Commerce abused its procedural

discretion.  First is the contention that Commerce's action is inconsistent with the plain text of 19

C.F.R. § 351.213(b)(2); because Goodluck was no longer "covered by" the Final Determination

---

[7] To the extent that Goodluck characterizes this case as disputing a "right" to request AR of its entries, see Pl.'s Br. at 14, that framing casts the net too broadly.  Rights granted by regulation are often bounded by procedural requirements.  See Stupp, 5 F.4th at 1348–49 (discussing the regulations that allow a party to file new factual information but subject to certain procedural requirements).  The precise question here is whether Commerce's administration and enforcement of the procedural requirements for the right to request ARs was lawful.

after the May 2020 Timken Notice had issued, Goodluck had no right to request AR during the

anniversary month and was otherwise deprived of a right to request it after reinstatement.  See Pl.'s

Reply at 9–11.  Second, Goodluck argues that Commerce has a practice of allowing similarly

situated parties to submit untimely AR requests following an antidumping duty order's

reinstatement by the Federal Circuit, and that Commerce failed to justify its deviation from that

practice here.  See Pl.'s Br. at 15–16.  Third is a constitutional argument: Commerce deprived

Goodluck of its Fifth Amendment due process rights to notice and an opportunity to be heard by

automatically liquidating the AR3 entries without allowing AR3 requests.  None of these

arguments ultimately warrant remand here.

### 1. *Goodluck Had the Right to Request AR3 on the Anniversary Month but Did Not Avail Itself of That Right*

Goodluck first argues that the text of 19 C.F.R. § 351.213 prohibits Commerce's instruction

to liquidate the AR3 entries without affording an opportunity to request AR.  The regulation reads

in relevant part:

> During the same month, an exporter or producer covered by an order . . . may request in writing that the Secretary conduct an administrative review of only that person.

19 C.F.R. § 351.213(b)(2).  Goodluck was no longer "covered by" the Final Determination after

the May 2020 Timken Notice had issued, so it says; it therefore had no right to request AR during

the anniversary month.  See Pl.'s Reply at 9–11.  Implicit in this argument is that when the right

to request was unavailable during the anniversary month, Goodluck was otherwise entitled to a

right to request at some other time.  Not so, on both counts.

First, Goodluck's provisional exclusion did not make it no longer "covered by" the Final

Determination.  As an initial matter, the applicable regulations and statutes do not define the

meaning of "covered by."  Under its plain meaning, to "cover" means "to have sufficient scope to include or take into account."      Cover, Merriam Webster, https://www.merriam-webster.com/dictionary/cover (last updated Nov. 1, 2023).  Second, the text of the regulation makes clear that the object of coverage is an "exporter or producer," rather than the entries of the exporter or producer.   19 C.F.R. § 351.213(b)(2).   That reading is further clarified by the regulation's specification of administrative review of "that person," rather than of that person's entries.  Id.  The antidumping duty order must, therefore, have sufficient scope to include or take into account a particular exporter or producer in order for that exporter or producer to request AR.

Commerce's statements in the Federal Register indicate that Goodluck was still covered. In the May 2020 Timken Notice, Commerce stated that "Commerce is hereby excluding merchandise produced and exported by Goodluck from the AD Order" under a header titled "Partial Exclusion from Antidumping Duty Order."  May 2020 Timken Notice, 85 Fed. Reg. at 31743.  Goodluck reads the word "exclud[e]" to mean that it was no longer included in, or "covered by," the Final Determination.  But the direct object of "excluding" in Commerce's sentence is "merchandise produced and exported by Goodluck," not "Goodluck."  Goodluck's reading elides the difference between excluding a particular producer or exporter, versus excluding particular entries of that producer or exporter.  That distinction is crucial in a case like this, where Goodluck was still covered beyond its capacity as both a producer and an exporter.  Commerce reaffirmed that point twice: first when it discontinued AR1 in part, and second when it responded to Goodluck's AR2 request.  In both instances, Commerce continued the AR for entries that were either produced or exported, but not both produced and exported, by Goodluck.  See AR1 Preliminary Determination, 85 Fed. Reg. at 66931 ("[W]e are hereby discontinuing this review

with respect to Goodluck because Goodluck only made sales . . . of merchandise that it produced

and exported. . . . [E]ntries that were produced, but not exported, by Goodluck, and/or entries that

were exported, but not produced, by Goodluck are not covered by the exclusion [in the May 2020

Timken Notice].”); AR2 Initiation Notice, 85 Fed. Reg. at 47733 (“Commerce is only reviewing

entries that were produced, but not exported, by [Goodluck], and/or entries that were exported, but

not produced, by Goodluck.  Pursuant to a [CIT] decision, effective May 10, 2020, Commerce

excluded from the antidumping duty order certain [CDMT] that was produced and exported by

Goodluck.”); AR2 Preliminary Results, 86 Fed. Reg. at 33980–81 (“The administrative review

remains active with respect to . . . Goodluck . . . . We preliminarily determine that Goodluck had

no shipments of the subject merchandise to the United States during the POR.  Consistent with its

practice, Commerce finds that it is not appropriate to preliminarily rescind the review with respect

to Goodluck, but rather to complete the review . . . .”).  Commerce’s view that Goodluck remained

covered by the Final Determination was therefore not contrary to the plain meaning of the words

“covered by” in 19 C.F.R. § 351.213(b)(2), which makes clear that it is producers and exporters,

not their entries, that are subject to coverage.

   The holding here is a narrow one.  The court expresses no view on whether a full

provisional exclusion from an antidumping duty order in a Timken notice would, for the purposes

of 19 C.F.R. § 351.213(b)(2), render a producer or exporter no longer “covered by” that order, and

if so, whether Commerce would owe additional process.[8]  Moreover, because it has not been

_____

[8] The court also notes that the inquiry here is limited to the meaning of “covered by” as used in 19 C.F.R. § 351.213.  Any relief associated with partial or full exclusions that are provisional will depend on the particular agency action and procedural posture of each case.  See, e.g., Comm. Overseeing Action for Lumber Int’l Trade Investigations or Negots. v. United States, 47 CIT __, __, Slip Op. 23-163, at 5, 12–13 (Nov. 20, 2023).

argued that Commerce is entitled to deference to its interpretation, the court does not reach that question.  Cf. Kisor v. Willkie, 139 S. Ct. 2400, 2416–18 (2019) (requiring that the regulatory interpretation be "the agency's 'authoritative' or 'official position,' rather than any more ad hoc statement not reflecting the agency's views," and that the court "decline to defer to a . . . 'post hoc rationalization advanced' to 'defend past agency action against attack'" (quoting Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155 (2012))).  Addressing Goodluck's argument as presented, see Pl.'s Reply at 9–11, the court concludes only that the agency action in this case does not conflict with the plain meaning of "covered by" in 19 C.F.R. § 351.213(b)(2).

Second, Goodluck is incorrect to suggest that it is entitled to a right to request at some time other than the anniversary month.  The regulation's grant of a procedural right to request AR is only "[d]uring the [anniversary] month."  19 C.F.R. § 351.213(b)(2).  Even assuming arguendo that Goodluck was provisionally no longer "covered by" the Final Determination, it is unclear to the court why the regulation would authorize Goodluck to request AR at any point apart from the anniversary month.  And Goodluck does not offer any other statutory or regulatory authority for an enduring right to request AR.[9]  See 19 U.S.C. § 1675 (referencing a "request for such a review" without specifying that it must be enduring); 19 C.F.R. §§ 351.212–13 (limiting the default conditions for such requests to the anniversary month).  What is clear, however, is that where no valid request is received, Commerce is not required to conduct an AR and may instruct Customs to automatically assess duties.  See 19 C.F.R. § 351.212(a), (c).  In short, Goodluck did remain "covered by" the Final Determination, but Goodluck did not timely avail itself of the right to

---

[9] To the extent that Goodluck argues that the agency has an established practice of allowing the filing of untimely AR requests that gives rise to a right to untimely AR requests under similar circumstances, that is also unavailing.  See infra section I.A.2.

Court No. 22-00024                                                                    Page 25

request AR under 19 C.F.R. § 351.213, and Goodluck did not have an otherwise enduring right to

AR premised in 19 C.F.R. § 351.213.  Commerce's instruction to automatically liquidate the AR3

entries therefore did not contravene 19 C.F.R. § 351.213.

> ## 2.    *No Past Agency Practice Required Commerce to Accept an Untimely AR Request from Goodluck*

Goodluck next argues that Commerce has an established practice of allowing untimely AR

requests after a party whose entries were provisionally excluded was reinstated pursuant to a

conclusive court decision.  It points to two prior decisions to establish that practice.  See Ball

Bearings and Parts Thereof from Japan and the United Kingdom: Notice of Reinstatement of

Antidumping Duty Orders, Resumption of Administrative Reviews, and Advance Notification of

Sunset Reviews, 78 Fed. Reg. 76104 (Dep't Com. Dec. 16, 2013) ("Ball Bearings Reinstatement");

Xanthan Gum from the People's Republic of China: Notice of Third Amended Final Determination

Pursuant to Court Decision, 85 Fed. Reg. 40967 (Dep't Com. July 8, 2020) ("Xanthan Gum

Reinstatement").  Because Commerce did not justify its deviation from that alleged practice in the

December 2021 Notice, Goodluck contends that Commerce's decision to automatically liquidate

the AR3 entries were unlawful.  See id. at 22–23.

Agency action that deviates from prior policy decisions or established practice without

reasoned justification is arbitrary and capricious.  See Huvis Corp. v. United States, 570 F.3d 1347,

1354 (Fed. Cir. 2009) (citing FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009));

Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, 494 F.3d 1371, 1378 n.5 (Fed. Cir. 2007); In re

Section 301 Cases, 46 CIT __, __, 570 F. Supp. 3d 1306, 1347 (2022).  But to identify an

established agency practice, the party challenging administrative action must show "the existence

of 'a uniform and established procedure . . . that would lead a party, in the absence of notification

of a change, reasonably to expect adherence to the established practice or procedure.'" In re Section 301 Cases, 570 F. Supp. 3d at 1347 (quoting Ranchers–Cattlemen Action Legal Found. v. United States, 23 CIT 861, 884–85, 74 F. Supp. 2d 1353, 1374 (1999)).  Conversely, an agency's exercise of discretion on a "case-by-case" and fact-specific basis "complicates any efforts to divine 'rules' from past agency practice."  Fujian Yinfeng Imp & Exp Trading Co., Ltd. v. United States, 46 CIT __, __, 607 F. Supp. 3d 1301, 1316 (2022).

Goodluck's two cases, however, do not constitute a uniform and established agency practice.  In Goodluck's first case, Ball Bearings, Commerce revoked antidumping orders on ball bearings and parts thereof from Japan and the United Kingdom following a determination by the ITC that such revocation was "not likely to lead to the continuation or recurrence of material injury."  Ball Bearings and Parts Thereof from Japan and the United Kingdom: Revocation of Antidumping Duty Orders, 76 Fed. Reg. 41761, 41762 (Dep't Com. July 15, 2011) ("Ball Bearings Timken Notice").  That provisional revocation applied to all producers and exporters who were previously covered.  Id.  Commerce simultaneously announced that it was "discontinuing all unfinished administrative reviews immediately and [would] not initiate any new administrative reviews of the orders."  Id.  Following a conclusive decision by the Federal Circuit, Commerce reinstated the AD orders, resumed suspended administrative reviews, and provided interested parties the opportunity to request administrative reviews for two PORs where the anniversary month had passed while the order was revoked.  See Ball Bearings Reinstatement, 78 Fed. Reg. at 76104.

In the second case, Xanthan Gum, Commerce excluded merchandise from two producers and exporters, collectively termed "Fufeng," from an antidumping order on xanthan gum from

China following a CIT decision.  See Xanthan Gum from the People's Republic of China: Notice

of Court Decision Not in Harmony with Amended Final Determination in Less Than Fair Value

Investigation; Notice of Amended Final Determination Pursuant to Court Decision; Notice of

Revocation of Antidumping Duty in Part; and Discontinuation of Fourth and Fifth Antidumping

Administrative Reviews in Part, 83 Fed. Reg. 52205, 52205–06 (Dep't Com. Oct. 16, 2018).

Commerce discontinued the fourth and fifth ARs with respect to Fufeng and stated that it would

"not initiate any new [ARs] of Fufeng's entries pursuant to the antidumping order."  Id. at 52206.

On the sixth anniversary month, Commerce published a notice of the opportunity to request

review, see Antidumping or Countervailing Duty Order, Finding or Suspended Investigation;

Opportunity to Request Administrative Review, 84 Fed. Reg. 31295, 31295 (Dep't Com. July 1,

2019), and review of Fufeng's entries was requested, see Initiation of Antidumping and

Countervailing Duty Administrative Reviews, 84 Fed. Reg. 47242, 47250 (Dep't Com. Sep. 9,

2019).   Fufeng subsequently withdrew its AR6 request.   See Preliminary Results of the

Antidumping Administrative Review, and Partial Rescission; 2018–2019, 85 Fed. Reg. 74686,

74686 (Dep't Com. Nov. 23, 2020).  Finally, following the Federal Circuit's reversal of the CIT

decision, Commerce resumed the fourth and fifth administrative reviews with respect to Fufeng

but did not provide Fufeng with an opportunity to request additional administrative reviews.  See

Xanthan Gum Reinstatement, 85 Fed. Reg. at 40967.

      Ball Bearings and Xanthan Gum each involved a situation-specific exercise of procedural

discretion.  The underlying order in Ball Bearings had been revoked in its entirety—not merely

with respect to a particular entity—so Commerce did not provide any interested parties the

opportunity to request AR until after the order had been reinstated.[10] In Xanthan Gum, by contrast, the ARs that Commerce resumed after reinstatement had all been timely requested on the anniversary month during the pendency of the Federal Circuit litigation; Commerce did not provide Fufeng with a later opportunity to request review of Fufeng's entries during the AR6. See Xanthan Gum Reinstatement, 85 Fed. Reg. at 40967. From these examples alone, it is difficult to extrapolate a broader principle about a party's right to AR requests after reinstatement considering the procedural facts unique to each case.[11] Instead, Goodluck asks the court to pick the parts of each decision that it prefers—(1) the opportunity to request AR after reinstatement in Ball Bearings, while ignoring the full revocation and lack of opportunity for any party to request timely AR, and (2) the partial revocation of the antidumping duty order in Xanthan Gum, while ignoring the fact that timely request was filed—and to carefully glue them together to form an established agency practice.

That is not the law. As noted above, Commerce has significant leeway in exercising its procedural discretion. See, e.g., Royal Brush Mfg., 75 F.4th at 1261; Goodluck III, 11 F.4th at 1344; Stupp Corp., 5 F.4th at 1350–51. Bounding that discretion is a requirement that Commerce

---

[10] See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 77 Fed. Reg. 25679, 25680 (Dep't Com. May 1, 2012); Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 78 Fed. Reg. 25423, 25424 (Dep't Com. May 1, 2013).

[11] In this case, Commerce discontinued the AR1 and limited the entries under review for AR2. See AR1 Preliminary Determination, 85 Fed. Reg. at 66931; AR2 Initiation Notice, 85 Fed. Reg. at 47733 n.5. Goodluck argues that Commerce's actions here are an extension of its practice in Ball Bearings and Xanthan Gum, and that Goodluck was justified in relying on that AR2 determination when deciding not to request AR3. See Pl.'s Br. at 19–22. But assuming arguendo that there is an agency practice of discontinuing ongoing ARs after a Timken notice is issued, it is unclear to the court why that practice would necessarily entail an agency practice of allowing untimely requests for ARs initiated after the Timken notice is issued.

explain deviations from "a uniform and established procedure."   In re Section 301 Cases, 570 F.

Supp. 3d at 1347.  The rationale is that an established agency practice puts parties on notice that

Commerce will act pursuant to that practice again.  See id.  But agency decisions that share

overlapping attributes, yet lack a clear and principled common outcome or reasoning, do not give

rise to those notice concerns with equal force.  Efforts to thread the needle between such decisions,

as Goodluck attempts here, risk curtailing Commerce's discretion for no good reason.  See Fujian,

607 F. Supp. 3d at 1316 ("case-by-case" exercises of discretion "complicate[] any efforts to divine

'rules' from past agency practice").  Because Ball Bearings and Xanthan Gum lack a clear and

principled common outcome, they are better read as two distinct case-by-case efforts to administer

the statutes and regulations governing ARs.

        Not only are Ball Bearings and Xanthan Gum sufficiently different from one another, but

they are jointly distinguishable from this case in one crucial aspect.  In both of those cases,

Commerce stated that it would not initiate ARs after the Timken notice and during the pendency

of Federal Circuit litigation.  See Ball Bearings Revocation, 76 Fed. Reg. at 41762 ("[T]he

Department is discontinuing all unfinished administrative reviews immediately and will not initiate

any new administrative reviews of the orders."); Xanthan Gum Revocation, 83 Fed. Reg. at 52206

("Commerce . . . will not initiate any new administrative reviews of Fufeng's entries pursuant to

the antidumping order." (footnote omitted)).  But Commerce made no such statement anywhere in

this case's administrative record.  Even if Ball Bearings and Xanthan Gum did represent an

established agency practice of allowing untimely AR requests, it would be cabined to

circumstances in which Commerce made clear that it would not initiate ARs during the pendency

of Federal Circuit litigation.[12]  Having failed, then, to identify a "uniform and established" exercise

of procedural discretion that would allow Goodluck to "reasonably . . . expect" an opportunity or

---

[12] Goodluck stresses that prior to the May 2020 Timken Notice, Commerce issued at least nine Timken notices that excluded certain or all respondents from antidumping orders and included similar "will not initiate" language.  See Ball Bearings Timken Notice, 76 Fed. Reg. 41761; Polyvinyl Alcohol From Taiwan: Notice of Court Decision Not in Harmony With Final Determination of Sales at Less Than Fair Value and Revocation of Antidumping Duty Order, 79 Fed. Reg. 4442, 4442–43 (Dep't Com. Jan. 28, 2014); Drill Pipe From the People's Republic of China: Notice of Court Decision Not in Harmony With International Trade Commission's Injury Determination, Revocation of Antidumping and Countervailing Duty Orders Pursuant to Court Decision, and Discontinuation of Countervailing Duty Administrative Review, 79 Fed. Reg. 78037, 78038 (Dep't Com. Dec. 29, 2014); Certain Steel Nails From the United Arab Emirates: Notice of Court Decision Not in Harmony with Final Determination and Amended Final Determination of the Less Than Fair Value Investigation, 80 Fed. Reg. 77316, 77318 (Dep't Com. Dec. 14, 2015); Utility Scale Wind Towers From the Socialist Republic of Vietnam: Notice of Court Decision Not in Harmony With the Final Determination of Less Than Fair Value Investigation and Notice of Amended Final Determination of Investigation, 82 Fed. Reg. 15493, 15494 (Dep't Com. Mar. 29, 2017); High Pressure Steel Cylinders From the People's Republic of China: Notice of Court Decision Not in Harmony With Final Determination in Less Than Fair Value Investigation, Notice of Amended Final Determination Pursuant to Court Decision, Notice of Revocation of Antidumping Duty Order in Part, and Discontinuation of Fifth Antidumping Duty Administrative Review, 82 Fed. Reg. 46758, 46760–61 (Dep't Com. Oct. 6, 2017); Xanthan Gum From the People's Republic of China: Notice of Court Decision Not in Harmony with Amended Final Determination in Less Than Fair Value Investigation; Notice of Amended Final Determination Pursuant to Court Decision; Notice of Revocation of Antidumping Duty Order In Part; and Discontinuation of Fourth and Fifth Antidumping Duty Administrative Reviews in Part, 83 Fed. Reg. 52205, 52206 (Dep't Com. Oct. 16, 2018); Certain Corrosion-Resistant Steel Products From India: Notice of Court Decision Not in Harmony With Amended Final Determination in Less Than Fair Value Investigation; Notice of Amended Final Determination Pursuant to Court Decision; and Notice of Revocation of Antidumping Duty order, in Part, 85 Fed. Reg. 69994, 69995 (Dep't Com. Jan. 8, 2020); and Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017–18 and 2018–19 Antidumping Duty Administrative Reviews, in Part, 85 Fed. Reg. 29399, 29401 (Dep't Com. Mar. 15, 2020).

---

Goodluck argues that these prior Timken notices establish that Commerce's decision not to include such "will not initiate" language also requires that Commerce have afforded Goodluck a later opportunity to file AR.  Goodluck asserts that "[t]here is no plausible basis for Commerce to justify

a right[13] to file its AR3 request after reinstatement, see In re Section 301 Cases, 570 F. Supp. 3d

at 1347, Commerce's action was not unlawful for failure to explain a deviation from agency

practice.

---

initiating AR3 as to Goodluck but not to all of the excluded respondents in the decisions specified
above based on the absence of an express 'will not initiate' statement." Pl.'s OAQ Resp. at 3.

It is hard to see why.  Commerce's decision not to initiate AR for "all of the excluded respondents
in the decisions specified above," as Goodluck puts it, is not directly relevant to the inquiry here.
The question on review is whether Commerce was required to accept untimely AR requests.  In
seven out of the nine notices above, the Federal Circuit affirmed rather than reversed the CIT's
decision; that question simply was not presented.  The two decisions that remain are Ball Bearings
and Xanthan Gum.  As the court has explained, see supra pp. 22–26, those decisions were case-
specific exercises of Commerce's procedural discretion.

Moreover, excluding the proceedings here, Commerce has issued at least two Timken notices
without such "will not initiate" language where it provisionally revoked an antidumping duty order
as to certain or all respondents.  See Electroluminescent High Information Content Flat Panel
Displays and Display Glass Therefor From Japan; Court Decision and Suspension of Liquidation,
59 Fed. Reg. 23690, 23691 (Dep't Com. May 6, 1994); Multilayered Wood Flooring from the
People's Republic of China: Notice of Court Decision Not in Harmony With the Second Amended
Final Determination and Notice of Third Amended Final Determination of the Antidumping Duty
Investigation, 83 Fed. Reg. 35217, 35217–19 (Dep't Com. July 15, 2018).  Where a statute or
regulation is not expressly controlling on a procedural question, Commerce's lack of "Procrustean
consistency in every case does not deprive it of the authority to enforce those rules in any case."
Stupp, 5 F.4th at 1351.

Finally, the court notes that Goodluck's challenge is limited to the automatic liquidation order in
the December 2021 Notice.  Goodluck does not challenge Commerce's decision not to include the
"will not initiate" language in the May 2020 Timken Notice as itself arbitrary and capricious.  See
Compl. ¶¶ 21–28.  To the extent Goodluck tries to merge those two distinct challenges in its
response to the court's oral argument questions, see Pl.'s OAQ Resp. at 3, the latter challenge is
insufficiently presented for decision.  See United States v. Great Am. Ins. Co., 738 F.3d 1320,
1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed
in a party's briefing may be deemed waived." (citations omitted)).

[13] See supra note 9.

### 3.   *Commerce Afforded Goodluck Sufficient Due Process*

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived

of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The first inquiry

in every due process challenge is whether the plaintiff has been deprived of a protected interest in

'property' or 'liberty.'" Int'l Custom Prods., Inc. v. United States, 791 F.3d 1329, 1337 (Fed. Cir.

2015) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999)). "[T]he Constitution

does not provide a right to import merchandise under a particular classification or rate of duty, or

even afford a protectable interest to engage in international trade." Id. (internal quotation marks

omitted) (quoting A Classic Time v. United States, 123 F. 3d 1475, 1476 (Fed. Cir. 1997); Am.

Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States, 751 F.2d 1239, 1250

(Fed. Cir. 1985)). "Nor does the [C]onstitution recognize a right to rely on the maintenance of a

duty rate." Id. (citing Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 318 (1933)).

But these holdings do "not preclude a protected interest in the proper assessment of tariffs on goods

already imported." Nereida Trading Co., Inc. v. United States, 34 CIT 241, 248, 683 F. Supp. 3d.

1348, 1355 (2010); cf. Am. Ass'n of Exporters, 751 F.2d at 1250 (finding no protected interest

where the agency "has not taken from [importers] any merchandise which they have already

purchased" but "has merely limited the amounts which the importers can purchase in the future").

Once a cognizable property interest is established, and assuming that civil penalties or

monetary sanctions are not at issue, the Due Process Clause generally guarantees only those

procedures "set forth in the antidumping statute or in the agency regulations implementing that

statute." Gulf States Tube Div. of Quanex Corp. v. United States, 21 CIT 1013, 1039, 981 F. Supp.

630, 652 (1997) (citing Kemira Fibres Oy v. United States, 18 CIT 687, 694, 858 F. Supp. 229,

235 (1994)).  That said, "[t]he right to due process does not depend on whether statutes and regulations provide what is required by the [C]onstitution."  Royal Brush Mfg., Inc. v. United States, 75 F.4th 1250, 1260 (Fed. Cir. 2023).  For instance, participants in antidumping duty order proceedings are entitled to the "due process right . . . 'to notice and a meaningful opportunity to be heard,'" PSC VSMP-Avisma Corp. v. United States, 688 F.3d 751, 761–62 (Fed. Cir. 2012) (quoting LaChance v. Erickson, 522 U.S. 262, 266 (1998)), which may extend beyond Commerce's statutory and regulatory obligations, cf. Transcom, Inc. v. United States, 24 CIT 1253, 1272, 121 F. Supp. 2d 690, 708 (2000), aff'd, 294 F.3d 1371 (Fed. Cir. 2002) (ultimately finding that the regulation afforded sufficient process).  "[N]otice is constitutionally sufficient if it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Transcom, 294 F.3d at 1380 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  And the opportunity to be heard must be afforded "at a meaningful time and in a meaningful manner." Royal Brush Mfg., Inc. v. United States, 44 CIT __, __, 483 F. Supp. 3d 1294, 1306 (2020) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

As a threshold matter, Goodluck has a protected property interest in the proper assessment of antidumping duties on its AR3 entries.  Goodluck challenges Commerce's treatment of its exports entered during the AR3 POR, from June 1, 2020, through May 31, 2021.  See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 86 Fed. Reg. at 29241.  Goodluck's opportunity to request AR3 began on June 1, 2021, which was after the POR.  See id.  Because Goodluck's goods have already been imported, due process protections attach to Commerce's actions in evaluating AR3.  See Nereida

Trading, 34 CIT at 248, 683 F. Supp. 3d. at 1355; cf. Am. Ass'n of Exporters, 751 F.2d at 1250.

Commerce afforded Goodluck sufficient due process. This is not a case where "[n]either the statute nor Commerce's regulations gave any hint that [Commerce's decided-upon procedure] would be used." Transcom, Inc. v. United States, 182 F.3d 876, 881 (Fed. Cir. 1999). Commerce met its regulatory and statutory obligations of notice here. Most importantly, Goodluck's right to request AR3 in June 2021 was noticed through public regulation. See 19 C.F.R. 351.213(b)(2). As explained above, it was clear, ex ante, that the right to request AR was not unavailable or otherwise postponed. The text of the May 2020 Timken Notice, the AR1 Preliminary Determination, and the AR2 Initiation Notice all indicated that Goodluck's exclusion related to only those entries produced and exported by Goodluck, leaving it "covered by" the Final Determination; and the right to request AR was expressly limited to "during the anniversary month." See supra pp. 19–21. To the extent that Commerce had any statutory or regulatory obligation to afford notice and the opportunity to be heard, Commerce did so here. Goodluck, by contrast, that did not avail itself of that option.

Second, Goodluck has not shown that additional process, beyond the statutory and regulatory requirements here, was due after the original order was reinstated in the December 2021 Notice. From the May 2020 Timken Notice onward, Goodluck was aware of the possibility of reinstatement pending Federal Circuit review. 85 Fed. Reg. at 31743 (suspending liquidation "during the pendency of the appeals process"). Commerce further caveated that the provisional zero percent rate may not prevail by stating that "[i]n the event that CIT's ruling is not appealed, or if appealed and upheld by the [Federal Circuit], Commerce will instruct [Customs] to terminate the suspension of liquidation and to liquidate entries produced and exported by Goodluck without

regard to antidumping duties." Id.  Goodluck was also a party to the ongoing Federal Circuit

litigation, so it had actual notice that an ultimate disposition could impact the assessment of duties.

Commerce's notice, which "apprise[d] interested parties of the pendency of the action," was

therefore constitutionally sufficient.  Transcom, 294 F.3d at 1380 (quoting Mullane v. Cent.

Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  Furthermore, Goodluck itself—in its AR2

request, which was filed after the May 2020 Timken Notice and covered a POR that encompassed

in part the three weeks following the May 2020 Timken Notice—stated that "although the

[Timken] notice effectively revoked the Order with respect to Goodluck, it also continues to

suspend entries from Goodluck pending any appeals.  As such, we are requesting this review in

order to preserve the review of Goodluck's entries."  AR2 Request Letter at 2 n.2 (emphasis

added).  In short, Goodluck filed an AR2 request with the stated intention of preserving

Commerce's review but did not do so for AR3.[14]  That action, in addition to Commerce's May

2020 Timken Notice, indicates that 19 C.F.R. 351.213(b)(2) gave Goodluck the opportunity to be

heard "at a meaningful time and in a meaningful manner."  Royal Brush, 483 F. Supp. 3d at 1306

(quoting Mathews, 424 U.S. at 333).  Goodluck simply did not avail itself of that opportunity.

Where reinstatement following Federal Circuit review was a well-noticed possibility, Goodluck's

failure to request AR3 does not entitle it to additional process after the December 2021 Notice.

---

[14] Goodluck argues that this was a "conservative action" that should not be "twist[ed]" into
suggesting that "Goodluck deliberately forfeited all rights to contest liquidation at the 33.70%
AFA ADD rate."  Pl.'s Reply at 8.  It notes that it had filed the AR2 request because most of the
covered entries had entered with cash deposits at the 33.7 percent rate (because those entries
preceded the Timken notice).  See id.  But the court's inquiry is whether Commerce's procedure
was unlawful, not whether Goodluck's conduct was reasonable.  Moreover, it is hard to distinguish
why, on a principled basis, Goodluck can engage in the use of AR requests as a method of
preserving rights and still challenge Commerce's position that Goodluck preserve all of its rights
during all AR anniversary months.

That conclusion also forecloses Goodluck's challenge to the January 2022 Memorandum, wherein Goodluck requested changes to the December 2021 Notice and Commerce declined because Goodluck's revisions were not ministerial in nature.  See supra pp. 11–12.  Goodluck argues that "[i]t is entirely disingenuous for Commerce to treat Goodluck's challenge to the December 2021 . . . Notice as a ministerial error allegation without having previously afforded Goodluck an opportunity to make substantive arguments"; the regulation on ministerial revisions, 19 C.F.R. § 351.224, "presupposes that interested parties have already had the opportunity to make substantive arguments."  Pl.'s Br. at 33.  But as explained above, Goodluck had constitutionally sufficient notice and opportunity to make substantive arguments during the AR3 anniversary month.  Commerce was well within its discretion to treat the December 2021 Request as an "amended final determination" of a less-than-fair-value investigation and, in turn, to review Goodluck's objections under a permissible procedural mechanism.  See 19 C.F.R. § 351.224(c) (allowing parties to "submit comments concerning any ministerial error" in "disclosed calculations performed in connection with a final determination or the final results of a review").

Ultimately, much confusion arises from the lack of express statutory or regulatory guidance in this case.  But the standard of review is nonetheless exacting and straightforward.  Unless Commerce's instruction in the December 2021 Notice either runs afoul of constitutional, statutory, or regulatory guardrails, or is otherwise arbitrary and capricious, Commerce's choice of procedure is not an abuse of discretion.  See Stupp, 5 F.4th at 1350–51.  And because Commerce's actions here did not run afoul of either 19 C.F.R. § 351.213, prior agency practice, or the Due Process Clause of the Fifth Amendment, Commerce's instruction to automatically liquidate the AR3 entries in the December 2021 Notice was lawful.

> **B.** ***Commerce's Instructions to Liquidate the AR3 Entries at 33.7 Percent,
> Rather Than a Zero Percent Rate, Was Lawful***

In its second tier of argument, Goodluck contends that 19 C.F.R. § 351.212(c) required automatic liquidation of Goodluck's AR3 entries at a zero percent AD duty rate. Pl.'s Br. at 25–30. Recall that if Commerce does not receive a timely AR request, it instructs Customs, "without additional notice," to (1) assess duties at "rates equal to the cash deposit of . . . estimated antidumping duties . . . required on that merchandise at the time of entry" and (2) continue to collect cash deposits at the existing rate. 19 C.F.R. § 351.212(c)(1). Goodluck's argument is, in turn, relatively straightforward. Because the "estimated antidumping duties . . . at the time of entry" during the AR3 POR was zero percent, Commerce should have instructed Customs to automatically liquidate the AR3 entries at zero percent. See Pl.'s Br. at 26.

The court uses "the same interpretive rules to construe regulations as [it] do[es] statutes; [it] consider[s] the plain language of the regulation, the common meaning of the terms, and the text of the regulation both as a whole and in the context of its surrounding sections." Aqua Prods., Inc. v. Matal, 872 F.3d 1290, 1316 (Fed. Cir. 2017). The threshold question in interpreting regulations is whether, after "resort[ing] to all the standard tools of interpretation," the regulation is genuinely ambiguous. Kisor, 139 S. Ct. at 2414. "If the regulatory language is clear and unambiguous, no further inquiry is usually required." Aqua Prods., 872 F.3d at 1316. But if the language at issue is ambiguous, then Commerce's reasonable interpretation may be entitled to deference if it otherwise meets the high bar of Kisor. See 139 S. Ct. at 2414–18.

Goodluck relies on the plain meaning of "at the time of entry" to contend that the zero percent rate was the appropriate cash deposit rate. See Pl.'s Br. at 26. But that reading of § 351.212 brings it in conflict with the statute governing judicial review of antidumping duty orders. Recall

that the statute requires that relevant merchandise "be liquidated in accordance with the final court decision" in an action.  19 U.S.C. § 1516a(e).  Interpreting that provision, the Federal Circuit has clearly held that once a Timken notice is issued, liquidation is suspended so that "subsequent entries can be liquidated in accordance with that conclusive decision."  893 F.2d at 342 (emphasis added).  Moreover, the Federal Circuit in Goodluck III determined that the original 33.7 percent was lawful and reversed the CIT's prior decision sustaining a zero percent rate.  To grant Goodluck's request now would authorize liquidation for entries subsequent to the May 2020 Timken Notice at a rate that is not in accordance with a final decision.  That not only would defy the final decision, see 19 U.S.C. § 1516a(e); cf. Andaman Seafood, 34 CIT at 134, 675 F. Supp. 2d at 1369 ("[A]n invalid antidumping determination [cannot] serve as a legal basis for the imposition of antidumping duties."), but also would give rise to the undesirable "yo-yo" or "flip-flop" effect that the Timken court discouraged, 893 F.2d at 342.  Under Goodluck's proposed reading, merchandise entered during the AR3 POR would have arbitrarily benefitted from a provisional period in judicial review, and—assuming as a hypothetical that no other AR request was filed—all other entries would have been liquidated pursuant to a final court decision requiring a different duty rate.  Goodluck's singular focus on the automatic liquidation instructions of 19 C.F.R. § 351.212(c) is therefore inconsistent with Commerce's obligations flowing from 19 U.S.C. § 1516a(e).  To the extent that Goodluck's reading of Commerce's regulation compels liquidation at the time of entry notwithstanding a Timken notice, it conflicts with the antidumping statute. And when a regulation and statute come into conflict, the statute must prevail.  See Norman v. United States, 942 F.3d 1111, 1118 (Fed. Cir. 2019); cf. King v. Burwell, 576 U.S. 473, 497 (2015)

("In this instance, the [statutory] context and structure . . . compel[s] us to depart from what would

otherwise be the most natural reading of the pertinent statutory phrase.").

Goodluck relies heavily on this court's decision in <u>Mittal Canada, Inc. v. United States</u> to

support its interpretation.  <u>See</u> 30 CIT 1565, 461 F. Supp. 2d 1325 (2006); <u>see also</u> Pl.'s Br. at 28–

30.  In that case, exporter Ispat Sidbec Inc. was in 2002 assigned a 3.86 percent cash deposit rate

in the antidumping duty order in steel wire rod from Canada.  <u>Id.</u> at 1566, 461 F. Supp. 2d at 1327.

The company subsequently changed its name to Mittal Canada, Inc. ("Mittal").  <u>Id.</u>  Since Mittal

did not have its own rate, Customs required that Mittal make cash deposits at the "all others" rate

of 8.11 percent rate.  <u>Id.</u>  Mittal requested a changed circumstances review ("CCR") to recognize

its successor-in-interest status, which Commerce granted in July 2005 for all future entries.  <u>See</u>

<u>id.</u> at 155–56.  Commerce then instructed Customs to assess duties at the cash deposit rate in effect

at the time of entry for all merchandise that had entered between October 1, 2004, and September

30, 2005; those entries preceding Commerce's CCR determination were liquidated at the 8.11

percent "all others" rate in effect at the time, pursuant to 19 C.F.R. § 351.212(c).  Among other

challenges, Mittal argued that liquidation at the 8.11 percent rate was proper because subsection

(a) of the same regulation requires liquidation at the rate "<u>applicable</u> at the time the merchandise

was entered," 19 C.F.R. § 351.212(a) (emphasis added), which would be the rate that Commerce

determined was proper after the CCR.  <u>See</u> <u>Mittal Canada</u>, 30 CIT at 1575, 461 F. Supp. 2d at

1335.  The court rejected that interpretation:

> Mittal's interpretation of "applicable at the time merchandise was entered" would
> gloss over the regulation's obvious temporality.  In this case, the rate "applicable
> at the time the merchandise was entered" must be the "all others" cash deposit rate
> of 8.11 percent for one simple reason: at the time of entry, it was impossible for
> Commerce to know that the former Ispat was operating as Mittal, and that Mittal
> entries were potentially entitled to a lower rate. . . . By introducing the backward-

> looking language, the regulation links the assessment rate to Commerce's "state of
> mind," or the allocation of information, at the moment of entry.  Mittal's
> interpretation amounts to reading the regulation as referring to "the rate applicable
> at the time of entry, as determined by a later review"; such an interpretation is
> nearly unintelligible, and in no way could such a reading be countenanced as required by
> the statute.  Instead, the rate "applicable at the time merchandise was entered" is
> the rate that a correct application of the U.S. antidumping laws and regulations
> would yield at the moment of entry.  It would be absurd to hold Commerce to a
> standard of omniscience such that the rate "applicable at the time merchandise was
> entered" refers to the correct rate in light of information that was not in Commerce's
> possession.

Id. at 1575–76, 461 F. Supp. 2d at 1335.  Goodluck urges the court to adopt the same reasoning

here.  Per Goodluck, applying the 33.7 percent rate—which was finalized after the merchandise

was entered in the December 2021 Notice—would impermissibly "gloss over the regulation's

obvious temporality" and adopt a reading of "applicable" that the Mittal court already rejected.

See Pl.'s Br. at 30.

But Mittal does not compel a different outcome here.  Whereas the basis for changing the

rate in that case was a subsequent CCR determination by Commerce, the basis for changing the

rate here was noticed well in advance.  Of course, before the AR3 POR even began, Commerce

had issued the May 2020 Timken Notice indicating that liquidation was suspended pending a

decision by the Federal Circuit.  Goodluck's cash deposit rate at the time of the AR3 entries was

only provisionally, not conclusively, set to zero percent.  In turn, it could hardly be said that either

Commerce or Goodluck was being held "to a standard of omniscience" for "information that was

not in Commerce's possession."  Mittal, 30 CIT at 1575–76, 461 F. Supp. 2d at 1335.  Indeed, "the

regulation links the assessment rate to Commerce's 'state of mind,' or the allocation of

information, at the moment of entry."  Id.  And what was Commerce's "state of mind" or allocation

of information at the moment of entry for the AR3 merchandise?  That Goodluck's suspension of

liquidation and zero percent cash deposit rate was subject to "the pendency of the appeals process."

May 2020 Timken Notice, 85 Fed. Reg. at 31743.

In short, although the later-vacated zero percent rate existed "at the time merchandise was entered," it was merely provisional.  19 C.F.R. § 351.212(c).  The statutory scheme establishing judicial review of antidumping duty orders, as further interpreted by the Federal Circuit in Timken, required Commerce to order automatic liquidation at 33.7 percent.  To the extent that Goodluck urges the court to adopt a more expansive reading of "duties . . . at the time of entry" to undermine effective judicial review, the court declines to do so in order to prevent such a conflict with the statute.  See 19 C.F.R. § 351.212(c); cf. Norman, 942 F.3d at 1118.[15]

## II.    If Erroneous, Commerce's Selection of the Effective Date for Goodluck's Cash Deposit Rate Is Harmless Error

The second aspect of the December 2021 Notice at issue is Commerce's designation of September 10, 2021, as the effective date for cash deposits.  Commerce stated in relevant part:

> Commerce will issue revised cash deposit instructions to [Customs].  Effective September 10, 2021, Goodluck's cash deposit rate will be 33.70 percent.

86 Fed. Reg. at 74070.  Commerce did not provide any further explanation for its decision.

Goodluck argues that the appropriate cash deposit dates should have been December 29, 2021, or

---

[15] The court also notes that subsection (a) of the regulation states that "[i]f a review is not requested, duties are assessed at . . . the cash deposit rate applicable at the time merchandise was entered." 19 C.F.R. § 351.212(a) (emphasis added).  And "when interpreting statutes or regulations, '[t]he plain meaning that [the court] seek[s] to discern is the plain meaning of the whole statute [or regulation], not of isolated sentences.'"  Boeing Co. v. Sec'y of Air Force, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (quoting Beecham v. United States, 511 U.S. 368, 372 (1994)).  That said, because the parties did not raise the language in subsection (a), the court does not reach that argument.  See Great Am. Ins. Co., 738 F.3d at 1328.

alternatively November 28, 2021; at the very least, Commerce's failure to explain the cash deposit date of September 10, 2021, was arbitrary and capricious.  See Pl.'s Br. at 38–41.

While Commerce enjoys discretion in matters of antidumping duty administration and procedure, see Shanxi Hairui Trade Co. v. United States, 39 F.4th 1357, 1361 (Fed. Cir. 2022); Goodluck III, 11 F.4th at 1344, its actions must be accompanied by "a satisfactory explanation for its action[s]," see State Farm, 463 U.S. at 29, or otherwise be reasonably discernible to the reviewing court, NMB Sing. Ltd. v. United States, 557 F.3d 1316, 1319–20 (Fed. Cir. 2009) (citing State Farm, 463 U.S. at 43 (1983)).  Moreover, when reviewing administrative action under the APA, "due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706; see also Intercargo Ins. Co. v. United States, 83 F.3d 391, 394 (Fed. Cir. 1996) ("It is well settled that principles of harmless error apply to the review of agency proceedings.").

Commerce has initiated a fourth AR with respect to Goodluck that covers the period from June 1, 2021, through May 31, 2022.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 48459, 48462 (Dep't Com. Aug. 9, 2022).  Goodluck was recently preliminarily assigned a 0.58 percent antidumping duty rate in the ongoing AR4, and Goodluck's AR4 entries are suspended pending the final determination of the AR.  See Preliminary Results of Antidumping Duty Administrative Review; 2021–2022, 88 Fed. Reg. 43295, 43296 (July 7, 2023).  Commerce is expected to issue a final determination in AR4 on November 21, 2023.  See Mem. from A. Cherry to S. Fullerton, re: Extension of Deadline for the Final Results of Antidumping Duty Administrative Review at 2 (Dep't Com. Oct. 26, 2023), ACCESS No. 4453990-01.

Goodluck argues that it remains prejudiced by Commerce's choice of a September 2021 effective date, but an error regarding that cash deposit date would be harmless.  See Pl.'s OAQ Resp. at 16–17.  Once the final AR4 rate is published, Goodluck's cash deposits will either be returned (if the final rate is below 33.7 percent) or count toward the higher rate (if the final rate is above 33.7 percent), see 19 U.S.C. § 1673f(b); Diamond Sawblades, 626 F.3d at 1380, together with interest as provided by 19 U.S.C. § 1677g.  All of the dates in dispute—September 2021, November 2021, or December 2021—fall within the AR4 POR from June 1, 2021, through May 31, 2022.  In short, whether the cash deposit date is set in September 2021 (as Commerce has done) or December 2021 (as Goodluck prefers most), Goodluck will be subject to Commerce's AR4 rate, and its cash deposits will be balanced with its AR4 duties.

Goodluck also notes that the lack of access to a greater amount of funds, "tied up in unlawful [antidumping duty] cash deposits," is a source of continuing prejudice.  Pl.'s OAQ Resp. at 17.  But "prejudice . . . means injury to an interest that the statute, regulation, or rule in question was designed to protect."  Intercargo, 83 F.3d at 396.  There is no indication that Goodluck's access to funds already deposited as estimated antidumping duties, when it is certain that those funds will be either returned or balanced, is a cognizable interest under the antidumping statutory scheme. See 19 U.S.C. §§ 1673b(d), 1673d(c)(1)(B)(ii), 1673e(a), 1675, 1673f(b)(2), 1677g; see also Mid Continent Nail Corp. v. United States, 846 F.3d 1364, 1384 (Fed. Cir. 2017) (finding prejudice where "[t]here is considerable uncertainty as to the effect of th[e] failure"); cf. Diamond Sawblades Mfrs.' Coal. v. United States, 39 CIT __, __, 2015 WL 4978726, at *16 (Aug. 20, 2015) ("[A]ny interested private party would only be inconvenienced by a delay in liquidation.  If any refunds of duties are ultimately owed to private parties, they will receive the amounts with interest, thereby

compensating for any delay." (citation omitted)).[16]   Accordingly, because any error regarding the

cash deposit rate would not be, in this case, "prejudicial to the party seeking to have the action

declared invalid," remand is not appropriate.   Intercargo, 83 F.3d at 394; see also Vermont Yankee,

435 U.S. at 558 ("Administrative decisions should be set aside . . . only for substantial procedural

or substantive reasons as mandated by statute . . . .").[17]

### CONCLUSION

  The court concludes that because Commerce's exercise of procedural discretion in this case

did not contravene 19 C.F.R. § 351.213, prior agency practice, or the Due Process Clause of the

Fifth Amendment, Commerce's instruction to automatically liquidate the AR3 entries without

offering a later opportunity to file an AR request in the December 2021 Notice was lawful.

Moreover, Commerce's instruction to automatically liquidate at the 33.7 percent rate, rather than

the zero percent rate, was consistent with the plain text of 19 C.F.R. § 351.212(c) and the statutory

scheme establishing the judicial review of antidumping duty orders.   Finally, Commerce's

selection of the effective date for cash deposits in the December 2021 Notice is, if in error,

harmless in light of the forthcoming AR4 final results.

---

[16] Goodluck does not otherwise state that it should have been compensated at a pre-liquidation interest rate higher than that afforded by 19 U.S.C. § 1677g, nor would that appear to be a cognizable interest under the antidumping statutory scheme.

[17] Goodluck also argues that Commerce failed to afford Goodluck sufficient process regarding the effective date.  See Pl.'s Br. at 41.  But the court need not reach that argument because "any due process violation was harmless," and any additional notice or opportunity to be heard would have no effect on the fact that the final AR4 rate will soon govern.  Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad., 551 U.S. 291, 303 & n.4 (2007).  Moreover, the alleged due process violation here is distinguished from Royal Brush, where the due process violation was premised on the "denial of access to new and material information upon which an agency relied."  75 F.4th at 1262 (concluding that no additional showing of prejudice was required).

Court No. 22-00024                                                                      Page 45

Judgment on the agency record will accordingly enter for Commerce.

**SO ORDERED**.

/s/    *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: <u>November 21, 2023</u>
New York, New York